1  JAMES V. FITZGERALD, III (State Bar No. 55632)
   NOAH G. BLECHMAN (State Bar No. 197167)
2  J. GARRET DEAL (State Bar No. 249934)
   McNAMARA, DODGE, NEY, BEATTY, SLATTERY,
3  PFALZER, BORGES & BROTHERS LLP
   1211 Newell Avenue
4  Post Office Box 5288
   Walnut Creek, CA 94596
5  Telephone: (925) 939-5330
   Facsimile: (925) 939-0203
6
   Attorneys for Defendants
7  ALEX CAINE and CITY OF SAN PABLO

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  CHRISTIAN J. BRACKO,                    Case No. C08-00239 JL

12          Plaintiff,                      **DECLARATION OF NOAH G.
                                            BLECHMAN IN SUPPORT OF
13      vs.                                 DEFENDANTS' MOTION FOR
                                            SANCTIONS**
14  ALEX CAINE; CITY OF SAN PABLO;
    and DOES 1-10, inclusive,               Date:  October 1, 2008
15                                          Time:  9:30 a.m.
           Defendants.                      Dept:  Courtroom F, 15th Floor
16                                          Judge: Honorable James Larson

17

18      I, Noah G. Blechman, Esq., hereby declare:

19      1.  I am an attorney at law duly licensed to practice before the courts of the State of

20          California and this Court and am a partner at the law firm of McNamara, Dodge,

21          Ney, Beatty, Slattery, Pfalzer, Borges & Brothers LLP, attorneys of record for

22          Defendants ALEX CAINE and the CITY OF SAN PABLO.  I have personal

23          knowledge of each matter stated herein.

24      2.  On August 1, 2008, I sent counsel for Plaintiff a letter, a true and correct copy of

25          which is attached hereto as **Exhibit A**, regarding Plaintiff's refusal to answer

26          certain deposition questions and to produce the witness statements of Ashlee

27          Wilson and Lorraine Hunt, in a good faith attempt to resolve this discovery

28

Declaration of Noah G. Blechman in Support of Defendants'
Motion for Sanctions – C08-00239 - JL

dispute.  I was unable to informally resolve these disputes and advised counsel that I would be required to make a motion to compel if he did not offer up Plaintiff for further questioning at deposition and to produce Ms. Wilson and Ms. Hunt's witness statements.

3.  Plaintiff's refusal to answer certain deposition questions and to produce the witness statements were improper for the reasons set forth in the Memorandum of Points and Authorities in Support of Defendants' Motion to Compel and Motion for Sanctions, filed concurrently herewith.

4.  On August 15, 2008, Plaintiff's counsel informed me via letter that Plaintiff would not submit to further deposition questioning or produce the relevant witness statements.  A true and correct copy of this letter is attached hereto as **Exhibit B**.

5.  Attached hereto as **Exhibit C** is a true and correct copy of Plaintiff's deposition transcript, pgs. 86-90.

6.  Attached hereto as **Exhibit D** is a true and correct copy of Plaintiff's Initial Disclosures.

7.  Attached hereto as **Exhibit E** is a true and correct copy of the deposition transcript of Ashlee Wilson, pgs. 68-70.

8.  I have been an a litigation attorney licensed to practice law in California and the Northern District of California since December of 1998.  I have significant and specialized experience litigating civil rights cases on behalf of police officers and public entities.  Accordingly, my reasonable hourly rate for such litigation services is $300.00 per hour.

9.  As a direct result of Plaintiff's failure to answer relevant and unprivileged questions during deposition, and to produce unprivileged documents, the following attorney's fees have been caused:

//

//

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P. O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

//

| | | |
|---|---|---|
| Preparation of meet and confer letter to Plaintiff's counsel | 4 hours @ $300/hour | $1,200.00 |
| Review and analysis of Plaintiff's response | 0.5 hours @ $300/hour | $150.00 |
| Preparation of Motion to Compel and supporting documents | 10 hours @ $300/hour | $3,000.00 |
| (Anticipated) review and analysis of Plaintiff's Opposition brief | 1 hour @ $300/hour | $300.00 |
| (Anticipated) preparation of Reply Brief and Attendance at Hearing on Motion | 4 hours @ $300/hour | $1,200.00 |
| **TOTAL** | 19.5 hours @ $300/hour | $5,850.00 |

10. The above fees were reasonable and necessary in order to prepare the above-described documents.

I declare under penalty and perjury the foregoing is true and correct.

Executed this 22nd day of August, 2008 at Walnut Creek, California.

By: _____
Noah G. Blechman, Declarant

# EXHIBIT A

# McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP

### ATTORNEYS AT LAW

MICHAEL J. NEY
THOMAS G. BEATTY
ROBERT M. SLATTERY
THOMAS E. PFALZER
GUY D. BORGES
ROGER J. BROTHERS
GARY R. JOHNSON
JAMES V. FITZGERALD, III
MARTIN J. AMBACHER
J. WESLEY SMITH
PAUL B. WALSH
ANN H. LARSON
R. DEWEY WHEELER
SETH J. SCHWARTZ
ROBERT W. LAMSON

RICARDO A. MARTINEZ
DIANNE KREMEN COLVILLE
LISA R. ROBERTS
DENISE BILLUPS-SLONE
J. LUCIAN DODSON III
JAMES E. ALLEN
ERIC G. LUNDBERG
DENISE J. SERRA
WILMA J. GRAY
HOWARD PATRICK SWEENEY
PETER J. HIRSIG
PATRICK L. MOORE
RICHARD M. McNEELY
GARY A. WATT
NOAH G. BLECHMAN
MICHAEL P. CLARK

1211 NEWELL AVENUE
WALNUT CREEK, CA 94596-5331

**PLEASE RESPOND TO:**
P.O. BOX 5288
WALNUT CREEK, CA 94596

TELEPHONE: (925) 939-5330
FACSIMILE: (925) 939-0203

www.mcnamaralaw.com

SOLANO COUNTY OFFICE
639 KENTUCKY STREET, FIRST FLOOR
FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998
FACSIMILE: (707) 427-0268

SAN JOAQUIN COUNTY OFFICE
2316 ORCHARD PARKWAY, SUITE 120
TRACY, CA 95377
TELEPHONE: (877) 839-5330
FACSIMILE: (209) 839-6758

JENIFER K. LEECE
BARBARA L. MILLER
CATHLEEN A. IRWIN
JENNIFER A. PHILLIPS
SUZANNE FOLEY SPRAGUE
SHARON A. GARSKE
PETER W. SEKELICK
JEANNE C. SHIH
TONYA R. DRAEGER
HENRY WILLIAMS III
MATTHEW P. SULLIVAN
CARRIE E. CROXALL
SHAWN F. HARDING
PETRA BRUGGISSER
CHRISTOPHER N. OONE

MARK P. IEZZA
CHRISTOPHER T. LUSTIG
RYAN J. BARNCASTLE
MILJOY B. LINSAO
TANNER D. BRINK
WILLIAM L. McCASLIN
CONNOR M. DAY
KEVIN T. KERR
ANDREA N. de KONING
NATHANIEL A. SMITH
RAYELLE D. SABO
J. GARRET DEAL
ALEXANDER CHASE
ARA S. ALIKIAN

PARTNERS EMERITUS
DANIEL J. McNAMARA
DOUGLAS C. McCLURE

RICHARD E. DODGE
(1941 – 2000)

OF COUNSEL
WILLIAM K. HOUSTON, JR.
ANTHONY J. DeMARIA

August 1, 2008

Noah G. Blechman
noah.blechman@mcnamaralaw.com

Mister Phillips, Esq.
2310 San Pablo Ave, Ste 204
P.O. Box 1162
Pinole, CA 94564

Re:     **Bracko v. City of San Pablo**

Dear Mr. Phillips:

Pursuant to Federal Rule of Civil Procedure ("FRCP") 37(a)(2)(B) and Northern District of California Local Rule 37-1(a), Defendants write to confer in good faith regarding Plaintiff's improper refusal to answer several relevant, non-objectionable and non-privileged questions posed at his deposition.

Defendants hereby demand Plaintiff be produced forthwith to answer these questions, as discussed below, at a future deposition. If Plaintiff continues with his obstructionist tactics, Defendants will have no choice but to move to compel his answers. Please be advised Defendants will also seek appropriate sanctions for being forced to prepare such a motion and because you have no reasonable or legitimate bases for instructing Plaintiff to not answer these questions.

Additionally, Defendants demand that you produce written witness statements of Lorraine Hunt and Ashlee Wilson, which they admitted at deposition exist, which you wrongfully claim are privileged under the attorney work-product doctrine.

## I.     INTRODUCTION

On July 3, 2008, Defendants Alex Caine ("Caine") and City of San Pablo ("City") deposed Plaintiff, Christian Bracko ("Bracko"). During his deposition, Defendants asked Bracko several

Mister Phillips, Esq.
August 1, 2008
Page 2

Re:   Bracko v. City of San Pablo

relevant and non-objectionable questions about his activities on the day he was arrested by Caine, and other relevant and non-objectionable questions. You instructed Bracko numerous times to not answer these questions, ostensibly because some of them allegedly asked Plaintiff questions regarding his criminal behavior, which you interpreted as potentially incriminating Plaintiff in violation of the Fifth Amendment to the Constitution of the United States.[1]

As discussed below, your objections lacked merit and should you refuse to produce and allow Bracko to provide answers to these relevant and non-objectionable questions, Defendants will have no choice but to seek judicial intervention and an order compelling Bracko to answer, accompanied by a motion for appropriate sanctions.

The following are the relevant questions Defendants request Plaintiff submit to answering at a future deposition.

## II.   RELEVANT AND NON-OBJECTIONABLE QUESTIONS

### A.   Why did Bracko flee from Officer Brady?

Defense counsel asked Bracko a simple, straightforward question regarding why he fled from Officer Brady and the San Pablo Police Department. (Pl.'s Depo. pg. 58:12-16; see also pgs. 101, 104:22-105:5). This question is directly relevant to Bracko's activities before the chase began, what he possessed at the time Officer Brady attempted to pull him over, why Bracko was willing to endanger the public and Officer Brady by fleeing in his car, why he ran from Officer Brady after he had crashed his car, and why Bracko resisted arrest after Brady caught up with him.[2]

Clearly, why Bracko decided to flee from Officer Brady instead of complying with his attempt to pull him over is of consequence to this action as Plaintiff claims Caine used excessive force during his arrest. The reasons behind Bracko's choice to flee are directly relevant to his state of mind at the time and are also relevant to Caine's justification for using force to detain Plaintiff.

Instead of providing an answer to this relevant and unobjectionable question, you directed Bracko not to answer the question based on "something like" a Fifth Amendment privilege against self-incrimination. (Pl.'s Depo. pgs. 58:17-61:22).

---

[1] For ease of reference, the Fifth Amendment to the Constitution of the United States provides, in relevant part: "No person shall…be compelled in any criminal case to be a witness against himself…"

[2] See FRCP 403; " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence."

Mister Phillips, Esq.
August 1, 2008
Page 3

Re:    <u>Bracko v. City of San Pablo</u>

  As you know, following Defendants' Motion to Dismiss Bracko's state law claims, which was granted by Judge Larson with prejudice, his sole surviving cause of action is an allegation of excessive force in violation of the Fourth Amendment to the Constitution of the United States. Because this lawsuit is now exclusively a "federal question" case, privileges are determined under federal common law. Federal Rule of Evidence ("FRE") 501; *United States v. Zolin*, 491 U.S. 554, 562 (1989).

  Of course, the Fifth Amendment privilege against self-incrimination may be raised in civil as well as in criminal proceedings and applies during the discovery process. <u>The Rutter Group</u>, Cal. Prac. Guide, Fed. Civ. Pro. Before Trial, Chap. 11, § 700, citing *United States v. Balsys*, 524 U.S. 666, 672 (1998). However, "[t]he privilege can be waived by testifying on the subject matter at issue or by producing documents containing incriminating matters." <u>The Rutter Group</u>, Cal. Prac. Guide, Fed. Civ. Pro. Before Trial, Chap. 11, § 707, citing *Brown v. United States*, 356 U.S. 148, 156-157 (1958).

  In this case, Bracko has already testified about the following "incriminating" matters:

- <u>Bracko did not have a valid California Driver's License on the date of the incident nor has he ever had a valid license</u>, yet he was pulled over by Officer Brady while driving. (Pl.'s Depo. pgs. 20:20-21:23);

- On the day of the incident, Officer Brady tried to pull Bracko over in Parchester Village in Richmond, California. <u>Bracko fled by car and then on foot. After his car crashed or lost control, Bracko fled from the officer on foot. Bracko knew when he was fleeing from the officer that the officer was trying to stop him.</u> (Pl.'s Depo. pgs. 57:21-59:15; *see also* Plaintiff's Second Amended Complaint ("SAC") pgs. 2:24-3:4);

- The car Bracko was driving on the day of the incident belonged to him. <u>He did not have a driver's license at the time and the car was not legally registered.</u> Brady therefore had grounds to stop Bracko because his vehicle was not registered. (Pl.'s Depo. pg. 96:11-97:3);

- Bracko stopped his car in the Parchester Community Center parking lot in Richmond after he saw Officer Brady attempt to pull him over. After he stopped, he pulled out, <u>trying to flee from the officer. Bracko understood that when Brady was behind him with his lights on, he was trying to stop him. Bracko stopped his car briefly and then decided to flee by driving away.</u> (Pl.'s Depo. pgs. 100:19-101:20);

Mister Phillips, Esq.
August 1, 2008
Page 4

Re:   <u>Bracko v. City of San Pablo</u>

- After Bracko's car spun out during the car chase, <u>he got out and ran.  Bracko knows that when he decided to run, there was an officer behind him trying to stop him from fleeing.</u> (Pl.'s Depo. pgs. 105:16-105:21);

- Up until the time Brady grabbed Bracko, Bracko heard the officer give him orders. Brady said "freeze" twice. <u>Bracko ignored the commands.</u> (Pl.'s Depo. pg. 108:1-108:17);

- After Bracko came out of his jacket, <u>he ran back down Johnson.</u> Bracko estimates he took a couple of steps after being pulled off the fence. (Pl.'s Depo. pgs. 109:9-110:21);

- <u>Bracko then got up and started running again, trying to flee from the officer.</u> (Pl.'s Depo. pgs. 110:22-111:19);

- Brady then hit Bracko again with a baton in his leg. He had taken a couple of more steps away from Brady <u>trying to run.</u> Bracko then fell into the street, laying on his stomach. (Pl.'s Depo. pgs. 111:20-112:14);

- After being on the ground several times, <u>Bracko got up and tried to run away several times.</u> Bracko heard Brady tell him to stay on the ground after Brady had a knee in his back. (Pl.'s Depo. pgs. 134:25-135:12);

- Bracko has been convicted of one (1) felony. <u>He was convicted of a felony for evading the police.  Bracko believes the conviction was for evading Brady.</u> (Pl.'s Depo. pgs. 145:1-146:13);

- Bracko is aware that marijuana was found in the Nissan he was driving on the day of the incident. <u>The marijuana was Bracko's.  The officers also found marijuana in Bracko's jacket.  That was also Bracko's marijuana.</u> Bracko estimates they found approximately 76 to 77 grams of marijuana. (Pl.'s Depo. pgs. 156:3-157:8);

- <u>All the marijuana found was Bracko's.</u> (Pl.'s Depo. pgs. 157:9-158:4).

Clearly, by pleading in his SAC, and testifying extensively during his deposition that he fled in his car and then on foot from Officer Brady, Bracko has waived all Fifth Amendment

Mister Phillips, Esq.
August 1, 2008
Page 5

Re:     Bracko v. City of San Pablo

privileges regarding **_why_** he did so.[3] _Brown v. United States, supra_, at 156-157. Defendants'
inquiries regarding this subject were clearly relevant to ascertaining Bracko's motive for fleeing
from the police (_i.e._, lack of registration or driver's license, possession of marijuana, fear of the
police, etc.). Their questions were also relevant for purposes of establishing foundational facts to
demonstrate Caine's state of mind when he arrived at the scene to assist Officer Brady in
controlling Bracko.

      You also instructed Plaintiff not to answer why he fled from the police on the basis that
the involved officers may seek to charge Bracko with further crimes relating to this incident.
(Pl.'s Depo. pg. 59:3-15). However, as you know, Bracko has already pled no contest to and
been convicted of several charges relating to this incident, including a misdemeanor for resisting
arrest under California Penal Code § 148(a)(1), and misdemeanors for evading the police in a
motor vehicle under California Vehicle Code § 2800.1 and possession of marijuana in violation
of California Health & Safety Code § 11357(c). Thus, Bracko is protected from being charged
for evading and resisting the police or possession of marijuana under double jeopardy principles,
as he has already been convicted and sentenced for these crimes.

      Accordingly, unless you provide some valid basis for asserting that Bracko may be
exposed to additional charges relating to this incident (which are likely barred by applicable
criminal statutes of limitations), the reason why Bracko ran from the police is directly relevant
and discoverable. Bracko should therefore answer questions relating to why he fled from Officer
Brady.

**B.     Did Bracko Ingest any Illegal Substances on the Day of the Incident?**

      You also instructed Bracko not to answer whether he had taken any illegal substances on
the day of the incident on the basis that the question called for Plaintiff to potentially incriminate
himself in violation of the Fifth Amendment. (Pl.'s Depo. pgs. 81:14 – 84:2; 85:22 – 89:8; 90-
91). Incredibly, you conceded that questions relating to Bracko's drug-use on the day in
question were relevant to this case and that you "hoped" the judge would not sanction you for
instructing Bracko not to answer. (Pl.'s Depo. pg. 87:7-18).

      Again, because you concede the question is relevant to (1) Bracko's state of mind; (2) his
ability to recall events accurately and completely, and; (3) his motive for fleeing from Officer
Brady, the only question is whether, by answering these questions, Bracko could potentially

---

[3] You also directed Bracko not to answer whether _one_ of the reasons he fled from the police was he did not have a
valid driver's license. (Pl.'s Depo. pgs. 61:23-62:4). Whether the fact that Bracko did not have a valid driver's
license at the time of his arrest (he has already admitted he did not) is directly relevant to why he ran from the police
and is non-privileged.

Mister Phillips, Esq.
August 1, 2008
Page 6

Re:    <u>Bracko v. City of San Pablo</u>

"incriminate" himself, and you thus had an appropropriate basis for instructing him not to answer.

As discussed in the previous section, the District Attorney is constitutionally forbidden from charging Bracko with possession of marijuana under double jeopardy principles. The statute of limitations relating to being under the influence of illegal narcotics is one year. California Penal Code ("PC") § 802(a). Therefore, the final date Bracko could have been charged with ingesting illegal substances on the day at issue (November 27, 2006) was November 27, 2007 (approximately 8 months ago). Accordingly, there is no risk Bracko could "incriminate" himself by simply stating whether he was under the influence of a controlled substance on the date at issue. You thus had no valid or reasonably legitimate basis to instruct Bracko not to answer. Though Plaintiff later answered a question about drug use in the hours before the incident, the record is unclear and we wish to clear up this issue at the next deposition session.

**C.    Who was the Individual Bracko was with when he Decided to Flee from Officer Brady?**

You next instructed Bracko not to answer questions regarding who he was traveling (and subsequently fled with) in his car when Officer Brady attempted to pull Bracko over on the grounds that the answer may be potentially incriminating. (Pl.'s Depo. pgs. 90:19-91:1; 91:23-95:10). This was yet another invalid and unreasonable objection and Bracko should answer this simple, straightforward question. Plaintiff's objection here is clearly improper and obstructionist.

As discussed above, this case now exclusively involves a "federal question", and therefore privileges are determined under federal common law. FRE 501; *United States v. Zolin*, *supra*, 491 U.S. 554, 562 (1989). Here, the law is clear that the Fifth Amendment privilege against self-incrimination only applies to Bracko, ***not*** his passenger. Under clear and longstanding United States Supreme Court precedent, the privilege against self-incrimination "is solely for the benefit of the witness" and is "purely a personal privilege of the witness." *Rogers v. United States*, 367 U.S. 367, 371 (1951); citing *United States v. Murdock*, 284 U.S. 141, 148 (1931) and *Hale v. Henkel*, 201 U.S. 43, 69 (1906).

Because the privilege against self-incrimination belongs to Bracko alone, he cannot invoke the privilege on behalf of his passenger. Identification of this passenger could lead to discovery of admissible evidence and should be disclosed. The passenger may have seen the altercation and/or can shed further light on this incident. There is no foundational basis for this objection.

Mister Phillips, Esq.
August 1, 2008
Page 7

Re:    Bracko v. City of San Pablo

Bracko should accordingly identify who his passenger was when he decided to flee from Officer Caine at a future deposition.

**D.    What is Bracko's Personal History of Marijuana Use and What were the Circumstances under which Bracko was Found with a Significant Amount of Marijuana?**

1.    What is Bracko's Personal History of Using Marijuana?

You instructed Bracko not to answer questions relating to his personal history of using marijuana, again on the grounds that it purportedly calls for Bracko to be a witness against himself in violation of the Fifth Amendment as well as being irrelevant. (Pl.'s Depo. 157:25-159:14).

The police report describing this incident indicates Bracko told Officer Brady that the approximately seventy-seven (77) grams of marijuana found in his car and on his person was for "personal use". Photographs taken of Bracko's possessions following his arrest also support the fact that Bracko was found with a significant amount of marijuana. The amount of marijuana found on Bracko is obviously inconsistent with personal use. Since Bracko claims all the marijuana found at the scene (1) admittedly belonged to him; (2) was for personal use, and (3) was actually his mother's for medicinal purposes, Bracko's personal history of marijuana use is relevant to his truthfulness and motive for fleeing from and struggling with Officers Brady and Caine.

Similarly to the discussion above relating to whether Bracko had ingested any illegal narcotics on the date in question, Bracko has already been prosecuted for and pled no contest to a misdemeanor for possession of marijuana. Subsequent prosecution for this crime is therefore barred by principles of double jeopardy. Also, there can be no concern that Plaintiff will be prosecuted for admissions as to past drug abuse.

Again, the District Attorney is currently prohibited from prosecuting Bracko for being under the influence of marijuana before August 1, 2007 under applicable statutes of limitation. Given the significant amount of marijuana found during his arrest and detention, and the dispute as to whether Bracko told Officer Brady that the marijuana was for personal use, questions relating to Bracko's personal history of using marijuana are directly relevant to (1) his state of mind at the time of the incident; (2) whether he can accurately and completely recall the events leading up to his arrest, and; (3) his motive for fleeing from the officers. Bracko therefore should answer questions relating to his personal history of using marijuana.

Mister Phillips, Esq.
August 1, 2008
Page 8

Re:    <u>Bracko v. City of San Pablo</u>

2.    <u>Where did Bracko Obtain the Marijuana he was Found with?</u>

You did not allow Bracko to answer questions regarding where he obtained the significant amount of marijuana that was found on his person and car. (Pl.'s Depo. pg. 159:16-159:24). Again, you based this objection on the grounds that an answer to this question would be self-incriminatory. Your objection had no reasonable or legitimate basis.

As discussed at length above, the District Attorney is prohibited from prosecuting Bracko for possession of marijuana on the date of the incident based on double jeopardy principles. He can therefore have no reasonable basis for fear of prosecution relating to possession of marijuana on the day of the incident.

Where Bracko obtained the marijuana is directly relevant to (1) who the marijuana was intended for; (2) whether the marijuana was for personal use or sale, and (3) Bracko's credibility and truthfulness. Since there is a dispute between the parties as to whether (1) Bracko told Officer Brady whether the marijuana was for personal use and (2) whether a jury could infer that Bracko fled from the police because he possessed a significant amount of marijuana and accordingly feared prosecution for possession for sale, where Bracko obtained the marijuana is directly relevant to that dispute.

3.    <u>Why does Bracko no Longer Possess a Cannabis Card?</u>

Bracko stated in his deposition that he (1) obtained a valid cannabis card and held it from 2000 to 2007 as a caregiver to his mother in order to provide her with medicinal marijuana; (2) the marijuana he obtained with the cannabis card was always provided to his mother; (3) he never used the card for his own purposes; (4) he obtained the marijuana found on him by Officers Brady and Caine from the Hilltop Cannabis Club in Richmond, California, on the day of the incident, and; (5) he intended to provide the marijuana he obtained from the Hilltop Cannabis Club on the day of the incident to his mother. (Pl.'s Depo. pgs. 159:25-162:15)

You did not allow Bracko to answer why his caretaker cannabis card was cancelled in 2007 on the grounds that the answer might incriminate him. (Pl.'s Depo. pgs. 162:18-164:2). Questions relating to why Bracko's cannabis card was cancelled could be directly relevant to, among other issues, the actions taken by various California state agencies following Bracko's arrest for and conviction of marijuana possession. If a state agency determined that Bracko was unlawfully using his caretaker cannabis card by not providing the marijuana he obtained from various cannabis clubs to his mother for medicinal purposes, that fact would be directly relevant to Bracko's motive for fleeing from the police and subsequently resisting arrest. Defendants are therefore entitled to question Bracko about why his caretaker cannabis card was cancelled.

Mister Phillips, Esq.
August 1, 2008
Page 9

Re:    <u>Bracko v. City of San Pablo</u>

    4.    <u>Where did Bracko Obtain $600 to buy the Marijuana he was Found with?</u>

You refused to allow Bracko to provide information about where he obtained approximately $600 in order to buy the marijuana he was found with after Officers Caine and Brady arrested him. (Pl.'s Depo. pgs. 164:3-165:5). Clearly, such information is relevant to ascertaining Bracko's motive in possessing the marijuana (*i.e.* was it for personal use, for sale, or for his mother?). It is also relevant because Bracko admitted he has only held one job since graduating from high school in 2000, and that employment terminated in December, 2004. Where Bracko obtained $600 to purchase marijuana given his lack of employment and corresponding limited funds at the time of the incident is obviously relevant to Bracko's motive for fleeing from and resisting the police.

As discussed above, the statute of limitations for possession of marijuana for sale forecloses the possibility of Bracko's prosecution for such a crime. Finally, the District Attorney cannot constitutionally prosecute Bracko for possession of marijuana for sale due to double jeopardy principles. Accordingly, Bracko should identify the source from which he obtained $600 to purchase the marijuana he was found in possession of.

    5.    <u>Does Bracko Remember Receiving a Text-Message Regarding a Request for Marijuana?</u>

Finally, you instructed Bracko not to answer a question regarding whether he remembers receiving a text-message from an unidentified caller stating "Call me fool. I need sum (sic) weed." (Pl.'s Depo. pg. 211:5-24). Your objection was that the question called for Bracko to potentially incriminate himself in violation of the Fifth Amendment.

This question is clearly relevant to understanding Bracko's motive for fleeing from and resisting Officer Brady. If Bracko remembers receiving a text-message requesting marijuana before the day of the incident, that fact indicates Bracko may indeed be a known marijuana seller and the marijuana in his possession was in fact for sale. Of course, this may also explain why Bracko so forcefully attempted to avoid being arrested on the date in question.

As discussed extensively above, the District Attorney is constitutionally prohibited from charging Bracko with possession of marijuana for sale on the date of the incident under double jeopardy principles. The District Attorney is also precluded from charging Bracko with the same crime because the applicable statute of limitations period has run. Bracko should accordingly answer whether or not he remembers receiving a text-message requesting marijuana.

Mister Phillips, Esq.
August 1, 2008
Page 10

Re:   Bracko v. City of San Pablo

## III.   WITNESS STATEMENTS OF LORRAINE HUNT AND ASHLEE WILSON

### A.   The Written Witness Statements of Lorraine Hunt and Ashlee Wilson are not Protected by the Attorney Work-Product Doctrine.

At the depositions of Ms. Hunt and Ms. Wilson, they both testified that you obtain a written factual statement of incident from them (different than Ms. Hunt's prior handwritten statement) which they gave to you and you gave them each a copy. These statements are discoverable and should have been produced pursuant to Plaintiff's duty of disclosure under FRCP 26. As discussed above, this case now exclusively involves a "federal question", and privileges are therefore determined under federal law. FRE 501; *United States v. Zolin, supra*, 491 U.S. 554, 562 (1989). The work-product doctrine protects trial preparation materials that reveal an attorney's strategies, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews. The Rutter Group, Cal. Prac. Guide, Fed. Civ. Pro. Before Trial, Chap. 11, § 825, citing FRCP 26(b)(3); see also *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). However, the work-product doctrine does *not* protect documents or reports prepared by independent witnesses. The Rutter Group, Cal. Prac. Guide, Fed. Civ. Pro. Before Trial, Chap. 11, § 865.

Because Ms. Hunt and Ms. Wilson are (purportedly) independent witnesses, their factual statements, whether or not prepared by you, are relevant and not protected by the attorney work-product doctrine. These statements should have been identified in Bracko's Initial Disclosures and also produced herein. Defendants accordingly demand that you produce these statements immediately.

Alternatively, FRCP 26(b)(3) provides that an opposing party is entitled to documents that would otherwise be protected under the work-product doctrine if it can show (1) a substantial need; and (2) is unable without undue hardship to obtain the substantial equivalent of the materials by some other means. Because these statements could corroborate or contradict Ms. Hunt and Mr. Wilson's account of the incident as they testified in deposition, these statements are relevant, are needed by Defendants and we cannot obtain them through the witnesses as they are homeless and do not know where the statements are. They could also provide evidence favorable to Plaintiff which Defendants want to explore.

Because these statements are in your exclusive possession, and you have refused to produce them or disclose their contents, Defendants cannot obtain the information contained in these statements by some other means. Accordingly, should you refuse to produce these statements, Defendants will have no choice but to seek an order compelling disclosure. At a minimum, to be able to fully evaluate Plaintiff's objections to disclosure, Plaintiff should provide a privilege log as mandated by FRCP 26.

Mister Phillips, Esq.
August 1, 2008
Page 11

Re:    Bracko v. City of San Pablo

## IV.    CONCLUSION

Your objections to Defendants' simple, straightforward and non-objectionable questions were not well-taken and had no legitimate or reasonable bases in law or fact. Bracko should answer the questions and related areas as discussed above. If you refuse to offer up and allow Bracko to answer these questions, Defendants will move for an order compelling him to do so. Defendants will also seek, by August 15, 2008, appropriate sanctions for being forced to prepare the motion to compel to respond to Plaintiff's unjustified positions and meritless objections.

The statements of Ms. Hunt and Ms. Wilson are likewise not privileged. Defendants accordingly demand you produce these statements. If you do not, Defendants will seek an order compelling you to produce such statements by August 15, 2008.

Should you have any questions, please do not hesitate to contact the undersigned, or James V. Fitzgerald, III, the lead trial attorney on this matter.

Very Truly Yours,

Noah G. Blechman

# EXHIBIT B

# LAW OFFICE *of* MISTER PHILLIPS

P.O. Box 1162
Pinole, CA 94564
Phone: (510) 672-3756
Fax: (510) 222-4198
http://www.misterphillips.com

8/14/08

Noah Blechman, Esq.
McNamara Dodge
P.O. Box 5288
Walnut Creek, CA 94596

Re: <u>Bracko v. Caine</u>

Dear Mr. Blechman:

After reflecting on the deposition of Christian Bracko, including the questions you asked and the police officers who were present and taking notes, I am convinced that Defendants are using the deposition to conduct an investigation into alleged illegal drug sales. This is an abuse of the discovery process. This is also annoying, embarrassing, and/or oppressive to Bracko. Therefore, Bracko objects to further questioning and plans to seek a protective order.

Furthermore, Bracko specifically objects to the following questions on the grounds stated below.

**Why did Bracko flee?**

First, Bracko asserts his right against self-incrimination. Bracko's testimony could lead to his criminal prosecution for other more serious crimes.

Second, why Bracko fled is not relevant, because it does not have any tendency to make *the sole issue in this case: whether Defendant used excessive force on Bracko*, more probable or less probable, especially since Defendant did know why Bracko fled.[1]

---

[1] Although *why* Bracko fled is not relevant, *whether* Bracko fled is. See Ninth Circuit Model Civil Jury Instruction 9.22(3).

1

**Did Bracko use illegal drugs on the day of the incident?**

As Defendants stated on page six of their meet and confer letter, Bracko already answered this question.

**Who was with Bracko?**

First, Bracko asserts his privilege against self-incrimination. The individual's testimony could lead to the criminal prosecution of Bracko for other more serious crimes.

Second, Bracko objects on the ground that identifying the individual to the police could place Bracko in grave danger.

**What is Bracko's history of alleged drug use?**

First, Bracko asserts his right against self-incrimination. Bracko's testimony could be used against him in future criminal proceedings.

Second, Bracko objects on the ground that the question is unreasonably annoying, embarrassing, and/or oppressive.

Third, Bracko's history of alleged drug use is not relevant, because it does not have any tendency to make Defendant's use of unreasonable force more probable or less probable.

**Where did Bracko get marijuana?**

First, Bracko asserts his right against self-incrimination. Bracko's testimony could lead to his criminal prosecution for other more serious crimes.

Second, according to page eight of Defendants' meet and confer letter, Bracko already answered this question. "Bracko stated in his deposition that … he obtained the marijuana found on him by Officers Brady and Caine from the Hilltop Cannabis Club in Richmond, California …."

Third, where Bracko got marijuana is not relevant, because it does not have any tendency to make Defendant's use of unreasonable force more probable or less probable.

**Why does Bracko no longer have a cannabis card?**

First, Bracko asserts his right against self-incrimination. Bracko's testimony could lead to his criminal prosecution for other more serious crimes.

Second, why Bracko no longer has a cannabis card is not relevant, because it does not have any tendency to make Defendant's use of unreasonable force more probable or less probable.

**Where did Bracko get money to buy marijuana?**

First, Bracko asserts his right against self-incrimination. Bracko's testimony could lead to his criminal prosecution for other more serious crimes.

Second, where Bracko got money to buy marijuana is not relevant, because it does not have any tendency to make Defendant's use of unreasonable force more probable or less probable.

**Does Bracko remember receiving a request for marijuana?**

First, Bracko asserts his privilege against self-incrimination. Bracko's testimony could lead to his criminal prosecution for other more serious crimes.

Second, whether Bracko remembers receiving a request for marijuana is not relevant, because it does not have any tendency to make Defendant's use of unreasonable force more probable or less probable.

**Witness statements I took**

First, the witness statements I took are my protected work-product.

Second, the exception to the work-product doctrine does not apply, because Defendants have already obtained "the substantial equivalent" of the witness statements by deposing the witnesses.

If you have any questions about Bracko's position, please call me.

Cordially,


Mister Phillips, Esq.

3

# EXHIBIT C

1          UNITED STATES DISTRICT COURT

2     NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

3                    --oOo--

4                                        COPY

5

6   CHRISTIAN J. BRACKO,                    )

7                    Plaintiff,             )

8             vs.                           )   No. C08-00239

9                                           )

10  ALEX CAINE; CITY OF SAN PABLO, CA;      )

11  and DOES 1 - 10, inclusive              )

12                    Defendants.           )

13                                          )

14

15        DEPOSITION OF CHRISTIAN J. BRACKO

16

17

18      Taken before JULIE MAGGI VASTA,

19       A Certified Shorthand Reporter,

20    License No. C-2947, State of California

21

22            July 3, 2008

23                                   McNamara, Dodge, Ney, Beatty,
                                     Slattery & Pfalzer LLP

24            --oOo--                 JUL 17 2008

25                                    HAND-DELIVERED


**Zandonella**
REPORTING SERVICE, INC.

1

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    A.  Yes.

2    Q.  Okay.  And where did you go from that house?

3    A.  To Parchester.

4    Q.  So you were driving from Vallejo to Richmond?

5    A.  No.  I was driving from San Pablo to Richmond.

6    Q.  I thought Adante lived in Vallejo?

7    A.  He's staying in Vallejo now.  He stayed in San

8  Pablo at the time.

9    Q.  Gotcha.  So you were in San Pablo at Adante's

10  house?

11    A.  Yes.

12    Q.  Where was Adante's house in San Pablo?  Do you

13  remember the address?

14    A.  I don't know the address.

15    Q.  From the area of where this incident occurred

16  to Adante's house, how far away was it?

17    A.  Not that far.

18    Q.  Pretty close?

19    A.  Yeah.

20    Q.  Yes?

21    A.  Yes.

22    Q.  Now, at Adante's house did you ingest any

23  prescription medication?

24    A.  No.

25    Q.  Did you take -- did you ingest any illegal

**Zandonella**
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    drugs such as marijuana, cocaine, crack?

2        MR. PHILLIPS:  Objection.

3        Do not answer that question.

4        MR. BLECHMAN:  Hold on.  Hold on.

5    Methamphetamines, anything like that?

6        MR. PHILLIPS:  Objection.

7        Do not answer that question.

8        MR. BLECHMAN:  What's the basis of your objection,

9    Counsel?

10        MR. PHILLIPS:  It's potentially incriminating.

11        MR. BLECHMAN:  You're afraid your client's going to

12    be prosecuted for admitting that he was taking drugs at

13    the time before this incident?

14        MR. PHILLIPS:  No comment.  But the question that

15    you're asking him is an incriminating question and he's

16    not going to answer that.

17        MR. BLECHMAN:  It's certainly a fair question.  I

18    don't have to ask these questions but for the fact that

19    your client, Mr. Bracko, is suing my officers in

20    relation to this incident.

21        This information is directly relevant to your

22    client's recollection of events, his ability to recall

23    events, his state of mind at the time of the incident,

24    those type of things.

25        So if you're going to instruct him not to answer



Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

87

1    the question, I can assure you that that's going to be a

2    subject of a motion to compel.  I am going to seek

3    sanctions for what I think is an unsubstantiated

4    objection to a fair question.

5        So, you know, I ask you to reconsider you position

6    in that sense.

7        MR. PHILLIPS:  If we were in front of the judge

8    right now I would agree that it's a relevant question

9    for the reasons that you stated, and I don't disagree

10   with that.

11       But I don't think -- I would hope that the judge

12   will not sanction me because I told my client not to

13   answer whether he was smoking crack in a deposition

14   under oath.  I would hope that the judge would not

15   sanction me for that.  Maybe he would, I would hope that

16   he wouldn't.

17       But I am instructing my client not to answer this

18   question.

19       MR. BLECHMAN:  Now, I am not asking him if he

20   smoked crack a week ago or, you know, took

21   methamphetamines, you know, five years ago.

22       I am asking specifically about if he was doing any

23   drugs the day of incident, the time right before the

24   incident, which is certainly relevant and a fair

25   question.


**Zardorella**
REPORTING SERVICE, INC.

88

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1      MR. PHILLIPS:  Noah, I already said that I don't

2  dispute that's it's a relevant question.  You can tell

3  me 50 times that it's relevant, and I will say 50 times

4  I agree.

5      But I will say to you 50 times that it's an

6  incriminating question and he will not be answering that

7  question.

8      MR. BLECHMAN:  Okay.  Well, we are also going to

9  also mark that portion of the transcript.  I am going to

10  seek a motion I guess on this.  I am going to seek

11  sanctions for having to spend the time to do the motion

12  for information that Counsel has even conceded is

13  relevant.

14      There are some facts that Mr. Bracko, in my opinion

15  and information, that he has waived by bringing suit in

16  this case, one of which is things he was doing leading

17  up to this incident, et cetera, et cetera.

18      So I am going to reserve my right to bring him back

19  for further questioning once we sort out that issue.

20  Obviously with the E&E in this case set up for

21  July 21st, it's not going to be an issue that we can

22  probably resolve before then.

23      So, you know, it is what it is.  We'll have to

24  bring a motion at that point to ask those questions.

25      Just so I am making my record correctly here,



89

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    you're not going to allow me to -- well, I will ask my

2    question and you can make your objection.

3        Q.   Just so the record's clear, while you were at

4    Adante's house just prior to this incident, had you

5    ingested any illegal drugs such as marijuana, crack,

6    cocaine, methamphetamines, anything like that?

7        MR. PHILLIPS:  Objection.  Incriminating.

8        Do not answer that question.

9        MR. BLECHMAN:  Okay.  And my prior certification is

10   the same certification for that question.

11       Q.   Had you drank any alcohol or anything like that

12   at Adante's house?

13       A.   No.

14       MR. BLECHMAN:  This might be a good time to break

15   for lunch before we get into more headbutting.

16       We'll take a quick lunch break.

17                (Lunch recess taken.)

18       MR. BLECHMAN:  We're back from a brief lunch

19   break.

20       I have met and conferred off the record with

21   Mr. Phillips.  He's still taking the same position with

22   regard to instructing his client not to answer any

23   questions about whether or not he had taken any drugs

24   just prior to the incident, and I want to ask a

25   follow-up question regarding that subject to Counsel's

**Zardorella**
REPORTING SERVICE, INC.          90

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1  STATE OF CALIFORNIA      )
                            ) ss.
2  COUNTY OF CONTRA COSTA  )

3      I, JULIE MAGGI VASTA, CSR, License No. C-2947, do

4  certify:

5      That CHRISTIAN J. BRACKO, the witness in the

6  foregoing deposition, was by me first duly sworn to

7  testify the truth, the whole truth and nothing but the

8  truth in the within-entitled cause;

9      That said deposition was reported at the time and

10 place therein stated by me, a Certified Shorthand

11 Reporter, and thereafter transcribed into typewriting;

12     I further certify that I am not interested in the

13 outcome of said action, nor connected with, nor related

14 to, any of the parties of said action or to their

15 respective counsel.

16     IN WITNESS WHEREOF, I have hereunto set my

17 hand this 11th day of July        , 2008

18

19 JULIE MAGGI VASTA, CSR, License C-2947

20

21

22

23

24

25

**Zandonella**
**REPORTING SERVICE, INC.**
Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

# EXHIBIT D

1  MISTER PHILLIPS, SBN 228991
   **LAW OFFICE OF MISTER PHILLIPS**
2  P.O. Box 1162
   Pinole, CA 94564
3  Phone: (510) 672-3756
   Fax: (510) 222-4198
4  mister_phillips@hotmail.com

5  Attorney for Plaintiff Christian J. Bracko

6

7               UNITED STATES DISTRICT COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9               SAN FRANCISCO DIVISION

10

11 CHRISTIAN J. BRACKO,          ) Case No.: 3:08-cv-00239-JL
                                 )
12          Plaintiff,           ) **INITIAL DISCLOSURES**
                                 )
13      vs.                      )
                                 )
14 ALEX CAINE; CITY OF SAN PABLO,)
                                 )
15 CA; and DOES 1-10, inclusive, )
                                 )
16          Defendants.          )
                                 )
17 ────────────────────────────────

18 **1.    Witnesses**

19   1. Police Officer Robert Brady saw Police Officer Alex Caine

20      jump on the plaintiff's head with his knee. Address and

21      telephone number unknown

22   2. Lorraine Hunt saw Police Officer Caine jump on the

23      plaintiff's head with his knee. Address and telephone

24      number unknown

25   3. Ashlee Wilson saw Police Officer Caine jump on the

26      plaintiff's head with his knee. Address and telephone

27      number unknown

28

---

McNamara Law Firm        INITIAL DISCLOSURES; Case No.: 3:08-cv-00239-JL - 1

APR 2 1 2008

4. Adontae Dotson saw Police Officer Caine jump on the plaintiff's head with his knee. 200 BW Williams Dr, Vallejo, CA 94589, (510) 827-5696

5. Medical professionals at Kaiser Permanente in Martinez, CA

## 2.   Documents

Medical records at Kaiser Permanente in Martinez, CA

## 3.   Damages Computation

| Damages | Amount |
|---|---|
| Pain and suffering | $125,000.00 |
| Emotional distress | $25,000.00 |
| Medical expenses | $5,000.00 |
| Civil penalties | $100,000.00 |
| Punitive damages | $2,500,000.00 |

## 4.   Insurance

N/A

Dated: April 18, 2008                    Respectfully Submitted,

/s/ Mister Phillips
Mister Phillips
Attorney for Plaintiff
Christian J. Bracko

## PROOF OF SERVICE

I am over 18 years of age. I am not a party to this civil action. My business mailing address is: Law Office of Mister Phillips, P.O. Box 1162, Pinole, CA 94564.

On the date below, I served "Intitial Disclosures" on the following individual(s) by first class mail:

| | |
|---|---|
| Noah Blechman, Esq.<br>McNamara Dodge LLP<br>1211 Newell Ave<br>Walnut Creek, CA 94596-5331 | |

I do hereby declare under penalty of perjury under the laws of the State of California that the foregoing information in this proof of service is true and correct.

Dated: April 18, 2008                    Respectfully Submitted,


_____
Mister Phillips
Attorney for Plaintiff

# EXHIBIT E

1　　　　UNITED STATES DISTRICT COURT

2　　NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

3　　　　　　　　　　--oOo--

4　　　　　　　　　　　　　　　COPY

5

6　CHRISTIAN J. BRACKO,　　　　　　　　　)

7　　　　　　　　　Plaintiff,　　　　　)

8　　　　　vs.　　　　　　　　　) No. C08-00239

9　　　　　　　　　　　　　　　　)

10　ALEX CAINE; CITY OF SAN PABLO, CA;　)

11　and DOES 1 - 10, inclusive　　　　)

12　　　　　　　　　Defendants.　　　　)

13　　　　　　　　　　　　　　　　)

14

15　　　　DEPOSITION OF ASHLEE LEAH WILSON

16

17

18　　　　Taken before JULIE MAGGI VASTA,

19　　　　A Certified Shorthand Reporter,

20　　License No. C-2947, State of California

21

22　　　　　　July 14, 2008

23

24　　　　　　　--oOo--

McNamara, Dodge, Ney, Beatty,
Slattery & Pfalzer LLP

25　　　　　　　　　　　　　JUL 28 2008
HAND DELIVERED


**Zandonella**
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    Q.  During that two or three minutes Bracko was not

2  -- Bracko was resisting the officer.  Would you agree

3  with that?

4    A.  I mean, I said I agree with that, you know.

5  But the third officer didn't have to do that to Bracko.

6    He could have just waited and see that he was

7  getting pulled up, that he already his hands cuffs, he

8  was already, you know, listening to the officers, the

9  two officers.

10    Q.  Right.  But before that, before the third

11  officer, during this two or three minute struggle,

12  Bracko is resisting that initial first officer,

13  correct?

14    A.  For two to three minutes.

15    Q.  He's resisting him for two or three minutes,

16  correct.

17    A.  Yes.

18    Q.  Have you ever talked with Mr. Phillips

19  before?

20    A.  Yes.

21    Q.  What have you guys talked about?

22    A.  I told him what happened and he wrote it down

23  so -- that's it.

24    Q.  Who else was around when you had this

25  conversation with Mr. Phillips?

**Zandonella**
REPORTING SERVICE. INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

68

1    A.  My mother.

2    Q.  And when did that happen when you had this

3 conversation and he was writing something down?

4    A.  I forgot -- it was last year.  But I just can't

5 remember the date and the month.

6    Q.  But you know it was some time in 2007?

7    A.  Yes.  Correct.

8    Q.  Did he ever have you sign that document?

9    A.  Correct.

10    Q.  And have you ever seen that signed document?

11    A.  Correct.

12    Q.  Did he give you a copy of it?

13    A.  Yes.

14    Q.  And that's different than what your mom wrote

15 in her handwriting after the incident, correct?

16    A.  Me and my mother's story is totally different.

17    Q.  How so?

18    A.  It's similar, but it's different.

19    Q.  How is it different?

20    A.  Well, I seen everything that happened to

21 Bracko.  She seen it, but she wasn't as close as I was.

22 That's the only thing about it.

23    Q.  Now, the statement that you gave Mr. Phillips

24 and he wrote down and you signed it, was that something

25 that he typed up?

**Zardorella**
REPORTING SERVICE, INC.

69

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1     A.  Huh?

2     Q.  When you had this conversation with Mr.

3 Phillips who's the attorney sitting next to you, did he

4 type it up and then you sign it?  Or was it something

5 handwritten and then you signed it?

6     A.  It was type.

7     Q.  It was typed?

8     A.  Yes.

9     Q.  And you have a copy of that at your house?

10     A.  Yes.

11     Q.  And did he type up something for your mom

12 also?

13     A.  Yes.

14     Q.  And did she sign that?

15     A.  Yes.  Anybody else get any statement typed up

16 by Mr. Phillips that you're aware of?

17     A.  No.

18     Q.  How about Dante?

19     A.  I don't know because I don't talk to Dante like

20 that, so I don't know.

21     Q.  How about Shaenedra?

22     A.  No.

23     Q.  After Christian got out of jail after this

24 incident, did you see him a couple days after this

25 incident?

**Zardorella**
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    STATE OF CALIFORNIA      )
                              ) ss.
2    COUNTY OF CONTRA COSTA )

3        I, JULIE MAGGI VASTA, CSR, License No. C-2947, do

4    certify:

5        That ASHLEE LEAH WILSON, the witness in the

6    foregoing deposition, was by me first duly sworn to

7    testify the truth, the whole truth and nothing but the

8    truth in the within-entitled cause;

9        That said deposition was reported at the time and

10   place therein stated by me, a Certified Shorthand

11   Reporter, and thereafter transcribed into typewriting;

12       I further certify that I am not interested in the

13   outcome of said action, nor connected with, nor related

14   to, any of the parties of said action or to their

15   respective counsel.

16           IN WITNESS WHEREOF, I have hereunto set my

17       hand this 23rd day of July        , 2008

18           *Julie Maggi Vasta*

19       JULIE MAGGI VASTA, CSR, License C-2947

20

21

22

23

24

25

**Zandonella REPORTING SERVICE, INC.**

89

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829