1   JAMES V. FITZGERALD, III (State Bar No. 55632)
    NOAH G. BLECHMAN (State Bar No. 197167)
2   J. GARRET DEAL (State Bar No. 249934)
    McNamara, Dodge, Ney, Beatty, Slattery,
3   Pfalzer, Borges & Brothers LLP
    1211 Newell Avenue
4   Post Office Box 5288
    Walnut Creek, CA 94596
5   Telephone: (925) 939-5330
    Facsimile:  (925) 939-0203
6
    Attorneys for Defendants
7   ALEX CAINE and CITY OF SAN PABLO

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  CHRISTIAN J. BRACKO,                      Case No. C08-00239 JL

12              Plaintiff,                    **MEMORANDUM OF POINTS AND
                                              AUTHORITIES IN SUPPORT OF
13       vs.                                  DEFENDANTS' MOTION TO COMPEL
                                              ANSWERS TO DEPOSITION
14  ALEX CAINE; CITY OF SAN PABLO;            QUESTIONS AND PRODUCTION OF
    and DOES 1-10, inclusive,                 DOCUMENTS**
15
                Defendants.                   Date:  October 1, 2008
16                                            Time:  9:30 a.m.
                                              Dept.: Courtroom F, 15th Floor
17                                            Judge: Honorable James Larson

18

19

20

21

22

23

24

25

26

27  Memorandum of Points and Authorities in Support of
    Defendants' Motion to Compel Answers to Deposition
28  Questions and Production of Documents - C08-00239 - JL

*Sidebar (vertical text):* McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP / ATTORNEYS AT LAW / P.O. BOX 5288, WALNUT CREEK, CA 94596 / TELEPHONE: (925) 939-5330

## I.    INTRODUCTION

This is a civil rights lawsuit brought pursuant to 42 U.S.C. § 1983 wherein Plaintiff, Christian J. Bracko ("Plaintiff" or "Bracko") alleges that Defendants Officer Alex Caine ("Caine") and the City of San Pablo ("City"), violated his Fourth Amendment rights to the Constitution of the United States by using excessive force during his arrest.[1]    During his deposition, Defendants asked Plaintiff simple, straightforward, and directly relevant questions relating to the facts of his arrest and other issues central to this lawsuit.    However, Plaintiff refused to answer many important questions upon the direct advice of counsel.    Plaintiff has also refused to produce statements of witnesses, claiming they are protected under the attorney "work product" privilege.    Because Plaintiff's answers to these questions are relevant and non-privileged, and the documents his counsel is withholding are likewise non-privileged, Defendants respectfully move for an Order from the Court compelling Plaintiff to answer Defendants' questions, allowing reasonable follow-up questions, and produce documents, as described below.

## II.    FACTUAL BACKGROUND

On November 27, 2006, San Pablo Police Department ("SPPD") Officer Robert Brady ("Brady") attempted to pull Plaintiff over for driving with an expired registration.    Rather than comply, Plaintiff fled from Brady in his car and then by foot.    Brady caught Plaintiff after a brief foot pursuit, but Plaintiff continued to resist and failed to submit to arrest.    Eventually, with the assistance of SPPD Officer Caine, the officers controlled Plaintiff and handcuffed him.    The officers later determined Plaintiff was also driving on a suspended license and possessed a substantial amount of marijuana.    Plaintiff was subsequently convicted of several charges, including resisting arrest in violation of California Penal Code ("PC") § 148(a)(1), and misdemeanors for evading the police in a motor vehicle under California Vehicle Code ("CVC") § 2800.1 and possession of marijuana in violation of California Health & Safety Code ("H & S")

---

[1] Plaintiff's Second Amended Complaint originally contained nine (9) additional causes of action under California state law, but the Court dismissed them with prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Memorandum of Points and Authorities in Support of
Defendants' Motion to Compel Answers to Deposition
Questions and Production of Documents – C08-00239 - JL

2

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

§ 11357(c).  Thereafter, Plaintiff filed a lawsuit against Caine and the City of San Pablo[2], alleging excessive force during the arrest.

### III.    RELEVANT PROCEDURAL HISTORY

On July 3, 2008, Defendants deposed Plaintiff.  During the deposition, Plaintiff's counsel instructed Plaintiff not to answer several directly relevant[3] and clearly unobjectionable questions regarding several important aspects of Plaintiff's arrest and other important facts on the grounds that the answers could prove "incriminatory".[4]  Because all of the facts relating to Plaintiff's arrest are crucial to this case of alleged excessive force, Defendants reserved their rights during Plaintiff's deposition to demand that he offer himself up at a future date for further questioning.  Additionally, during the deposition and thereafter, Plaintiff has refused to produce the statements of two purported eyewitnesses, Lorraine Hunt ("Hunt") and Ashley Wilson ("Wilson"), on the grounds of the attorney "work product" privilege.

On August 1, 2008, Defendants, in an attempt to avoid seeking judicial intervention into this discovery dispute, wrote Plaintiff in a good faith effort to meet and confer pursuant to Federal Rule of Civil Procedure ("FRCP") 37 (a)(2)(B) and Northern District of California Local Rule 37-1(a).  ("**Exhibit A**" to Declaration of Noah G. Blechman ("Blechman Decl."))  In their letter, Defendants attempted to persuade Plaintiff that their deposition questions were clearly relevant and unobjectionable.  Id.  Defendants also demanded that Plaintiff produce Hunt and Wilson's statements, which Plaintiff should have previously done in his initial disclosures pursuant to FRCP 26(a)(1).  Id.  Defendants further informed Plaintiff that, should he refuse to agree to offer himself up for further questioning and/or produce these statements by August 15, 2008, Defendants would have no choice but to file this Motion to Compel, along with a corresponding

---

[2] It merits noting that Bracko does not contend Brady used excessive force.

[3] What makes the necessity of this Motion even more outrageous is the fact that Plaintiff's counsel ***admitted*** during Plaintiff's deposition that the questions were ***directly relevant*** to this case, as discussed below.  Plaintiff's counsel expressed "hope" the Court would not sanction him for his unprofessional and dilatory conduct.  Plaintiff's "hope" is not an acceptable excuse and Defendants have filed concurrently herewith a Motion for Sanctions against Plaintiff.

[4] As discussed extensively below, Plaintiff cannot show how or why his answers to these questions could potentially prove "incriminatory".

Memorandum of Points and Authorities in Support of
Defendants' Motion to Compel Answers to Deposition
Questions and Production of Documents – C08-00239 - JL

3

1    request for appropriate sanctions.  Id.  To date, Plaintiff has refused to submit to further

2    deposition questioning or to produce the witness statements, thus making this Motion necessary.

3    (August 14, 2008 letter (Sent and received August 15, 2008) from Plaintiff's Counsel, Mister

4    Phillips, to Noah G. Blechman, attached as "**Exhibit B**" to Blechman Decl.)

5                              **IV.    ARGUMENT**

6          FRCP 37(a)(2)(B) provides, in relevant part, "[i]f a deponent fails to answer a question

7    propounded…the discovering party may move for an order compelling an answer…".  Evasive or

8    incomplete answers to deposition questions are likewise treated as a total failure to answer.

9    FRCP 37(a)(3).

10          In addition, Northern District of California Local Rule 37-2 provides, in relevant part,

11              a motion to compel further responses to discovery requests must
12              set forth each request in full, followed immediately by the
                objections and/or responses thereto.  For each such request, the
13              moving papers must detail the basis for the party's contention that
                it is entitled to the requested discovery and must show how the
14              proportionality and other requirements of [FRCP] 26(b)(2) are
                satisfied.

15    Accordingly, Defendants' relevant deposition questions and Plaintiff's responses and objections

16    are set out in full below, with descriptive titles for each subject of questions Plaintiff should be

17    ordered to answer.  For the reasons discussed below, the Court should Order Plaintiff to provide

18    responsive answers to the following relevant, unobjectionable questions, as well as allow

19    reasonable follow-up questions.

20        **A.    Why did Plaintiff Initially Flee From Officer Brady?**

21          Defense counsel asked Bracko a simple, straightforward question regarding why he

22    initially fled from Officer Brady in his car.

23        Q:          When you were driving in your car and fleeing from the officer, you knew
24                    that there was an officer behind you that was trying to stop you?

25        A:          Yes.

26        Q:          Now, why was it that you were fleeing?

27    Memorandum of Points and Authorities in Support of                4
      Defendants' Motion to Compel Answers to Deposition
28    Questions and Production of Documents – C08-00239 - JL

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

Mr. Phillips:    Do not answer that.

Mr. Blechman: I think it's a fair question.

The Witness:    I am going to abide by –

Mr. Phillips:    Don't. Just don't answer it. It's an unfair question. Don't answer it. It has nothing to do with the case and just don't answer the question.

Mr. Blechman: It's directly relevant to issues in this case, so I don't understand your objection. Other than asking your client not to answer the question, you know, what's your legal objection?

Mr. Phillips:    This case has a bunch of criminal elements floating around it, which you know. You have two police officers who are sitting over there taking notes and writing down phone numbers of the people he's talking about. So they are going to do whatever they're going to do when they leave here. And the bottom line is I don't want anybody putting my client in jail because he sued the police department. And I am not saying because he sued the police department, but because he came in here and said a whole bunch of stuff that he had no business saying and he ends up in jail because he brought a civil suit. So don't answer the question.

Mr. Blechman: Hold on. What's your legal objection? Are you trying to make a 5th Amendment ---

Mr. Phillips:    Something like that.

Mr. Blechman: ---incrimination objection?

Mr. Phillips:    Yes. To the extent that you're asking him incriminating questions or potentially incriminating questions in here, I have instructed him already not to answer the question.

Mr. Blechman: Wow. First of all, he has already --- as far as I am aware, he's already been charged and convicted of crimes arising out of this incident. So I don't believe there is any 5th Amendment rights to assert here in terms of self incrimination. I am entitled to find out why – what his intent was and why he was fleeing. That's directly relevant to the issues in this case. If you're going to instruct him not to answer the question, that's your prerogative. I am going to mark that portion of the transcript and chances are we are going to have to bring him back to answer those types of questions. I mean, it's a fair question in a case involving a fleeing suspect and then followed by a struggle. So that's my position.

Mr. Phillips:    I understand. But to the extent that the question is potentially incriminating, he's not going to answer that today. But outside of that, ask away.

Mr. Blechman: So as to why he was fleeing from the officers, you're not going to allow him to answer this question?

Memorandum of Points and Authorities in Support of
Defendants' Motion to Compel Answers to Deposition
Questions and Production of Documents -- C08-00239 - JL.

5

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

Mr. Phillips:  I have instructed him not to answer that question.

Mr. Blechman: Based upon 5th Amendment self-incrimination grounds?

Mr. Phillips:  There is no reason to keep repeating it, Noah. He's not answering the question. I told you why.

Mr. Blechman: I am trying to make a record here, Mister, so I am clear on your objection in case I need to challenge it and do a motion or whatnot to bring him back to ask what is a fair question for essentially things he's kalready (sic) been convicted for. So I don't think there's any 5th Amendment rights there.

Mr. Phillips:  You know, he was convicted of certain things. There were other things he was not convicted of, okay, and I don't want him to be convicted of the other things. So the question's potentially incriminating, and he's not answering it, and I think she's got it for the record. And that's why he's not answering it.

Mr. Blechman: I am going to ask the court reporter to mark that portion of the transcript then.

Q:  I may have to bring you another day to ask you some of the questions that your attorney is not allowing you to answer now. Okay?

A:  Okay.

Q:  Let me ask it this way: Is one of the reasons that you fled the fact that you did not have a driver's license?

Mr. Phillips:  Objection. Don't answer the question. It's the same objection. You can ask it 50 different ways. He's not answering the question."

(Pl.'s Depo. pgs. 59:12-63:4; attached as "**Exhibit C**" to Blechman Decl.)

Plaintiff also refused to answer why he fled from Brady on foot after losing control of his car.

Q:  You know at the time that you got out and ran, that there was a police officer that was trying to stop you from fleeing, correct?

A:  Yes.

Q:  Now, why was it that you got out of your car and ran?

Mr. Phillips:  Objection. Don't answer that. The incriminating thing again.

Mr. Blechman: Okay. Well, I think it's a fair question. I think it's relevant. And I am going to ask that that portion of the record also be certified for the purposes of a follow-up motion, with seeking sanctions for having to do that.

(Pl.'s Depo. pgs. 105:18-106:05; attached as **Exhibit C** to Blechman Decl.)

Memorandum of Points and Authorities in Support of
Defendants' Motion to Compel Answers to Deposition
Questions and Production of Documents – C08-00239 - JL

6

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1    These questions are directly relevant to Bracko's activities before the chase began, what

2    he possessed at the time Officer Brady attempted to pull him over, why Bracko was willing to

3    endanger the public and Officer Brady by fleeing in his car, why he ran from Officer Brady after

4    he had crashed his car, and why Bracko resisted arrest after Brady caught up with him.[5]  Clearly,

5    why Bracko decided to flee from Officer Brady instead of complying with his attempt to pull him

6    over is of consequence to this action as Plaintiff claims Caine used excessive force during his

7    arrest. The reasons behind Bracko's choice to flee are directly relevant to his state of mind at the

8    time and are also relevant to Caine's justification for using force to arrest Plaintiff.

9    Instead of providing an answer to these relevant and unobjectionable questions, Plaintiff's

10   counsel instructed him not to answer the question based on "something like" a Fifth Amendment

11   privilege against self-incrimination. (**Exhibit C** to Blechman Decl.)  As noted above, Plaintiff's

12   sole surviving cause of action in this case is an allegation of excessive force under the Fourth

13   Amendment.  Because this lawsuit is now exclusively a "federal question" case, privileges are

14   determined under federal common law. Federal Rule of Evidence ("FRE") 501; *United States v.*

15   *Zolin*, 491 U.S. 554, 562 (1989).  Of course, the Fifth Amendment privilege against self-

16   incrimination may be raised in civil as well as in criminal proceedings and applies during the

17   discovery process. The Rutter Group, Cal. Prac. Guide, Fed. Civ. Pro. Before Trial, Chap. 11, §

18   700, citing *United States v. Balsys*, 524 U.S. 666, 672 (1998).  However, "[t]he privilege can be

19   waived by testifying on the subject matter at issue or by producing documents containing

20   incriminating matters." The Rutter Group, Cal. Prac. Guide, Fed. Civ. Pro. Before Trial, Chap.

21   11, § 707, citing *Brown v. United States*, 356 U.S. 148, 156-157 (1958).

22   In this case, Bracko has already testified about the following "incriminating" matters

23   related to his arrest:

24        • Bracko did not have a valid California Driver's License on the date of the incident

25

26   [5] FRCP 403 provides " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence."

27   Memorandum of Points and Authorities in Support of            7

28   Defendants' Motion to Compel Answers to Deposition
     Questions and Production of Documents – C08-00239 - JL

nor has he ever had a valid license, yet he was pulled over by Officer Brady while driving. (Pl.'s Depo. pgs. 20:20-21:23, attached as **Exhibit C** to Blechman Decl.);

- On the day of the incident, Officer Brady tried to pull Bracko over in Parchester Village in Richmond, California. Bracko fled by car and then on foot. After his car crashed or lost control, Bracko fled from the officer on foot. Bracko knew when he was fleeing from the officer that the officer was trying to stop him. (Pl.'s Depo. pgs. 57:21-59:15, attached as **Exhibit C**; *see also* Plaintiff's Second Amended Complaint ("SAC"), attached as "**Exhibit D**" to Blechman Decl., pgs. 2:24-3:4);

- The car Bracko was driving on the day of the incident belonged to him. He did not have a driver's license at the time and the car was not legally registered. Brady therefore had grounds to stop Bracko because his vehicle was not registered. (Pl.'s Depo. pgs. 96:11-97:3, attached as **Exhibit C**);

- Bracko stopped his car in the Parchester Community Center parking lot in Richmond after he saw Officer Brady attempt to pull him over. After he stopped, he pulled out, trying to flee from the officer. Bracko understood that when Brady was behind him with his lights on, he was trying to stop him. Bracko stopped his car briefly and then decided to flee by driving away. (Pl.'s Depo. pgs. 100:19-101:20, attached as **Exhibit C**);

- After Bracko's car spun out during the car chase, he got out and ran. Bracko knows that when he decided to run, there was an officer behind him trying to stop him from fleeing. (Pl.'s Depo. pgs. 105:16-105:21, attached as **Exhibit C**);

- Up until the time Brady grabbed Bracko, Bracko heard the officer give him orders. Brady said "freeze" twice. Bracko ignored the commands. (Pl.'s Depo. pgs. 108:1-108:17, attached as **Exhibit C**);

- After Bracko came out of his jacket, he ran back down Johnson. Bracko estimates he took a couple of steps after being pulled off the fence. (Pl.'s Depo. pgs. 109:9-110:21, attached as **Exhibit C**);

- Bracko then got up and started running again, trying to flee from the officer. (Pl.'s Depo. pgs. 110:22-111:19, attached as **Exhibit C**);

- Brady then hit Bracko again with a baton in his leg. He had taken a couple of more steps away from Brady trying to run. Bracko then fell into the street, laying on his stomach. (Pl.'s Depo. pgs. 111:20-112:14, attached as **Exhibit C**);

- After being on the ground several times, Bracko got up and tried to run away several times. Bracko heard Brady tell him to stay on the ground after Brady had a knee in his back. (Pl.'s Depo. pgs. 134:25-135:12, attached as **Exhibit C**);

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

Memorandum of Points and Authorities in Support of
Defendants' Motion to Compel Answers to Deposition
Questions and Production of Documents – C08-00239 - JL

- Bracko has been convicted of one (1) felony. <u>He was convicted of a felony for evading the police.  Bracko believes the conviction was for evading Brady.</u>  (Pl.'s Depo. pgs. 145:1-146:13, attached as **Exhibit C**);

- Bracko is aware that marijuana was found in the Nissan he was driving on the day of the incident. <u>The marijuana was Bracko's.  The officers also found marijuana in Bracko's jacket.  That was also Bracko's marijuana.</u>  Bracko estimates they found approximately 76 to 77 grams of marijuana. (Pl.'s Depo. pgs. 156:3-157:8, attached as **Exhibit C**);

- <u>All the marijuana found was Bracko's.</u>  (Pl.'s Depo. pgs. 157:9-158:4, attached as **Exhibit C**).

Clearly, by pleading in his SAC, and testifying extensively during his deposition that he fled in his car and then on foot from Officer Brady, Plaintiff has waived all Fifth Amendment privileges regarding **_why_** he did so.  *Brown v. United States, supra*, at 156-157.  Defendants' inquiries regarding this subject were clearly relevant to ascertaining Bracko's motive for fleeing from the police (*i.e.*, lack of registration or driver's license, possession of marijuana, fear of the police, etc.) and his state of mind.  These questions are also relevant for purposes of establishing foundational facts to demonstrate Caine's state of mind when he arrived at the scene to assist Officer Brady in controlling Bracko and to evaluate whether the force used was objectively reasonable.

Moreover, <u>Plaintiff has already pled no contest to and been convicted of several charges relating to this incident, including a misdemeanor for resisting arrest under PC § 148(a)(1),</u> and misdemeanors for evading the police in a motor vehicle under CVC § 2800.1 and possession of marijuana in violation of H & S § 11357(c).  Thus, Plaintiff is protected from being charged for evading and resisting the police or possession of marijuana under double jeopardy principles, as he has already been convicted and sentenced for these crimes arising out of this arrest.

Plaintiff also disingenuously claims "why Bracko fled is not relevant, because it does not have any tendency to make *the sole issue in this case: whether Defendant used excessive force on Bracko*, more probable or less probable, especially since Defendant did know why Bracko fled."

Memorandum of Points and Authorities in Support of
Defendants' Motion to Compel Answers to Deposition
Questions and Production of Documents – C08-00239 - JL

9

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

(**Exhibit B** to Blechman Decl., pg. 1; (Emphasis in original)).  Plaintiff is wrong as Caine did not know Plaintiff fled.  Also, there are several issues in this case, one of which of course is whether a jury could ultimately conclude Caine used excessive force against Bracko.  Other relevant issues include:

- Why Bracko fled from the police;

- If Bracko physically resisted arrest from two (2) SPPD officers;

- Why Bracko possessed a substantial amount of marijuana;

- Whether Brady had in fact handcuffed Bracko when Caine arrived at the scene;

- Bracko's credibility, state of mind and level of intoxication at the time of the incident;

- Bracko relationship(s) with his purported eyewitness, etc.

Plaintiff also claims Defendants' are abus[ing the] discovery process [which is] annoying, embarrassing, and/or oppressive to Bracko."  (**Exhibit B** to Blechman Decl., pg. 1)  However, because Plaintiff nowhere asserted these objections during Bracko's deposition, they are now waived.  Accordingly, unless Plaintiff provides some valid basis for asserting that he may be exposed to additional charges relating to this incident (which are likely barred by applicable criminal statutes of limitations), the reason (or reasons) why Plaintiff ran from the police is directly relevant and discoverable.  The Court should therefore order Plaintiff to answer questions relating to why he fled from Officer Brady.

**B.    Did Bracko Ingest any Illegal Substances on the Day of the Incident?**

Bracko was also instructed not to answer whether he had taken any illegal substances on the day of the incident on the basis that the question called for Plaintiff to potentially incriminate himself in violation of the Fifth Amendment.

> Q:    On the night of the --- or the day of the incident, what had you been doing earlier in the day?
>
> A:    At a friend's house.
>
> Q:    And what were you doing at the friend's house?

Memorandum of Points and Authorities in Support of
Defendants' Motion to Compel Answers to Deposition
Questions and Production of Documents – C08-00239 - JL

10

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

A:            Lounging.

Q:            Had you been taking any drugs or anything at your friend's house?

Mr. Phillips:   Objection. Don't answer that question. Incriminating.

Mr. Blechman: Well, I am certainly entitled to know whether or not your client was under the influence of any drugs or alcohol or anything like that at the time of the incident which certainly may have a bearing on his recollection and testimony and whatnot. So if you're instructing him now to answer, that's fine. That's certainly going to be part of a motion to compel. And if I have to come back, Counsel, I am going to seek sanctions for some of these objections that I don't think are well taken.

Mr. Phillips:   Well, on this one when you just said it the question changed a little bit. I agree if he was drinking alcohol or something like that, maybe he was impaired. If you were to ask him maybe he was on prescription drugs, that's okay. But there are a lot of other things floating around this question. If your want to ask him if he was on illegal drugs, I am going to tell him not to answer that question every minute of the day. So if you want to be more specific, I probably won't object. It was a very vague question. It was open to many different things.

(Pl.'s Depo. pgs. 82:19 -84:2, attached as **Exhibit C** to Blechman Decl.)

In a good faith effort to clarify their questions along these lines, Defendants then specifically asked Plaintiff whether he had taken any prescription medication or illegal narcotics on the date of the incident.

Q:            Now, at Adante's house did you ingest any prescription medication?

A:            No.

Q:            Did you take – did you ingest any illegal drugs such as marijuana, cocaine, crack?

Mr. Phillips:   Objection. Do not answer that question.

Mr. Blechman: Hold on. Hold on. Methamphetamines, anything like that?

Mr. Phillips:   Objection. Do not answer that question.

Mr. Blechman: What's the basis of your objection, Counsel?

Mr. Phillips:   It's potentially incriminating.

Mr. Blechman: You're afraid your client's going to be prosecuted for admitting that he was taking drugs at the time before the incident?

Memorandum of Points and Authorities in Support of                    11
Defendants' Motion to Compel Answers to Deposition
Questions and Production of Documents – C08-00239 - JL

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1

Mr. Phillips:    No comment.  But the question that you're asking him is an incriminating question and he's not going to answer that.

2

3

Mr. Blechman:  It's certainly a fair question.  I don't have to ask these questions but for the fact that your client, Mr. Bracko, is suing my officers in relation to this incident.  This information is directly relevant to your client's recollection of events, his state of mind at the time of the incident, those types of things. So if you're going to instruct him not to answer the question, I can assure you that that's going to be a subject of a motion to compel.  I am going to seek sanctions for what I think is an unsubstantiated objection to a fair question.  So, you know, I ask you to reconsider your position in that sense.

4

5

6

7

Mr. Phillips:    <u>If we were in front of the judge right now I would agree that it's a relevant question for the reasons that you stated, and I don't disagree with that.  But I don't think – I would hope that the judge will not sanction me because I told my client not to answer whether he was smoking crack in a deposition under oath.  I would hope that the judge would not sanction me for that. Maybe he would, I would hope that he wouldn't.  But I am instructing my client not to answer this question.</u>

8

9

10

11

Mr. Blechman:  Now, I am not asking him if he smoked crack a week ago or, you know, took methamphetamines, you know, five years ago.  I am asking specifically about if he was doing any drugs the day of the incident, the time right before the incident, which is certainly relevant and a fair question.

12

13

14

Mr. Phillips:    Noah, I already said that <u>I don't dispute that it's a relevant question</u>.  You can tell me 50 times that it's relevant, and I will say 50 times I agree.  But I will say to you 50 times that it's an incriminating question and he will not be answering that question.

15

16

17

Mr. Blechman:  Okay.  Well, we are also going to also mark that portion of the transcript. I am going to seek a motion I guess on this.  I am going to seek sanctions for having to spend the time to do the motion for information that Counsel has even conceded is relevant.  There are some facts that Mr. Bracko, in my opinion and information, that he has waived by bringing suit in this case, one of which is things he was doing leading up to this incident, et cetera, et cetera.  So I am going to reserve my right to bring him back for further questioning once we sort out that issue.  Obviously, with the E & E (sic) in this case set up for July 21st, it's not going to be an issue that we can probably resolve before then.  So, you know, it is what it is.  We'll have to bring a motion at that point to ask those questions.  Just so I am making my record correctly here, you're not going to allow me to – well, I will ask my question and you can make your objection.

18

19

20

21

22

23

Q:              Just so the record's clear, while you were at Adante's house just prior to this incident, had you ingested any illegal drugs such as marijuana, crack, cocaine, methamphetamines, anything like that?

24

25

Mr. Phillips:    Objection.  Incriminating.  Do not answer that question.

26

Mr. Blechman:  Okay.  And my prior certification is the same certification for that

27

Memorandum of Points and Authorities in Support of                    12
Defendants' Motion to Compel Answers to Deposition
Questions and Production of Documents – C08-00239 - JL

28

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1    question.

2    (Pl.'s Depo. pgs. 86:22 – 90:10, attached as **Exhibit C** to Blechman Decl., (Empasis added)).

3    Plaintiff concedes this line of questioning is relevant to (1) his state of mind; (2) his ability

4    to recall events accurately and completely, and; (3) his motive for fleeing from Officer Brady. A

5    pivotal question for this Motion to Compel is whether, by answering these questions, Bracko

6    could potentially "incriminate" himself, and thus Plaintiff had an appropriate or even reasonable

7    basis for refusing to answer these questions? As discussed in the previous section, the District

8    Attorney is constitutionally forbidden from charging Bracko with possession of marijuana under

9    double jeopardy principles. Additionally, the statute of limitations relating to being under the

10    influence of illegal narcotics is one year. PC § 802(a). Therefore, the final date Plaintiff could

11    have been charged with possession or being under the influence of illegal substances on the day at

12    issue (November 27, 2006) was November 27, 2007 (approximately 9 months ago). Accordingly,

13    there is no risk Bracko could "incriminate" himself by simply stating whether he was under the

14    influence of a controlled substance on the date at issue. Plaintiff thus had no valid or reasonably

15    legitimate basis for refusing to answer this line of questioning, and his refusal to answer was

16    clearly a product of obstructionist and dilatory tactics. Though Bracko later answered a question

17    about drug use in the hours before the incident, the record is unclear and Defendants are entitled

18    to clarify the record regarding this issue. Accordingly, the Court should compel Plaintiff to

19    answer questions relating to whether Plaintiff was under the influence of any illegal narcotics on

20    the day of the incident.

21    **C.    Who was the Individual Bracko was with when Bracko Decided to Flee from Officer**

22    **Brady?**

23    Plaintiff next refused to answer questions regarding who he was traveling (and

24    subsequently fled) with in his car when Officer Brady attempted to pull Bracko over on the

25    grounds that the answer may be potentially incriminating. This objection was ridiculous as Mr.

26    Phillips is seeking a Fifth Amendment privilege for another person, which he obviously cannot

27    Memorandum of Points and Authorities in Support of                13
       Defendants' Motion to Compel Answers to Deposition

28    Questions and Production of Documents – C08-00239 - JL.

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1   do.  Accordingly, the following colloquy makes Plaintiff's counsel's obstructionist tactics crystal

2   clear.

3       Q:          When you left Adante's house, who were you with?

4       A:          My adviser told me not to answer that question.

5       Q:          All right.  Well, I don't want to know anything about what your attorney
                    and you have discussed.  So you're saying that --

6

7       Mr. Phillips:   I am instructing him not to answer the question.

8                       * * *

9       Q:          When you left the house, did you leave with -- did you leave with anybody
                    else other than your attorney?

10

11      A:          My counsel advised me not to answer that question.

        Mr. Phillips:   You can answer that question.
12

13      A:          Yes.

14      Q:          How many people were with you?

15      A:          One.

        Q:          So there was one other person in the car with you at the time when you
16                  realized that there was an officer behind you trying to stop your vehicle?

17      A:          Yes.

18      Q:          And you're not going to disclose the identity of that person?

19      Mr. Phillips:   Correct.

20      Mr. Blechman:  Okay.  Well, to the extent that that person may be a witness to some of the
                    events in this case, and plaintiff is choosing not to identify that person for
21                  somewhat of an uncommon reason as of yet, and maybe Counsel wants to
                    extrapolate on his objection, but I believe that's also an issue that is subject
22                  to discovery.  And we're entitled to that information and we will be putting
                    that in a motion to compel seeking sanctions again if need be if we can't
23                  resolve that issue further.  Is your objection, Counsel -- why don't you state
                    for the record what your objection is with regard to that information.

24
        Mr. Phillips:   It's potentially incriminating.
25

        Mr. Blechman:  Well, how is it incriminating to your client?  That's my question.  It might
26                  be incriminating to the other person in the car who ran from the police, but
                    how is it incriminating to your client?

27      Memorandum of Points and Authorities in Support of                14
        Defendants' Motion to Compel Answers to Deposition
28      Questions and Production of Documents – C08-00239 - JL

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1

Mr. Phillips:    You know what, I mean, that's just the objection. That's the objection. And not to mention that the guy didn't see any of this stuff that he's actually – he is admitting – he has admitted multiple things that he's done wrong already. He's admitted that, you know, Officer Brady tried to stop him and he drove off. He admitted that he had jumped out of his car and he tried to run. I mean, he's admitted – or he did run. He's admitted all of these things, okay. So there is nothing – I don't even think there's – I don't even really think there's a dispute as far as I know of as to what happened prior to Officer Caine coming on the scene. So, you know, there's no need to bring this guy in or anybody else in to testify as to what happened prior to Officer Caine coming. Now, if this guy was there when Officer Caine came in and allegedly did what my client says he did, now that's one thing. But he wasn't there. The guy ran off which you know because you probably saw him run off.

9

\* \* \*

10

Mr. Blechman: Okay. I appreciate that. And that's my point too is, you know, how do I know that this guy didn't hide in the bushes and witness some of this and all the sudden I am going to get sand bagged at trial with the identification of this person who's going to testify against my client. I don't know that. I am certainly entitled to any information that may lead to the discovery of admissible evidence. This is certainly within that realm, well within that realm. You're instructing him not to answer a question about an incriminating issue that doesn't even relate to him. It relates to the incrimination perhaps of the person who ran. And so that would not be the privilege of your client. It would be the privilege of the person who ran. And that certainly is an issue for my motion and I think when we add all these up, sanctions, I think, are going to be awarded here for these unreasonable objections.

17

Mr. Phillips:    I think maybe, you know, if we were to speculate that it's a possibility that he hid in the bushes and was watching this happening from around the corner, and then you think that I am going to bring him in as some rebuttal witness and surprise you, I mean, I could – you drop the question and I will stipulate not to bring him in.

20

Mr. Blechman: Well, that's one of my concerns. The other issue is maybe he's a favorable witness to us. I don't know. So maybe I want to call him. So the fact that you're not willing to identify this other person who was in the car that fled, I believe that's totally within the realm of discoverable evidence. I am going to reserve my right to ask Mr. Bracko further questions after we file a motion on that issue, and then I guess we can move on. I think the record is clear on that.

24

(Pl.'s Depo. pgs. 91:19-96:10, attached as **Exhibit C** to Blechman Decl.)

25

Defendants' questions regarding the identity of Plaintiff's passenger were simple and

26

straightforward, and Plaintiff's objections were again invalid, unreasonable, clearly improper and

27

Memorandum of Points and Authorities in Support of
Defendants' Motion to Compel Answers to Deposition
Questions and Production of Documents – C08-00239 - JL

15

28

1   obstructionist. Bracko should answer this simple, straightforward question.

2       As discussed above, this case now exclusively involves a "federal question", and

3   therefore privileges are determined under federal common law. FRE 501; *Zolin, supra,* 491 U.S.

4   554, 562 (1989).    Here, the law is clear that the Fifth Amendment privilege against self-

5   incrimination only applies to Plaintiff, ***not*** his passenger.    Under clear and longstanding United

6   States Supreme Court precedent, the privilege against self-incrimination "is solely for the benefit

7   of the witness" and is "purely a personal privilege of the witness." *Rogers v. United States,* 367

8   U.S. 367, 371 (1951); citing *United States v. Murdock,* 284 U.S. 141, 148 (1931) and *Hale v.*

9   *Henkel,* 201 U.S. 43, 69 (1906).    Plaintiff's objections to these questions were therefore

10  completely unreasonable and based on simply obstructing Defendants' discovery efforts.

11  Plaintiff also claims that "identifying the individual to the police could place Bracko in grave

12  danger.  (**Exhibit B** to Blechman Decl.)  Plaintiff did not object on this ground during his

13  objection, and accordingly such objection is now waived.  Plaintiff has likewise identified no

14  foundational facts supporting this assertion, which can only be viewed as purely speculative.

15      Moreover, because the privilege against self-incrimination belongs to Plaintiff alone, he

16  cannot invoke the privilege on behalf of his passenger.  Identification of this passenger could lead

17  to discovery of admissible evidence and should be disclosed.  The passenger may have seen the

18  altercation and/or can shed further light on this incident.  There is likewise no foundational basis

19  for this objection.  Plaintiff should accordingly be ordered to identify the passenger in his vehicle

20  when he decided to flee from Officer Brady.

21  **D.**   **What is Bracko's Personal History of Marijuana Use and What were the**
          **Circumstances under which Bracko was Found with a Significant Amount of**
22        **Marijuana?**

23      1.    What is Bracko's Personal History of Using Marijuana?

24      Plaintiff refused to answer questions relating to his personal history of using marijuana,

25  again on the grounds that it purportedly calls for Bracko to be a witness against himself in

26  violation of the Fifth Amendment as well as being irrelevant.

27  Memorandum of Points and Authorities in Support of                16
    Defendants' Motion to Compel Answers to Deposition
28  Questions and Production of Documents – C08-00239 - JL

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1

| Q: | Okay. In the police report there's an indication that you told Officer Brady |

Q:    Okay. In the police report there's an indication that you told Officer Brady that this 76 to 77 grams of marijuana was yours for personal use. Okay. So I know if you don't use it now, my question is, when in your life were you using marijuana?

Mr. Phillips:    Objection. Don't answer the question for the same reason. I mean – I don't know. I mean, I don't know. You wanted to ask questions about whether he had drugs on him that day. You asked him the question. You wanted to ask questions about whether he was using that day. He's answered the question. I mean, I think you have enough. And maybe it's not my decision to make for you, but I think you have enough information about that.

Mr. Blechman: From my perspective this is another example of obstructionist behavior here, Counsel, in terms of preventing me from asking legitimate questions to your client, in the process essentially coaching your client on responses or setting up a meeting in the hall with your client about, you know, a subject that's going to come up here and, you know, I am a little frustrated frankly. And that's certainly going to be part of my motion. It's a fair question. And if you don't want to have your client respond, that's fine. This will all be in my motion and I am confident that we are going to get some sanctions for this behavior. So we can move on.

(Pl.'s Depo. 157:25-160:4, attached as **Exhibit C** to Blechan Decl.)

In this case, the police report describing this incident indicates Bracko admitted to Officer Brady that the approximately seventy-seven (77) grams of marijuana found in his car and on his person was for "personal use." (Police Report attached as "**Exhibit E**" to Blechman Decl.) Photographs taken of Bracko's possessions following his arrest also support the fact that Bracko's marijuana possession was inconsistent with personal use. Since Bracko claims all the marijuana found at the scene (1) admittedly belonged to him; (2) was for personal use, and (3) later testified it was actually his mother's for medicinal purposes, Bracko's personal history of marijuana use is relevant to his truthfulness and motive for fleeing from and struggling with Officers Brady and Caine.

Similarly to the discussion above relating to whether Plaintiff had ingested any illegal narcotics on the date in question, he has already been prosecuted for and pled no contest to a misdemeanor for possession of marijuana. Subsequent prosecution for this crime is therefore barred by principles of double jeopardy. Also, there can be no reasonable concern that Plaintiff

Memorandum of Points and Authorities in Support of
Defendants' Motion to Compel Answers to Deposition
Questions and Production of Documents – C08-00239 - JL

17

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1  will be prosecuted based on admissions of past drug use/abuse due to the statute of limitations.

2  PC § 802(a).

3      Given the significant amount of marijuana found during his arrest and detention, and the

4  dispute as to whether Bracko told Officer Brady that the marijuana was for personal use,

5  questions relating to Bracko's personal history of using marijuana are directly relevant to (1) his

6  state of mind at the time of the incident; (2) whether he can accurately and completely recall the

7  events leading up to his arrest; (3) his motive for fleeing from the officers, and (4) his credibility.

8  Bracko therefore should be compelled to answer questions relating to his personal history of

9  using marijuana.

10      2.    Where did Bracko Obtain the Marijuana he was Found with?

11      Bracko refused to answer questions regarding where he obtained the significant amount of

12  marijuana that was found on his person and car.

13      Q:          Where did you get that marijuana?

14      Mr. Phillips:   Objection. Don't answer that question. It's incriminating.

15      Mr. Blechman: Okay. Well, I disagree and I am going to want that portion of the
16                  transcript marked and probably some more of this portion of the transcript
                    marked.

17  (Pl.'s Depo. pg. 159:16-159:24, attached as **Exhibit C** to Blechman Decl.)

18      Plaintiff again objected on the grounds that an answer to this question would be self-

19  incriminatory. Plaintiff's objection had no reasonable or legitimate basis.

20      As discussed at length above, the District Attorney is prohibited from prosecuting Plaintiff

21  for possession of marijuana on the date of the incident based on double jeopardy principles.

22  Plaintiff likewise cannot be charged with being under the influence of illegal narcotics on the date

23  of the incident. PC § 802(a). He can therefore have no legitimate or even reasonable basis of fear

24  of prosecution relating to possession of marijuana on the day of the incident.

25      Where Plaintiff obtained the marijuana is directly relevant to (1) who the marijuana was

26  intended for; (2) whether the marijuana was for personal use or sale, and (3) Bracko's credibility

27  Memorandum of Points and Authorities in Support of                    18
Defendants' Motion to Compel Answers to Deposition
28  Questions and Production of Documents – C08-00239 - JL

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1  and truthfulness.  Since there is a dispute between the parties as to whether (1) Bracko told

2  Officer Brady whether the marijuana was for personal use and (2) whether a jury could infer that

3  Bracko fled from the police because he possessed a significant amount of marijuana and

4  accordingly feared prosecution for possession for sale, where Bracko obtained the marijuana is

5  directly relevant to that dispute.  Plaintiff's objections to this question were clearly meant to

6  obstruct Defendants' access to relevant information.  Accordingly, the Court should compel

7  Plaintiff to identify the source of the marijuana he was found in possession of the date of the

8  incident.

9        3.     <u>Why does Plaintiff no Longer Possess a Cannabis Card?</u>

10        Bracko stated in his deposition that he (1) obtained a valid cannabis card and held it from

11  2000 to 2007 as a caregiver to his mother in order to provide her with medicinal marijuana; (2)

12  the marijuana he obtained with the cannabis card was always provided to his mother; (3) he never

13  used the card for his own purposes; (4) he obtained the marijuana found on him by Officers Brady

14  and Caine from the Hilltop Cannabis Club in Richmond, California, on the day of the incident,

15  and; (5) he intended to provide the marijuana he obtained from the Hilltop Cannabis Club on the

16  day of the incident to his mother.  (Pl.'s Depo. pgs. 159:25-162:15, attached as **Exhibit C** to

17  Blechman Decl.)

18        Bracko refused to answer why his caretaker cannabis card was cancelled in 2007 on the

19  grounds that the answer might incriminate him.

20      Q:           Why is it that you no longer have a cannabis card?

21      Mr. Phillips:   You know what, I'm sorry, we're done with the marijuana questions.

22      Mr. Blechman: What's your objection, Counsel?

23      Mr. Phillips:   Because he's going to put himself – you're asking him a bunch of

24                       incriminating questions.  And you got a lot of information and, you know

25                       what, the judge might say I am wrong, but on this one the judge is just
                     going to have so say I'm wrong.

26      Mr. Blechman: Counsel, it's not my problem that your client may have done some things
                   that are incriminating.  But if they relate to issues in this case that I am

27

28

1    defending on behalf of Officer Caine and the city of San Pablo and the
     police department, I am entitled to that information.

2

Mr. Phillips:    Like I said before, I am not saying that it is not relevant, you know, maybe
3                not everything you're asking, but I am saying that it doesn't have any
                 relevance whatsoever. I am simply saying that literally the marijuana stuff
4                is done. I mean, if you want to go to the judge and try to get an order
                 saying he has to answer all this stuff, then you're going to have to do that.
5                I mean, he's given you what you need to know. He's told you where it
                 came from. You didn't even need to know what, but he's told you where it
6                came from. He's admitted that he had it. You know, he's not doing
                 anything else.

7

Mr. Blechman: Well, I disagree and I think I am entitled to ask any of these questions and
8                ---

9    Mr. Phillips:    I don't think you understand –

10   Mr. Blechman: Hold on. Hold on. ---any of these questions and even go further into
                 some of these issues that do relate to issues in this case. So I am going to
11               have to do a motion on those issues it looks like also.

12   (Pl.'s Depo. pgs. 163:16-165:2, attached as **Exhibit C** to Blechman Decl.)

13       Questions relating to why Plaintiff's cannabis card was cancelled are directly relevant to,

14   among other issues, the possible actions taken by various California state agencies following his

15   arrest for and conviction of marijuana possession. If a state agency determined that Bracko was

16   unlawfully using his caretaker cannabis card by not providing the marijuana he obtained from

17   various cannabis clubs to his mother for medicinal purposes, that fact would be directly relevant

18   to Plaintiff's motive for fleeing from the police and subsequently resisting arrest. This also

19   relates to credibility issues. Defendants are therefore entitled to question Bracko about why his

20   caretaker cannabis card was cancelled, and the Court should order him to answer questions along

21   these lines.

22       4.    Where did Bracko Obtain $600 to Buy the Marijuana he was Found with?

23       Bracko refused to provide information about where he obtained approximately $600 in

24   order to buy the marijuana he was found in possession of when arrested.

25

Q:    The $600 that you paid for the marijuana, whose money was that?
26

Mr. Phillips:    We are done with the marijuana questions. I mean, literally for the same
27   Memorandum of Points and Authorities in Support of                    20
     Defendants' Motion to Compel Answers to Deposition
28   Questions and Production of Documents – C08-00239 - JL

1    reason you're asking incriminating questions.  Don't answer the question.

2    Mr. Blechman: Again, they may be incriminating to your client in a sense because it's
3    potential criminal behavior, but that's not my concern.  I am entitled to
     relevant information or information that may lead to the discovery of
     admissible evidence.  I am asking those specific questions.  Counsel,
4    opposing counsel is not allowing his client to answer basic questions that
     deal with these issues in the case, relevant questions, and so I am going to
5    have to file a motion and seek sanctions to ask these basic questions.

6    Mr. Phillips:    You're going to have to seek sanctions.

7    Mr. Blechman: <u>And I am going to reserve my right to go over all of these questions again</u>
     <u>and to seek a motion to reask a lot of these questions because there's been</u>
8    <u>several points in this deposition that you have either allowed your client to</u>
     <u>answer these questions or disallowed him to answer these questions, and</u>
9    <u>it's really disrupted my line of questioning of the witness.  So I am going to</u>
     <u>ask the court to revisit these areas in total if need be.</u>

10   (Pl.'s Depo. pgs. 165:3-166:5, attached as **Exhibit C** to Blechman Decl., (Emphasis added)).

11       Clearly, such information is relevant to ascertaining Plaintiff's motive in possessing the

12   marijuana (*i.e.* was it for personal use, for sale, or for his mother?)  It is also relevant because

13   Bracko admitted in his deposition that he has only held one job for one year since graduating

14   from high school in 2000, and that employment terminated in December, 2004.  (Pl.'s Depo. pg.

15   182:17-25, attached as **Exhibit C**).  Where Plaintiff obtained $600 to purchase marijuana given

16   his lack of employment and corresponding limited funds at the time of the incident is obviously

17   relevant to Bracko's motive for fleeing from and resisting the police.  This also relates to

18   Plaintiff's credibility.

19       As discussed above, the statute of limitations for possession of marijuana for sale

20   forecloses the possibility of Bracko's prosecution for such a crime.  Finally, the District Attorney

21   cannot constitutionally prosecute Bracko for possession of marijuana for sale due to double

22   jeopardy principles.  Accordingly, Bracko should be compelled to identify the source from which

23   he obtained $600 to purchase the marijuana he was found in possession of.

24   //

25

26       5.    <u>Does Bracko Remember Receiving a Text-Message Regarding a Request for</u>
              <u>Marijuana?</u>

27   Memorandum of Points and Authorities in Support of                21
     Defendants' Motion to Compel Answers to Deposition
28   Questions and Production of Documents – C08-00239 - JL

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

Finally, Bracko refused to answer a question regarding whether he remembers receiving a text-message from an unidentified caller on the date of the incident. Plaintiff objected to the question because it called for him to potentially incriminate himself in violation of the Fifth Amendment.

Q:          Do you remember getting a text message on your phone that read quote, "Call me fool. I need some weed" and it's s-u-m weed?

Mr. Phillips:   Objection. Don't answer that question.

Mr. Blechman: Do you remember getting a text message on your phone about that?

Mr. Phillips:   Objection. Don't answer that question.

Mr. Blechman: Why is that? What's the objection? It's incriminating to get a text message?

Mr. Phillips:   No. It's incriminating to get orders for home delivery of weed, Noah. That's why it's incriminating. Don't answer the question. Whatever. Don't answer the question.

Mr. Blechman: Again, I think it's relevant information and I am going to have to ask you about that at another time apparently.

(Pl.'s Depo. pg. 212:5-24, attached as **Exhibit C** to Blechman Decl.)

As discussed extensively above, this question is clearly relevant to understanding Plaintiff's motive for fleeing from and resisting Officer Brady. If Bracko remembers receiving a text-message requesting marijuana before the day of the incident, that fact indicates he may indeed be a known marijuana seller and the marijuana in his possession was in fact for sale. Of course, this may also explain why Bracko so forcefully attempted to avoid being arrested on the date in question.

Bracko should accordingly answer whether or not he remembers receiving a text-message requesting marijuana.

//

//

E.    **Witness Statements of Lorraine Hunt and Ashlee Wilson**

Memorandum of Points and Authorities in Support of
Defendants' Motion to Compel Answers to Deposition
Questions and Production of Documents – C08-00239 - JL

22

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1.  The Written Witness Statements of Lorraine Hunt and Ashlee Wilson are not Protected by the Attorney Work-Product Doctrine.

Plaintiff has identified Hunt and Wilson as purported eyewitnesses to Plaintiff's arrest and allegedly subsequent use of excessive force by Caine.  (Pl.'s Initial Disclosures, attached as "**Exhibit F**" to Blechman Decl.)  During Wilson's deposition, she testified Plaintiff's counsel obtained factual statements from Wilson and Hunt relating to the incident and gave them copies of such statements.  Id.  Plaintiff has now refused to produce these statements, claiming they are protected from disclosure under the attorney "work-product" doctrine.  (Depo. of Ashlee Wilson pgs. 68:18-70:13, attached as "**Exhibit G**" to Blechman Decl.)

These statements are discoverable and should have been produced pursuant to Plaintiff's duty of disclosure under FRCP 26.  As discussed above, this case now exclusively involves a "federal question", and privileges are therefore determined under federal law.  FRE 501; *United States v. Zolin, supra*, 491 U.S. 554, 562 (1989).  The work-product doctrine protects trial preparation materials that reveal an attorney's strategies, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews.  The Rutter Group, Cal. Prac. Guide, Fed. Civ. Pro. Before Trial, Chap. 11, § 825, citing FRCP 26(b)(3); see also *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).  However, the work-product doctrine does *not* protect documents or reports prepared by independent witnesses.  The Rutter Group, Cal. Prac. Guide, Fed. Civ. Pro. Before Trial, Chap. 11, § 865.

Because Ms. Hunt and Ms. Wilson are (purportedly) independent witnesses, their factual statements, whether or not prepared by Plaintiff's counsel, are relevant and not protected by the attorney work-product doctrine.  The statements contain facts, not Mr. Phillips' strategies, lines of proof, case strengths, weaknesses, etc.  Accordingly, these statements should have been identified in Bracko's Initial Disclosures and should be produced now.  Defendants accordingly respectfully request the Court order Plaintiff to produce these statements.

Alternatively, FRCP 26(b)(3) provides that an opposing party is entitled to documents that would otherwise be protected under the work-product doctrine if it can show (1) a substantial

Memorandum of Points and Authorities in Support of
Defendants' Motion to Compel Answers to Deposition
Questions and Production of Documents – C08-00239 - JL

23

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1    need; and (2) is unable without undue hardship to obtain the substantial equivalent of the

2    materials by some other means.  Because these statements could corroborate or contradict Hunt

3    and/or Wilson's account of the incident as they testified in deposition, these statements are

4    relevant, are needed by Defendants and cannot be obtained through the witnesses as they are

5    homeless and do not know where the statements are.  (Depo. of Ashlee Wilson pgs. 80:8-23,

6    attached as "**Exhibit G**" to Blechman Decl.)  They could also provide evidence favorable to

7    Defendants which they want to explore.  Plaintiff claims that "the exception to the work-produce

8    doctrine does not apply, because Defendants have already obtained the 'substantial equivalent' of

9    the witness statements by deposing the witnesses."  ("**Exhibit B**" to Blechman Decl.)  As

10   discussed above, these statements could corroborate or contradict Hunt and/or Wilson's account

11   of the incident as they testified in deposition.  Defendants deposed Hunt and Wilson without the

12   opportunity to review or analyze these statements, which necessarily limited the scope and focus

13   of Defendants' questions.  Accordingly, Defendants could not possibly have obtained the

14   "substantial equivalent" of these statements during Hunt or Wilson's depositions, and the

15   statements should be produced.  Finally, it should be noted that Plaintiff never produced any

16   privilege log in this case.

17        Because these statements are in Plaintiff's exclusive possession, and he has refused to

18   produce them or disclose their contents, Defendants cannot obtain the information contained in

19   these statements by other means.  Accordingly, the Court should order Plaintiff to produce these

20   statements, which are not work-product protected and are discoverable.

21                      V.    **CONCLUSION**

22        Plaintiff's objections to Defendants' simple, straightforward and non-objectionable

23   questions were improper and had no legitimate or reasonable basis in law or fact.  Plaintiff's

24   objections were clearly the product of an obstructionist and dilatory strategy intentionally

25   designed to impede Defendants' access to clearly relevant and non-privileged information.

26   Bracko should answer the questions discussed above and allow Defendants some latitude for

27
Memorandum of Points and Authorities in Support of          24
Defendants' Motion to Compel Answers to Deposition
28   Questions and Production of Documents – C08-00239 - JL

1  follow-up questions.  The Court should issue an order compelling him to do so.  Defendants are

2  also entitled to appropriate sanctions against Plaintiff for being forced to prepare this Motion to

3  Compel as a result of Plaintiff's unjustified positions and meritless objections.  Defendants'

4  Motion for Sanctions is filed concurrently herewith.

5       The statements of Ms. Hunt and Ms. Wilson are likewise not privileged and should be

6  produced.  Accordingly, Defendants respectfully ask the Court to order Plaintiff to produce these

7  statements immediately.

8

9  Dated:  August 22, 2008       McNAMARA, DODGE, NEY, BEATTY, SLATTERY,
                                 PFALZER, BORGES & BROTHERS LLP
10

11

12                             By: _____
                                   James V. Fitzgerald, III
13                                 Noah G. Blechman
                                   J. Garret Deal
14                                 Attorneys for Defendants
                                   ALEX CAINE and CITY OF SAN PABLO
15

16

17

18

19

20

21

22

23

24

25

26

27                                              25

28

Memorandum of Points and Authorities in Support of
Defendants' Motion to Compel Answers to Deposition
Questions and Production of Documents – C08-00239 - JL

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330