JAMES V. FITZGERALD, III (State Bar No. 55632)
NOAH G. BLECHMAN (State Bar No. 197167)
J. GARRET DEAL (State Bar No. 249934)
McNAMARA, DODGE, NEY, BEATTY, SLATTERY,
PFALZER, BORGES & BROTHERS LLP
1211 Newell Avenue
Post Office Box 5288
Walnut Creek, CA 94596
Telephone: (925) 939-5330
Facsimile:  (925) 939-0203

Attorneys for Defendants
ALEX CAINE and CITY OF SAN PABLO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN J. BRACKO, | Case No. C08-00239 JL |
| Plaintiff, | **DECLARATION OF NOAH G. BLECHMAN IN SUPPORT OF MOTION TO COMPEL ANSWERS TO DEPOSITION QUESTIONS AND PRODUCTION OF DOCUMENTS** |
| vs. | |
| ALEX CAINE; CITY OF SAN PABLO; and DOES 1-10, inclusive, | Date:   October 1, 2008<br>Time:  9:30 a.m.<br>Dept:  Courtroom F, 15th Floor<br>Judge: Honorable James Larson |
| Defendants. | |

I, Noah G. Blechman, Esq., hereby declare:

1.  I am an attorney at law duly licensed to practice before the courts of the State of California and this Court and am a partner at the law firm of McNamara, Dodge, Ney, Beatty, Slattery, Pfalzer, Borges & Brothers LLP; attorneys of record for Defendants ALEX CAINE and the CITY OF SAN PABLO.  I have personal knowledge of each matter stated herein.

2.  On August 1, 2008, I sent counsel for Plaintiff a letter, a true and correct copy of which is attached hereto as **Exhibit A**, regarding Plaintiff's refusal to answer certain deposition questions and to produce the witness statements of Ashlee Wilson and Lorraine Hunt, in a good faith attempt to resolve this discovery

Declaration of Noah G. Blechman In Support of Defendants'
Motion to Compel Answers to Deposition Questions and
Production of Documents – C08-00239 - JL

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

dispute. I was unable to resolve these disputes and advised counsel that I would be required to make a motion to compel if he did not offer up Plaintiff for further questioning at deposition and to produce Ms. Wilson and Ms. Hunt's witness statements.

3. Plaintiff's refusal to answer certain deposition questions and to produce witness statements were improper for the reasons set forth in the Memorandum of Points and Authorities in Support of Defendants' Motion to Compel, filed concurrently herewith.

4. On August 15, 2008, Plaintiff's counsel informed me via letter that Plaintiff would not submit to further deposition questioning or produce the relevant witness statements. A true and correct copy of this letter is attached hereto as **Exhibit B**.

5. Attached hereto as **Exhibit C** is a true and correct copy of Plaintiff's deposition transcript, pgs. 20-21; 57-63; 82-84; 86-97; 100-101; 105-106; 108-112; 134-135; 145-146; 156-166; 182 and 212.

6. Attached hereto as **Exhibit D** is a true and correct copy of Plaintiff's Second Amended Complaint ("SAC").

7. Attached hereto as **Exhibit E** is a true and correct copy of San Pablo Police Department Report Number 06-32432.

8. Attached hereto as **Exhibit F** is a true and correct copy of Plaintiff's Initial Disclosures.

9. Attached hereto as **Exhibit G** is a true and correct copy of the deposition transcript of Ashlee Wilson, pgs. 68-70 and 80.

I declare under penalty and perjury the foregoing is true and correct.

Executed this 21st day of August, 2008 at Walnut Creek, California.

Declaration of Noah G. Blechman In Support of Defendants'
Motion to Compel Answers to Deposition Questions and
Production of Documents – C08-00239 - JL

2

1

2          By: _____

3                  Noah G. Blechman, Declarant

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

Declaration of Noah G. Blechman In Support of Defendants'
Motion to Compel Answers to Deposition Questions and
Production of Documents – C08-00239 - JL          3

# EXHIBIT A

# McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP

### ATTORNEYS AT LAW

MICHAEL J. NEY
THOMAS G. BEATTY
ROBERT M. SLATTERY
THOMAS E. PFALZER
GUY D. BORGES
ROGER J. BROTHERS
GARY R. JOHNSON
JAMES V. FITZGERALD, III
MARTIN J. AMBACHER
ROBERT W. HODGES
J. WESLEY SMITH
PAUL B. WALSH
ANN H. LARSON
R. DEWEY WHEELER
SETH J. SCHWARTZ
ROBERT W. LAMSON

RICARDO A. MARTINEZ
DIANNE KREMEN COLVILLE
LISA R. ROBERTS
DENISE BILLUPS-SLONE
J. LUCIAN DODSON III
JAMES E. ALLEN
ERIC G. LUNDBERG
DENISE J. SERRA
WILMA J. GRAY
HOWARD PATRICK SWEENEY
PETER J. HIRSIG
RICHARD M. McNEELY
GARY A. WATT
NOAH G. BLECHMAN
MICHAEL P. CLARK

1211 NEWELL AVENUE
WALNUT CREEK, CA 94596-5331

**PLEASE RESPOND TO:**
P.O. BOX 5288
WALNUT CREEK, CA 94596

TELEPHONE: (925) 939-5330
FACSIMILE: (925) 939-0203

**www.mcnamaralaw.com**

August 1, 2008

SOLANO COUNTY OFFICE
639 KENTUCKY STREET, FIRST FLOOR
FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998
FACSIMILE: (707) 427-0268

SAN JOAQUIN COUNTY OFFICE
2316 ORCHARD PARKWAY, SUITE 120
TRACY, CA 95377
TELEPHONE: (877) 839-5330
FACSIMILE: (209) 839-6758

PARTNERS EMERITUS
DANIEL J. McNAMARA
DOUGLAS C. McCLURE

RICHARD E. DODGE
(1941 – 2000)

OF COUNSEL
WILLIAM K. HOUSTON, JR.
ANTHONY J. DeMARIA

JENIFER K. LEECE
BARBARA L. MILLER
CATHLEEN A. IRWIN
JENNIFER A. PHILLIPS
SUZANNE FOLEY SPRAGUE
SHARON A. GARSKE
PETER W. SEKELICK
JEANNE C. SHIH
TONYA R. DRAEGER
HENRY WILLIAMS III
MATTHEW P. SULLIVAN
CARRIE E. CROXALL
SHAWN F. HARDING
PETRA BRUGGISSER
CHRISTOPHER N. ODNE

MARK P. IEZZA
CHRISTOPHER T. LUSTIG
RYAN J. BARNCASTLE
MILJOY B. LINSAO
TANNER D. BRINK
WILLIAM L. McCASLIN
CONNOR M. DAY
KEVIN T. KERR
ANDREA N. de KONING
NATHANIEL A. SMITH
RAYELLE D. SABO
J. GARRET DEAL
ALEXANDER CHASE
ARA S. ALIKIAN

Noah G. Blechman
noah.blechman@mcnamaralaw.com

Mister Phillips, Esq.
2310 San Pablo Ave, Ste 204
P.O. Box 1162
Pinole, CA 94564

Re:     **Bracko v. City of San Pablo**

Dear Mr. Phillips:

Pursuant to Federal Rule of Civil Procedure ("FRCP") 37(a)(2)(B) and Northern District of California Local Rule 37-1(a), Defendants write to confer in good faith regarding Plaintiff's improper refusal to answer several relevant, non-objectionable and non-privileged questions posed at his deposition.

Defendants hereby demand Plaintiff be produced forthwith to answer these questions, as discussed below, at a future deposition. If Plaintiff continues with his obstructionist tactics, Defendants will have no choice but to move to compel his answers. Please be advised Defendants will also seek appropriate sanctions for being forced to prepare such a motion and because you have no reasonable or legitimate bases for instructing Plaintiff to not answer these questions.

Additionally, Defendants demand that you produce written witness statements of Lorraine Hunt and Ashlee Wilson, which they admitted at deposition exist, which you wrongfully claim are privileged under the attorney work-product doctrine.

## I.     INTRODUCTION

On July 3, 2008, Defendants Alex Caine ("Caine") and City of San Pablo (City") deposed Plaintiff, Christian Bracko ("Bracko"). During his deposition, Defendants asked Bracko several

Mister Phillips, Esq.
August 1, 2008
Page 2

Re:   <u>Bracko v. City of San Pablo</u>

relevant and non-objectionable questions about his activities on the day he was arrested by
Caine, and other relevant and non-objectionable questions.  You instructed Bracko numerous
times to not answer these questions, ostensibly because some of them allegedly asked Plaintiff
questions regarding his criminal behavior, which you interpreted as potentially incriminating
Plaintiff in violation of the Fifth Amendment to the Constitution of the United States.[1]

As discussed below, your objections lacked merit and <u>should you refuse to produce and
allow Bracko to provide answers to these relevant and non-objectionable questions, Defendants
will have no choice but to seek judicial intervention and an order compelling Bracko to answer,
accompanied by a motion for appropriate sanctions.</u>

The following are the relevant questions Defendants request Plaintiff submit to answering
at a future deposition.

## II.   RELEVANT AND NON-OBJECTIONABLE QUESTIONS

### A.   Why did Bracko flee from Officer Brady?

Defense counsel asked Bracko a simple, straightforward question regarding why he fled
from Officer Brady and the San Pablo Police Department.  (Pl.'s Depo. pg. 58:12-16; *see also*
pgs. 101, 104:22-105:5).  This question is directly relevant to Bracko's activities before the chase
began, what he possessed at the time Officer Brady attempted to pull him over, why Bracko was
willing to endanger the public and Officer Brady by fleeing in his car, why he ran from Officer
Brady after he had crashed his car, and why Bracko resisted arrest after Brady caught up with
him.[2]

Clearly, why Bracko decided to flee from Officer Brady instead of complying with his
attempt to pull him over is of consequence to this action as Plaintiff claims Caine used excessive
force during his arrest.  The reasons behind Bracko's choice to flee are directly relevant to his
state of mind at the time and are also relevant to Caine's justification for using force to detain
Plaintiff.

Instead of providing an answer to this relevant and unobjectionable question, you
directed Bracko not to answer the question based on "something like" a Fifth Amendment
privilege against self-incrimination.  (Pl.'s Depo. pgs. 58:17-61:22).

---

[1] For ease of reference, the Fifth Amendment to the Constitution of the United States provides, in relevant part: "No
person shall…be compelled in any criminal case to be a witness against himself…"
[2] *See* FRCP 403; " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that
is of consequence to the determination of the action more probable or less probable that it would be without the
evidence."

Mister Phillips, Esq.
August 1, 2008
Page 3

Re:   <u>Bracko v. City of San Pablo</u>

As you know, following Defendants' Motion to Dismiss Bracko's state law claims, which was granted by Judge Larson with prejudice, his sole surviving cause of action is an allegation of excessive force in violation of the Fourth Amendment to the Constitution of the United States. Because this lawsuit is now exclusively a "federal question" case, privileges are determined under federal common law.  Federal Rule of Evidence ("FRE") 501; *United States v. Zolin*, 491 U.S. 554, 562 (1989).

Of course, the Fifth Amendment privilege against self-incrimination may be raised in civil as well as in criminal proceedings and applies during the discovery process.  <u>The Rutter Group</u>, Cal. Prac. Guide, Fed. Civ. Pro. Before Trial, Chap. 11, § 700, citing *United States v. Balsys*, 524 U.S. 666, 672 (1998).  However, "[t]he privilege can be waived by testifying on the subject matter at issue or by producing documents containing incriminating matters."  <u>The Rutter Group</u>, Cal. Prac. Guide, Fed. Civ. Pro. Before Trial, Chap. 11, § 707, citing *Brown v. United States*, 356 U.S. 148, 156-157 (1958).

In this case, Bracko has already testified about the following "incriminating" matters:

- <u>Bracko did not have a valid California Driver's License on the date of the incident nor has he ever had a valid license</u>, yet he was pulled over by Officer Brady while driving. (Pl.'s Depo. pgs. 20:20-21:23);

- On the day of the incident, Officer Brady tried to pull Bracko over in Parchester Village in Richmond, California.  <u>Bracko fled by car and then on foot.  After his car crashed or lost control, Bracko fled from the officer on foot.  Bracko knew when he was fleeing from the officer that the officer was trying to stop him.</u> (Pl.'s Depo. pgs. 57:21-59:15; *see also* Plaintiff's Second Amended Complaint ("SAC") pgs. 2:24-3:4);

- The car Bracko was driving on the day of the incident belonged to him.  <u>He did not have a driver's license at the time and the car was not legally registered.</u>  Brady therefore had grounds to stop Bracko because his vehicle was not registered. (Pl.'s Depo. pg. 96:11-97:3);

- Bracko stopped his car in the Parchester Community Center parking lot in Richmond after he saw Officer Brady attempt to pull him over. After he stopped, he pulled out, <u>trying to flee from the officer.  Bracko understood that when Brady was behind him with his lights on, he was trying to stop him.  Bracko stopped his car briefly and then decided to flee by driving away.</u> (Pl.'s Depo. pgs. 100:19-101:20);

Mister Phillips, Esq.
August 1, 2008
Page 4

Re:   Bracko v. City of San Pablo

- After Bracko's car spun out during the car chase, he got out and ran. Bracko knows that when he decided to run, there was an officer behind him trying to stop him from fleeing. (Pl.'s Depo. pgs. 105:16-105:21);

- Up until the time Brady grabbed Bracko, Bracko heard the officer give him orders. Brady said "freeze" twice. Bracko ignored the commands. (Pl.'s Depo. pg. 108:1-108:17);

- After Bracko came out of his jacket, he ran back down Johnson. Bracko estimates he took a couple of steps after being pulled off the fence. (Pl.'s Depo. pgs. 109:9-110:21);

- Bracko then got up and started running again, trying to flee from the officer. (Pl.'s Depo. pgs. 110:22-111:19);

- Brady then hit Bracko again with a baton in his leg. He had taken a couple of more steps away from Brady trying to run. Bracko then fell into the street, laying on his stomach. (Pl.'s Depo. pgs. 111:20-112:14);

- After being on the ground several times, Bracko got up and tried to run away several times. Bracko heard Brady tell him to stay on the ground after Brady had a knee in his back. (Pl.'s Depo. pgs. 134:25-135:12);

- Bracko has been convicted of one (1) felony. He was convicted of a felony for evading the police. Bracko believes the conviction was for evading Brady. (Pl.'s Depo. pgs. 145:1-146:13);

- Bracko is aware that marijuana was found in the Nissan he was driving on the day of the incident. The marijuana was Bracko's. The officers also found marijuana in Bracko's jacket. That was also Bracko's marijuana. Bracko estimates they found approximately 76 to 77 grams of marijuana. (Pl.'s Depo. pgs. 156:3-157:8);

- All the marijuana found was Bracko's. (Pl.'s Depo. pgs. 157:9-158:4).

Clearly, by pleading in his SAC, and testifying extensively during his deposition that he fled in his car and then on foot from Officer Brady, Bracko has waived all Fifth Amendment

Mister Phillips, Esq.
August 1, 2008
Page 5

Re:    <u>Bracko v. City of San Pablo</u>

privileges regarding ***why*** he did so.[3] *Brown v. United States, supra,* at 156-157. Defendants'
inquiries regarding this subject were clearly relevant to ascertaining Bracko's motive for fleeing
from the police (*i.e.*, lack of registration or driver's license, possession of marijuana, fear of the
police, etc.). Their questions were also relevant for purposes of establishing foundational facts to
demonstrate Caine's state of mind when he arrived at the scene to assist Officer Brady in
controlling Bracko.

    You also instructed Plaintiff not to answer why he fled from the police on the basis that
the involved officers may seek to charge Bracko with further crimes relating to this incident.
(Pl.'s Depo. pg. 59:3-15). However, as you know, <u>Bracko has already pled no contest to and
been convicted of several charges relating to this incident</u>, including a misdemeanor for resisting
arrest under California Penal Code § 148(a)(1), and misdemeanors for evading the police in a
motor vehicle under California Vehicle Code § 2800.1 and possession of marijuana in violation
of California Health & Safety Code § 11357(c). Thus, Bracko is protected from being charged
for evading and resisting the police or possession of marijuana under double jeopardy principles,
as he has already been convicted and sentenced for these crimes.

    Accordingly, unless you provide some valid basis for asserting that Bracko may be
exposed to additional charges relating to this incident (which are likely barred by applicable
criminal statutes of limitations), the reason why Bracko ran from the police is directly relevant
and discoverable. Bracko should therefore answer questions relating to why he fled from Officer
Brady.

**B.    <u>Did Bracko Ingest any Illegal Substances on the Day of the Incident?</u>**

    You also instructed Bracko not to answer whether he had taken any illegal substances on
the day of the incident on the basis that the question called for Plaintiff to potentially incriminate
himself in violation of the Fifth Amendment. (Pl.'s Depo. pgs. 81:14 – 84:2; 85:22 – 89:8; 90-
91). Incredibly, you conceded that questions relating to Bracko's drug-use on the day in
question were relevant to this case and that you "hoped" the judge would not sanction you for
instructing Bracko not to answer. (Pl.'s Depo. pg. 87:7-18).

    Again, because you concede the question is relevant to (1) Bracko's state of mind; (2) his
ability to recall events accurately and completely, and; (3) his motive for fleeing from Officer
Brady, the only question is whether, by answering these questions, Bracko could potentially

---

[3] You also directed Bracko not to answer whether *one* of the reasons he fled from the police was he did not have a
valid driver's license. (Pl.'s Depo. pgs. 61:23-62:4). Whether the fact that Bracko did not have a valid driver's
license at the time of his arrest (he has already admitted he did not) is directly relevant to why he ran from the police
and is non-privileged.

Mister Phillips, Esq.
August 1, 2008
Page 6

Re:    <u>Bracko v. City of San Pablo</u>

"incriminate" himself, and you thus had an appropropriate basis for instructing him not to answer.

      As discussed in the previous section, the District Attorney is constitutionally forbidden from charging Bracko with possession of marijuana under double jeopardy principles. The statute of limitations relating to being under the influence of illegal narcotics is one year. California Penal Code ("PC") § 802(a). Therefore, the final date Bracko could have been charged with ingesting illegal substances on the day at issue (November 27, 2006) was November 27, 2007 (approximately 8 months ago). Accordingly, there is no risk Bracko could "incriminate" himself by simply stating whether he was under the influence of a controlled substance on the date at issue. You thus had no valid or reasonably legitimate basis to instruct Bracko not to answer. Though Plaintiff later answered a question about drug use in the hours before the incident, the record is unclear and we wish to clear up this issue at the next deposition session.

**C.    <u>Who was the Individual Bracko was with when he Decided to Flee from Officer Brady?</u>**

      You next instructed Bracko not to answer questions regarding who he was traveling (and subsequently fled with) in his car when Officer Brady attempted to pull Bracko over on the grounds that the answer may be potentially incriminating. (Pl.'s Depo. pgs. 90:19-91:1; 91:23-95:10). This was yet another invalid and unreasonable objection and Bracko should answer this simple, straightforward question. Plaintiff's objection here is clearly improper and obstructionist.

      As discussed above, this case now exclusively involves a "federal question", and therefore privileges are determined under federal common law. FRE 501; *United States v. Zolin, supra,* 491 U.S. 554, 562 (1989). Here, the law is clear that the Fifth Amendment privilege against self-incrimination only applies to Bracko, ***not*** his passenger. Under clear and longstanding United States Supreme Court precedent, the privilege against self-incrimination "is solely for the benefit of the witness" and is "purely a personal privilege of the witness." *Rogers v. United States,* 367 U.S. 367, 371 (1951); citing *United States v. Murdock,* 284 U.S. 141, 148 (1931) and *Hale v. Henkel,* 201 U.S. 43, 69 (1906).

      Because the privilege against self-incrimination belongs to Bracko alone, he cannot invoke the privilege on behalf of his passenger. Identification of this passenger could lead to discovery of admissible evidence and should be disclosed. The passenger may have seen the altercation and/or can shed further light on this incident. There is no foundational basis for this objection.

Mister Phillips, Esq.
August 1, 2008
Page 7

Re:     Bracko v. City of San Pablo

Bracko should accordingly identify who his passenger was when he decided to flee from Officer Caine at a future deposition.

**D.     What is Bracko's Personal History of Marijuana Use and What were the Circumstances under which Bracko was Found with a Significant Amount of Marijuana?**

1.     What is Bracko's Personal History of Using Marijuana?

You instructed Bracko not to answer questions relating to his personal history of using marijuana, again on the grounds that it purportedly calls for Bracko to be a witness against himself in violation of the Fifth Amendment as well as being irrelevant. (Pl.'s Depo. 157:25-159:14).

The police report describing this incident indicates Bracko told Officer Brady that the approximately seventy-seven (77) grams of marijuana found in his car and on his person was for "personal use". Photographs taken of Bracko's possessions following his arrest also support the fact that Bracko was found with a significant amount of marijuana. The amount of marijuana found on Bracko is obviously inconsistent with personal use. Since Bracko claims all the marijuana found at the scene (1) admittedly belonged to him; (2) was for personal use, and (3) was actually his mother's for medicinal purposes, Bracko's personal history of marijuana use is relevant to his truthfulness and motive for fleeing from and struggling with Officers Brady and Caine.

Similarly to the discussion above relating to whether Bracko had ingested any illegal narcotics on the date in question, Bracko has already been prosecuted for and pled no contest to a misdemeanor for possession of marijuana. Subsequent prosecution for this crime is therefore barred by principles of double jeopardy. Also, there can be no concern that Plaintiff will be prosecuted for admissions as to past drug abuse.

Again, the District Attorney is currently prohibited from prosecuting Bracko for being under the influence of marijuana before August 1, 2007 under applicable statutes of limitation. Given the significant amount of marijuana found during his arrest and detention, and the dispute as to whether Bracko told Officer Brady that the marijuana was for personal use, questions relating to Bracko's personal history of using marijuana are directly relevant to (1) his state of mind at the time of the incident; (2) whether he can accurately and completely recall the events leading up to his arrest, and; (3) his motive for fleeing from the officers. Bracko therefore should answer questions relating to his personal history of using marijuana.

Mister Phillips, Esq.
August 1, 2008
Page 8

Re:    Bracko v. City of San Pablo

2.    Where did Bracko Obtain the Marijuana he was Found with?

You did not allow Bracko to answer questions regarding where he obtained the significant amount of marijuana that was found on his person and car. (Pl.'s Depo. pg. 159:16-159:24). Again, you based this objection on the grounds that an answer to this question would be self-incriminatory. Your objection had no reasonable or legitimate basis.

As discussed at length above, the District Attorney is prohibited from prosecuting Bracko for possession of marijuana on the date of the incident based on double jeopardy principles. He can therefore have no reasonable basis for fear of prosecution relating to possession of marijuana on the day of the incident.

Where Bracko obtained the marijuana is directly relevant to (1) who the marijuana was intended for; (2) whether the marijuana was for personal use or sale, and (3) Bracko's credibility and truthfulness. Since there is a dispute between the parties as to whether (1) Bracko told Officer Brady whether the marijuana was for personal use and (2) whether a jury could infer that Bracko fled from the police because he possessed a significant amount of marijuana and accordingly feared prosecution for possession for sale, where Bracko obtained the marijuana is directly relevant to that dispute.

3.    Why does Bracko no Longer Possess a Cannabis Card?

Bracko stated in his deposition that he (1) obtained a valid cannabis card and held it from 2000 to 2007 as a caregiver to his mother in order to provide her with medicinal marijuana; (2) the marijuana he obtained with the cannabis card was always provided to his mother; (3) he never used the card for his own purposes; (4) he obtained the marijuana found on him by Officers Brady and Caine from the Hilltop Cannabis Club in Richmond, California, on the day of the incident, and; (5) he intended to provide the marijuana he obtained from the Hilltop Cannabis Club on the day of the incident to his mother. (Pl.'s Depo. pgs. 159:25-162:15)

You did not allow Bracko to answer why his caretaker cannabis card was cancelled in 2007 on the grounds that the answer might incriminate him. (Pl.'s Depo. pgs. 162:18-164:2). Questions relating to why Bracko's cannabis card was cancelled could be directly relevant to, among other issues, the actions taken by various California state agencies following Bracko's arrest for and conviction of marijuana possession. If a state agency determined that Bracko was unlawfully using his caretaker cannabis card by not providing the marijuana he obtained from various cannabis clubs to his mother for medicinal purposes, that fact would be directly relevant to Bracko's motive for fleeing from the police and subsequently resisting arrest. Defendants are therefore entitled to question Bracko about why his caretaker cannabis card was cancelled.

Mister Phillips, Esq.
August 1, 2008
Page 9

Re:    <u>Bracko v. City of San Pablo</u>

4.    <u>Where did Bracko Obtain $600 to buy the Marijuana he was Found with?</u>

You refused to allow Bracko to provide information about where he obtained approximately $600 in order to buy the marijuana he was found with after Officers Caine and Brady arrested him. (Pl.'s Depo. pgs. 164:3-165:5). Clearly, such information is relevant to ascertaining Bracko's motive in possessing the marijuana (*i.e.* was it for personal use, for sale, or for his mother?). It is also relevant because Bracko admitted he has only held one job since graduating from high school in 2000, and that employment terminated in December, 2004. Where Bracko obtained $600 to purchase marijuana given his lack of employment and corresponding limited funds at the time of the incident is obviously relevant to Bracko's motive for fleeing from and resisting the police.

As discussed above, the statute of limitations for possession of marijuana for sale forecloses the possibility of Bracko's prosecution for such a crime. Finally, the District Attorney cannot constitutionally prosecute Bracko for possession of marijuana for sale due to double jeopardy principles. Accordingly, Bracko should identify the source from which he obtained $600 to purchase the marijuana he was found in possession of.

5.    <u>Does Bracko Remember Receiving a Text-Message Regarding a Request for Marijuana?</u>

Finally, you instructed Bracko not to answer a question regarding whether he remembers receiving a text-message from an unidentified caller stating "Call me fool. I need sum (sic) weed." (Pl.'s Depo. pg. 211:5-24). Your objection was that the question called for Bracko to potentially incriminate himself in violation of the Fifth Amendment.

This question is clearly relevant to understanding Bracko's motive for fleeing from and resisting Officer Brady. If Bracko remembers receiving a text-message requesting marijuana before the day of the incident, that fact indicates Bracko may indeed be a known marijuana seller and the marijuana in his possession was in fact for sale. Of course, this may also explain why Bracko so forcefully attempted to avoid being arrested on the date in question.

As discussed extensively above, the District Attorney is constitutionally prohibited from charging Bracko with possession of marijuana for sale on the date of the incident under double jeopardy principles. The District Attorney is also precluded from charging Bracko with the same crime because the applicable statute of limitations period has run. Bracko should accordingly answer whether or not he remembers receiving a text-message requesting marijuana.

Mister Phillips, Esq.
August 1, 2008
Page 10

Re:    <u>Bracko v. City of San Pablo</u>

## III.    <u>WITNESS STATEMENTS OF LORRAINE HUNT AND ASHLEE WILSON</u>

### A.    <u>The Written Witness Statements of Lorraine Hunt and Ashlee Wilson are not Protected by the Attorney Work-Product Doctrine.</u>

At the depositions of Ms. Hunt and Ms. Wilson, they both testified that you obtain a written factual statement of incident from them (different than Ms. Hunt's prior handwritten statement) which they gave to you and you gave them each a copy. These statements are discoverable and should have been produced pursuant to Plaintiff's duty of disclosure under FRCP 26. As discussed above, this case now exclusively involves a "federal question", and privileges are therefore determined under federal law. FRE 501; *United States v. Zolin, supra,* 491 U.S. 554, 562 (1989). The work-product doctrine protects trial preparation materials that reveal an attorney's strategies, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews. <u>The Rutter Group</u>, Cal. Prac. Guide, Fed. Civ. Pro. Before Trial, Chap. 11, § 825, citing FRCP 26(b)(3); see also *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). However, the work-product doctrine does *not* protect documents or reports prepared by independent witnesses. <u>The Rutter Group</u>, Cal. Prac. Guide, Fed. Civ. Pro. Before Trial, Chap. 11, § 865.

Because Ms. Hunt and Ms. Wilson are (purportedly) independent witnesses, their factual statements, whether or not prepared by you, are relevant and not protected by the attorney work-product doctrine. These statements should have been identified in Bracko's Initial Disclosures and also produced herein. <u>Defendants accordingly demand that you produce these statements immediately.</u>

Alternatively, FRCP 26(b)(3) provides that an opposing party is entitled to documents that would otherwise be protected under the work-product doctrine if it can show (1) a substantial need; and (2) is unable without undue hardship to obtain the substantial equivalent of the materials by some other means. Because these statements could corroborate or contradict Ms. Hunt and Mr. Wilson's account of the incident as they testified in deposition, these statements are relevant, are needed by Defendants and we cannot obtain them through the witnesses as they are homeless and do not know where the statements are. They could also provide evidence favorable to Plaintiff which Defendants want to explore.

Because these statements are in your exclusive possession, and you have refused to produce them or disclose their contents, Defendants cannot obtain the information contained in these statements by some other means. Accordingly, should you refuse to produce these statements, Defendants will have no choice but to seek an order compelling disclosure. At a minimum, to be able to fully evaluate Plaintiff's objections to disclosure, Plaintiff should provide a privilege log as mandated by FRCP 26.

Mister Phillips, Esq.
August 1, 2008
Page 11

Re:     Bracko v. City of San Pablo

## IV.    CONCLUSION

Your objections to Defendants' simple, straightforward and non-objectionable questions
were not well-taken and had no legitimate or reasonable bases in law or fact. Bracko should
answer the questions and related areas as discussed above. If you refuse to offer up and allow
Bracko to answer these questions, Defendants will move for an order compelling him to do so.
Defendants will also seek, by August 15, 2008, appropriate sanctions for being forced to prepare
the motion to compel to respond to Plaintiff's unjustified positions and meritless objections.

The statements of Ms. Hunt and Ms. Wilson are likewise not privileged. Defendants
accordingly demand you produce these statements. If you do not, Defendants will seek an order
compelling you to produce such statements by August 15, 2008.

Should you have any questions, please do not hesitate to contact the undersigned, or
James V. Fitzgerald, III, the lead trial attorney on this matter.

Very Truly Yours,

Noah G. Blechman

# EXHIBIT B

# LAW OFFICE *of* MISTER PHILLIPS

P.O. Box 1162
Pinole, CA 94564
Phone: (510) 672-3756
Fax: (510) 222-4198
http://www.misterphillips.com

8/14/08

Noah Blechman, Esq.
McNamara Dodge
P.O. Box 5288
Walnut Creek, CA 94596

Re: Bracko v. Caine

Dear Mr. Blechman:

After reflecting on the deposition of Christian Bracko,
including the questions you asked and the police officers who
were present and taking notes, I am convinced that Defendants
are using the deposition to conduct an investigation into
alleged illegal drug sales. This is an abuse of the discovery
process. This is also annoying, embarrassing, and/or oppressive
to Bracko. Therefore, Bracko objects to further questioning and
plans to seek a protective order.

Furthermore, Bracko specifically objects to the following
questions on the grounds stated below.

**Why did Bracko flee?**

First, Bracko asserts his right against self-incrimination.
Bracko's testimony could lead to his criminal prosecution for
other more serious crimes.

Second, why Bracko fled is not relevant, because it does not
have any tendency to make *the sole issue in this case: whether
Defendant used excessive force on Bracko*, more probable or less
probable, especially since Defendant did know why Bracko fled.[1]

---

[1] Although *why* Bracko fled is not relevant, *whether* Bracko fled is. See Ninth
Circuit Model Civil Jury Instruction 9.22(3).

1

**Did Bracko use illegal drugs on the day of the incident?**

As Defendants stated on page six of their meet and confer letter, Bracko already answered this question.

**Who was with Bracko?**

First, Bracko asserts his privilege against self-incrimination. The individual's testimony could lead to the criminal prosecution of Bracko for other more serious crimes.

Second, Bracko objects on the ground that identifying the individual to the police could place Bracko in grave danger.

**What is Bracko's history of alleged drug use?**

First, Bracko asserts his right against self-incrimination. Bracko's testimony could be used against him in future criminal proceedings.

Second, Bracko objects on the ground that the question is unreasonably annoying, embarrassing, and/or oppressive.

Third, Bracko's history of alleged drug use is not relevant, because it does not have any tendency to make Defendant's use of unreasonable force more probable or less probable.

**Where did Bracko get marijuana?**

First, Bracko asserts his right against self-incrimination. Bracko's testimony could lead to his criminal prosecution for other more serious crimes.

Second, according to page eight of Defendants' meet and confer letter, Bracko already answered this question. "Bracko stated in his deposition that … he obtained the marijuana found on him by Officers Brady and Caine from the Hilltop Cannabis Club in Richmond, California …."

Third, where Bracko got marijuana is not relevant, because it does not have any tendency to make Defendant's use of unreasonable force more probable or less probable.

**Why does Bracko no longer have a cannabis card?**

First, Bracko asserts his right against self-incrimination. Bracko's testimony could lead to his criminal prosecution for other more serious crimes.

Second, why Bracko no longer has a cannabis card is not relevant, because it does not have any tendency to make Defendant's use of unreasonable force more probable or less probable.

**Where did Bracko get money to buy marijuana?**

First, Bracko asserts his right against self-incrimination. Bracko's testimony could lead to his criminal prosecution for other more serious crimes.

Second, where Bracko got money to buy marijuana is not relevant, because it does not have any tendency to make Defendant's use of unreasonable force more probable or less probable.

**Does Bracko remember receiving a request for marijuana?**

First, Bracko asserts his privilege against self-incrimination. Bracko's testimony could lead to his criminal prosecution for other more serious crimes.

Second, whether Bracko remembers receiving a request for marijuana is not relevant, because it does not have any tendency to make Defendant's use of unreasonable force more probable or less probable.

**Witness statements I took**

First, the witness statements I took are my protected work-product.

Second, the exception to the work-product doctrine does not apply, because Defendants have already obtained "the substantial equivalent" of the witness statements by deposing the witnesses.

If you have any questions about Bracko's position, please call me.

Cordially,


Mister Phillips, Esq.

3

# EXHIBIT C

1          UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

3                    --oOo--

4                                    COPY

5

6    CHRISTIAN J. BRACKO,                )

7                    Plaintiff,          )

8         vs.                           )    No. C08-00239

9                                        )

10   ALEX CAINE; CITY OF SAN PABLO, CA;  )

11   and DOES 1 - 10, inclusive          )

12                    Defendants.         )

13                                        )

14

15        DEPOSITION OF CHRISTIAN J. BRACKO

16

17

18        Taken before JULIE MAGGI VASTA,

19        A Certified Shorthand Reporter,

20     License No. C-2947, State of California

21

22            July 3, 2008

23                                   McNamara, Dodge, Ney, Beatty,
                                     Slattery & Pfalzer LLP

24              --oOo--              JUL 17 2008

25                                   HAND DELIVERED



1

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1  may affect his emotional state, I think I am entitled to

2  inquire into that stuff.

3      MR. PHILLIPS:  Go ahead.

4      MR. BLECHMAN:

5      Q.  So you can answer my last question I asked you

6  about just what was the nature of the issues between

7  you and Athena going on around the time of the

8  incident?

9      A.  Found girls' numbers in my phone.

10     Q.  Okay.  And she thought that you were maybe

11 fooling around a little bit on the side?

12     A.  Yes.

13     Q.  Do you have any children?

14     A.  No.

15     Q.  Ever been married?

16     A.  No.

17     Q.  After a couple of weeks after this incident is

18 that when you and Athena got back together?

19     A.  Yes.

20     Q.  Do you currently have a driver's license?

21     A.  No.

22     Q.  Have you ever had a driver's license?

23     A.  No.

24     MR. PHILLIPS:  Can I speak to him for a second,

25 please.

**Zandonella**
REPORTING SERVICE, INC.

20

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1      MR. BLECHMAN:  Sure.

2      (Mr. Phillips and the witness leave the room.)

3      MR. BLECHMAN:

4      Q.  Mr. Bracko and his attorney are back from a

5  brief meeting.

6      And the last question I asked you, and I will just

7  reask it is, have you ever had a driver's license?

8      A.  No, I never had a driver's license.  They

9  suspended them and I never had one.

10     Q.  Have you ever, like when you were 16 or

11 whatnot, did you ever take the test to get a driver's

12 license?

13     A.  Yes.  I took the test and failed.

14     Q.  Okay.  And let me ask you this:  Have you ever

15 taken the driver's license test and passed and received

16 a driver's license from the DMV?

17     A.  Never received a driver's license.

18     Q.  So you have never had a valid California

19 Driver's License?

20     A.  No.  Just an ID.

21     Q.  Okay.  You had a California Identification

22 Card?

23     A.  That's it.

24     Q.  One thing I was confused about, at the time of

25 this incident, and we are going to get into this in a

**Zandonella**
REPORTING SERVICE, INC.

21

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    perspective and your attorney's perspective --

2        A.   Some --

3        Q.   Hold on -- - in relation to this incident?

4        A.   Yes.  Some of the stuff in here I told him what

5    happened, but I don't recall.

6        MR. PHILLIPS:  Okay.  I don't want you to say

7    anything about what you told me or anything like that,

8    but just answer his question and stop talking.

9        THE WITNESS:  Could you repeat the question.

10       MR. BLECHMAN:

11       Q.   We're looking at the Complaint that was filed

12   on your behalf to initiate this lawsuit.

13       And my question was have you ever seen this

14   document before today or any similar type of document.

15   There's been a couple of amendments to your Complaint

16   but nothing substantive in terms of the facts for the

17   most part.

18       Have you ever seen any complaint filed on your

19   behalf in this case before today?

20       A.   No.

21       Q.   While we're looking at the Complaint here, have

22   you read the facts section which is starting on page

23   two, line 23, through page three, line 28?  Have you

24   read those paragraphs?  It's essentially paragraphs 8

25   through 15.

Zardonella
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1      A.  Can you say that again for me.

2      Q.  Sure.  I just want to make sure that I give you

3  an opportunity to read these paragraphs because I am

4  going to ask you questions about them right now.

5      So I was wondering if you read those paragraphs

6  starting on page two, it's actually paragraph number

7  eight through page three, paragraph number 15.

8      A.  Can you break that question down for me.

9      Q.  Yes.  Have you had a chance to kind of read

10 through pages two and three here, the facts section of

11 the complaint?

12     A.  Yes.  Right now.

13     Q.  Okay.  Let me draw your attention then to page

14 two on there, the paragraph listed number eight that

15 starts on November 27, 2006.

16     I will just take this paragraph by paragraph and

17 then I'll ask you questions about it.  Okay?

18     A.  All right.

19     Q.  Is there anything in that paragraph that in

20 your opinion is inaccurate?

21     And just for the record, I will read what the

22 paragraph says.  It says, on November 27th, 2006, around

23 noon an unknown San Pablo, California, police officer

24 tried to pull Mr. Bracko over in Parchester Village, a

25 predominantly black neighborhood in Richmond,

**Zandonella**
REPORTING SERVICE, INC.

58

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    California.

2        Mr. Bracko fled by car and then on foot in the same

3    neighborhood.

4        Is that all correct?

5        A.  Yes.

6        Q.  So it's true that you fled from the police

7    officer in your car, correct?

8        A.  Yes.

9        Q.  And then after your car crashed or lost

10   control, you fled from the officer on foot, correct?

11       A.  Yes.

12       Q.  When you were driving your car and fleeing from

13   the officer, you knew that there was an officer behind

14   you that was trying to stop you, correct?

15       A.  Yes.

16       Q.  Now, why was it that you were fleeing?

17       MR. PHILLIPS:  Do not answer that.

18       MR. BLECHMAN:  I think it's a fair question.

19       THE WITNESS:  I am going to abide by --

20       MR. PHILLIPS:  Don't.  Just don't answer it.

21       It's an unfair question.  Don't answer it.  It has

22   nothing to do with the case and just don't answer the

23   question.

24       MR. BLECHMAN:  It's directly relevant to issues in

25   this case, so I don't understand your objection.  Other

Zandonella
REPORTING SERVICE, INC.

59

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    than asking your client not to answer the question, you

2    know, what's your legal objection?

3         MR. PHILLIPS:  This case has a bunch of criminal

4    elements floating around it, which you know.  You have

5    two police officers who are sitting over there taking

6    notes and writing down phone numbers of the people he's

7    talking about.  So they are going to do whatever they're

8    going to do when they leave here.  And the bottom line

9    is I don't want anybody putting my client in jail

10   because he sued the police department.  And I am not

11   saying because he sued the police department, but

12   because he came in here and said a whole bunch of stuff

13   that he had no business saying and he ends up in jail

14   because he brought a civil suit.

15        So don't answer the question.

16        MR. BLECHMAN:  Hold on.  What's your legal

17   objection?  Are you trying to make a 5th Amendment --

18        MR. PHILLIPS:  Something like that.

19        MR. BLECHMAN:  -- incrimination objection?

20        MR. PHILLIPS:  Yes.  To the extent that you're

21   asking him incriminating questions or potentially

22   incriminating questions in here, I have instructed him

23   already not to answer the question.

24        MR. BLECHMAN:  Wow.  First of all, he has already

25   -- as far as I am aware, he's already been charged and

**Zandonella**
REPORTING SERVICE, INC.

60

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    convicted of crimes arising out of this incident.  So I

2    don't believe there is any 5th Amendment rights to

3    assert here in terms of self incrimination.

4         I am entitled to find out why -- what his intent

5    was and why he was fleeing.  That's directly relevant to

6    the issues in this case.

7         If you're going to instruct him not to answer the

8    question, that's your prerogative.  I am going to mark

9    that portion of the transcript and chances are we are

10   going to have to bring him back to answer those type of

11   questions.

12        I mean, it's a fair question in a case involving a

13   fleeing suspect and then followed by a struggle.  So

14   that's my position.

15        MR. PHILLIPS:  I understand.  But to the extent

16   that the question is potentially incriminating, he's not

17   going to answer that today.  But outside of that, ask

18   away.

19        MR. BLECHMAN:  So as to why he was fleeing from the

20   officers, you're not going to allow him to answer this

21   question?

22        MR. PHILLIPS:  I have instructed him not to answer

23   that question.

24        MR. BLECHMAN:  Based upon 5th Amendment

25   self-incrimination grounds?

**Zandonella**
REPORTING SERVICE, INC.

61

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    MR. PHILLIPS:  There is no reason to keep repeating

2  it, Noah.  He's not answering the question.  I told you

3  why.

4    MR. BLECHMAN:  I am trying to make a record here,

5  Mister, so I am clear on your objection in case I need

6  to challenge it and do a motion or whatnot to bring him

7  back to ask what is a fair question for essentially

8  things he's kalready been convicted for.  So I don't

9  think there's any 5th Amendment rights there.

10    MR. PHILLIPS:  You know, he was convicted of

11  certain things.  There were other things that he was not

12  convicted of, okay, and I don't want him to be convicted

13  of the other things.

14    So the question's potentially incriminating, and

15  he's not answering it, and I think she's got it for the

16  record.  And that's why he's not answering it.

17    MR. BLECHMAN:  I am going to ask the court reporter

18  to mark that portion of the transcript then.

19    Q.  I may have to bring you another day to ask you

20  some of the questions that your attorney is not allowing

21  you to answer now.  Okay?

22    A.  Okay.

23    Q.  Let me ask it this way:  Is one of the reasons

24  that you fled the fact that you did not have a driver's

25  license?

**Zandonella**
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1          MR. PHILLIPS:  Objection.  Don't answer the

2    question.

3          It's the same objection.  You can ask the question

4    50 different ways.  He's not answering the question.

5          MR. BLECHMAN:  Well, we'll get to that stuff.  I

6    think there is some discoverability on some of those

7    issues, so we'll get to that.

8          Q.  Let's move to paragraph nine.  I am going to

9    read you paragraph nine, and I want you to read it to

10   yourself, and then I am going to ask you a couple

11   questions about it.

12         Paragraph nine in the Complaint says, "The officer

13   caught Mr. Bracko, wrestled him onto his stomach, and

14   handcuffed his hands behind his back."

15         Is that accurate?

16         A.  Yes.

17         Q.  Okay.  And then that paragraph says,

18   "Mr. Bracko's head was on the sidewalk, his body was in

19   the street."

20         Is that accurate so far?

21         A.  Yes.

22         Q.  And then it says, "Mr. Bracko was under full

23   control."

24         Is that accurate?

25         A.  Yes.

**Zandonella**
REPORTING SERVICE, INC.

63

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1     THE WITNESS:  Yes.

2     No.

3     MR. PHILLIPS:  Okay.

4     MR. BLECHMAN:

5     Q.  So a minute ago when I asked you if you missed

6  any time from work and you said yes, were you confused

7  about that question?

8     A.  Yeah.

9     Q.  Okay.  So you're not claiming any missed time

10  from work as a result of this incident, correct?

11     A.  No.

12     Q.  What I said was correct?

13     A.  Yes.

14     Q.  Okay.  Why don't we -- a couple more questions

15  and then maybe we'll take a break for lunch.  Does that

16  work?

17     We are talking about the incident, so let's back up

18  a little bit, okay.

19     On the night of the -- or the day of the incident,

20  what had you been doing earlier in that day?

21     A.  At a friend's house.

22     Q.  And what were you doing at the friend's

23  house?

24     A.  Lounging.

25     Q.  Had you been taking any drugs or anything at

**Zandonella**
REPORTING SERVICE, INC.

82

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1  your friend's house?

2      MR. PHILLIPS:  Objection.  Don't answer that

3  question.  Incriminating.

4      MR. BLECHMAN:  Well, I am certainly entitled to

5  know whether or not your client was under the influence

6  of any drugs or alcohol or anything like that at the

7  time of the incident which certainly may have a bearing

8  on his recollection and testimony and whatnot.

9      So if you're instructing him not to answer, that's

10  fine.  That's certainly going to be part of a motion to

11  compel.

12      And if I have to come back, Counsel, I am going to

13  seek sanctions for some of these objections that I don't

14  think are well taken.

15      MR. PHILLIPS:  Well, on this one when you just said

16  it the question changed a little bit.

17      I agree if he was drinking alcohol or something

18  like that, maybe he was impaired.  If you were to ask

19  him maybe if he was on prescription drugs, that's okay.

20  But there are a lot of other things floating around this

21  question.

22      If you want to ask him if he was on illegal drugs,

23  I am going to tell him not to answer that question every

24  minute of the day.

25      So if you want to be more specific, I probably

**Zandonella**
REPORTING SERVICE, INC.

83

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1   won't object.  It was a very vague question.  It was

2   open to many different things.

3        MR. BLECHMAN:  Right.  It was a broad question so I

4   would whittle it down to specifics.

5        Q.  But I am certainly entitled to this

6   information.  So let me ask you this question again and

7   I can break it down if we need to do that.

8        Q.  You're at your friend's house and, first of

9   all, who's your friend?  Whose house was it?

10       A.  Adante.  Adante Dotson.

11       Q.  Is it Adante?

12       A.  Adante.

13       Q.  Adante.  And what's Adante's last name?

14       A.  Dotson.

15       Q.  D-o-t-s-o-n?

16       A.  Yes.

17       Q.  And where does he live?

18       A.  He stays in Vallejo.

19       Q.  Do you know his address?

20       A.  No.

21       Q.  Do you know his phone?

22       A.  510-827-5696.

23       Q.  5696?

24       A.  Yes.

25       Q.  All right.  Who else was there with you and

**Zandonella**
REPORTING SERVICE, INC.

84

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    A.  Yes.

2    Q.  Okay.  And where did you go from that house?

3    A.  To Parchester.

4    Q.  So you were driving from Vallejo to Richmond?

5    A.  No.  I was driving from San Pablo to Richmond.

6    Q.  I thought Adante lived in Vallejo?

7    A.  He's staying in Vallejo now.  He stayed in San

8  Pablo at the time.

9    Q.  Gotcha.  So you were in San Pablo at Adante's

10  house?

11    A.  Yes.

12    Q.  Where was Adante's house in San Pablo?  Do you

13  remember the address?

14    A.  I don't know the address.

15    Q.  From the area of where this incident occurred

16  to Adante's house, how far away was it?

17    A.  Not that far.

18    Q.  Pretty close?

19    A.  Yeah.

20    Q.  Yes?

21    A.  Yes.

22    Q.  Now, at Adante's house did you ingest any

23  prescription medication?

24    A.  No.

25    Q.  Did you take -- did you ingest any illegal

Zardorella
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    drugs such as marijuana, cocaine, crack?

2         MR. PHILLIPS:  Objection.

3         Do not answer that question.

4         MR. BLECHMAN:  Hold on.  Hold on.

5    Methamphetamines, anything like that?

6         MR. PHILLIPS:  Objection.

7         Do not answer that question.

8         MR. BLECHMAN:  What's the basis of your objection,

9    Counsel?

10        MR. PHILLIPS:  It's potentially incriminating.

11        MR. BLECHMAN:  You're afraid your client's going to

12   be prosecuted for admitting that he was taking drugs at

13   the time before this incident?

14        MR. PHILLIPS:  No comment.  But the question that

15   you're asking him is an incriminating question and he's

16   not going to answer that.

17        MR. BLECHMAN:  It's certainly a fair question.  I

18   don't have to ask these questions but for the fact that

19   your client, Mr. Bracko, is suing my officers in

20   relation to this incident.

21        This information is directly relevant to your

22   client's recollection of events, his ability to recall

23   events, his state of mind at the time of the incident,

24   those type of things.

25        So if you're going to instruct him not to answer

**Zandonella**
REPORTING SERVICE. INC.

87

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1  the question, I can assure you that that's going to be a

2  subject of a motion to compel.  I am going to seek

3  sanctions for what I think is an unsubstantiated

4  objection to a fair question.

5      So, you know, I ask you to reconsider you position

6  in that sense.

7      MR. PHILLIPS:  If we were in front of the judge

8  right now I would agree that it's a relevant question

9  for the reasons that you stated, and I don't disagree

10 with that.

11     But I don't think -- I would hope that the judge

12 will not sanction me because I told my client not to

13 answer whether he was smoking crack in a deposition

14 under oath.  I would hope that the judge would not

15 sanction me for that.  Maybe he would, I would hope that

16 he wouldn't.

17     But I am instructing my client not to answer this

18 question.

19     MR. BLECHMAN:  Now, I am not asking him if he

20 smoked crack a week ago or, you know, took

21 methamphetamines, you know, five years ago.

22     I am asking specifically about if he was doing any

23 drugs the day of incident, the time right before the

24 incident, which is certainly relevant and a fair

25 question.

**Zandorella**
REPORTING SERVICE, INC.

88

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    MR. PHILLIPS:  Noah, I already said that I don't

2   dispute that's it's a relevant question.  You can tell

3   me 50 times that it's relevant, and I will say 50 times

4   I agree.

5        But I will say to you 50 times that it's an

6   incriminating question and he will not be answering that

7   question.

8        MR. BLECHMAN:  Okay.  Well, we are also going to

9   also mark that portion of the transcript.  I am going to

10  seek a motion I guess on this.  I am going to seek

11  sanctions for having to spend the time to do the motion

12  for information that Counsel has even conceded is

13  relevant.

14       There are some facts that Mr. Bracko, in my opinion

15  and information, that he has waived by bringing suit in

16  this case, one of which is things he was doing leading

17  up to this incident, et cetera, et cetera.

18       So I am going to reserve my right to bring him back

19  for further questioning once we sort out that issue.

20  Obviously with the E&E in this case set up for

21  July 21st, it's not going to be an issue that we can

22  probably resolve before then.

23       So, you know, it is what it is.  We'll have to

24  bring a motion at that point to ask those questions.

25       Just so I am making my record correctly here,



89

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1   you're not going to allow me to -- well, I will ask my

2   question and you can make your objection.

3       Q.   Just so the record's clear, while you were at

4   Adante's house just prior to this incident, had you

5   ingested any illegal drugs such as marijuana, crack,

6   cocaine, methamphetamines, anything like that?

7       MR. PHILLIPS:   Objection.   Incriminating.

8       Do not answer that question.

9       MR. BLECHMAN:   Okay.   And my prior certification is

10  the same certification for that question.

11      Q.   Had you drank any alcohol or anything like that

12  at Adante's house?

13      A.   No.

14      MR. BLECHMAN:   This might be a good time to break

15  for lunch before we get into more headbutting.

16      We'll take a quick lunch break.

17              (Lunch recess taken.)

18      MR. BLECHMAN:   We're back from a brief lunch

19  break.

20      I have met and conferred off the record with

21  Mr. Phillips.   He's still taking the same position with

22  regard to instructing his client not to answer any

23  questions about whether or not he had taken any drugs

24  just prior to the incident, and I want to ask a

25  follow-up question regarding that subject to Counsel's

Zardonella
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    objection.

2        Q.  One thing I wanted to ask you, Mr. Bracko, was

3    I asked you earlier if you had taken any drugs at

4    Adante's house or whatnot.

5        Let me ask you a more broad question, and your

6    Counsel may object.

7        At the time you got pulled over was approximately

8    -- or the time they intended to stop you was about noon

9    or 12:45 in the daytime; is that your memory?

10       A.  Yes.

11       Q.  Okay.  Had you taken any illegal drugs that

12   day, and I am talking about November 27th, 2006, had you

13   taken any illegal drugs that day?

14       MR. PHILLIPS:  Objection.  Incriminating.

15       Don't answer that.

16       MR. BLECHMAN:  Okay.  I am going to reserve my same

17   objections to the objection and that's going to be

18   probably an issue for a motion.

19       Q.  When you left Adante's house, who were you

20   with?

21       A.  My adviser told me not to answer that question.

22       Q.  All right.  Well, I don't want to know anything

23   about what your attorney and you have discussed.

24       So you're saying that --

25       MR. PHILLIPS:  I am instructing him not to answer



Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    the question.

2        MR. BLECHMAN:

3        Q.  So the question is -- let's back up a second.

4        When you left the house, you got into what car when

5    you left Adante's house?

6        A.  Nissan.

7        Q.  Is this your Nissan?

8        A.  Yes.

9        Q.  Is this a Nissan -- do you know what type of

10   Nissan this was?

11       A.  I am not for sure.  It was like a Sierra or

12   something.

13       Q.  When you left the house did you leave with --

14   did you leave with anybody else other than your

15   attorney?

16       A.  My counsel advised me not to answer that

17   question.

18       MR. PHILLIPS:  You can answer that question.

19       THE WITNESS:  Yes.

20       MR. BLECHMAN:

21       Q.  How many people were you with?

22       A.  One.

23       Q.  So there was one other person in the car with

24   you at the time when you realized there was an officer

25   behind you trying to stop your vehicle?

Zandonella
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1        A.   Yes.

2        Q.   And you're not going to disclose the identity

3    of that person?

4        MR. PHILLIPS:   Correct.

5        MR. BLECHMAN:   Okay.  Well, to the extent that that

6    person may be a witness to some of the events in this

7    case, and plaintiff is choosing not to identify that

8    person for somewhat of an uncommon reason as of yet, and

9    maybe Counsel wants to extrapolate on his objection, but

10   I believe that's also an issue that is subject to

11   discovery.

12       And we're entitled to that information and we will

13   be putting that in a motion to compel seeking sanctions

14   again if need be if we can't resolve that issue

15   further.

16       Is your objection, Counsel -- why don't you state

17   for the record what your objection is with regard to

18   that information.

19       MR. PHILLIPS:   It's potentially incriminating.

20       MR. BLECHMAN:   Well, how is it incriminating to

21   your client?  That's my question.  It might be

22   incriminating to the other person in the car who ran

23   from the police, but how is it incriminating to your

24   client?

25       MR. PHILLIPS:   You know what, I mean, that's just

Zandonella
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    the objection.  That's the objection.  And not to

2    mention that the guy didn't see any of this stuff that

3    he's actually -- he is admitting -- he has admitted

4    multiple things that he's done wrong already.

5        He's admitted that, you know, Officer Brady tried

6    to stop him and he drove off.  He admitted that he had

7    jumped out of his car and he tried to run.

8        I mean, he's admitted -- or he did run.  He's

9    admitted all of these things, okay.  So there is nothing

10   -- I don't even think there's -- I don't even really

11   think there's a dispute as far as I know of as to what

12   happened prior to Officer Caine coming on the scene.

13       So, you know, there's no need to bring this guy in

14   or anybody else in to testify as to what happened prior

15   to Officer Caine coming.

16       Now, if this guy was there when Officer Caine came

17   in and allegedly did what my client says he did, now

18   that's one thing.  But he wasn't there.  The guy ran off

19   which you know because you probably saw him run off.

20       OFFICER BRADY:  It's very common for suspects to

21   return to the scene to see what happened after they run,

22   though.  And I know that from personal experience.  So

23   for you to say that --

24       MR. BLECHMAN:  Okay.  I appreciate that.

25       And that's my point too is, you know, how do I know

Zandonella
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1   that this guy didn't hide in the bushes and witness some

2   of this and all the sudden I am going to get sand bagged

3   at trial with the identification of this person who's

4   going to testify against my client.

5        I don't know that.  I am certainly entitled to any

6   information that may lead to the discovery of admissible

7   evidence.  This is certainly within that realm, well

8   within that realm.  You're instructing him to not answer

9   a question about an incriminating issue that doesn't

10  even relate to him.  It relates to the incrimination

11  perhaps of the person who ran.

12       And so that would not be the privilege of your

13  client.  It would be the privilege of the person who

14  ran.  And that certainly is an issue for my motion and I

15  think when we add all these up, sanctions, I think, are

16  going to be awarded here for these unreasonable

17  objections.

18       MR. PHILLIPS:  I think maybe, you know, if we were

19  to speculate that it's a possibility that he hid in the

20  bushes and he was watching this happening from around

21  the corner, and then you think that I am going to bring

22  him in as some rebuttal witness and surprise you, I

23  mean, I could -- you drop the question and I will

24  stipulate not to bring him.

25       MR. BLECHMAN:  Well, that's one of my concerns.

Zandonella
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    The other issue is maybe he's a favorable witness to us.

2    I don't know.  So maybe I want to call him.

3         So the fact that you're not willing to identify

4    this other person who was in the car that fled, I

5    believe that's totally within the realm of discoverable

6    evidence.

7         I am going to reserve my right to ask Mr. Bracko

8    further questions after we file a motion on that issue,

9    and then I guess we can move on.  I think the record is

10   clear on that.

11        Q.  This Nissan car, was it your car?

12        A.  Yes.

13        Q.  And you again you did not have a driver's

14   license at the time you were driving this car,

15   correct?

16        A.  No.

17        Q.  What I said was correct?

18        A.  Yes.

19        Q.  And was your car legally registered?

20        A.  No.

21        Q.  Okay.  So when my officer says that he saw your

22   vehicle and it didn't have a valid registration, that

23   would be accurate, correct?

24        A.  Yes.

25        Q.  So if the officer saw that you had no

**Zandonella**
REPORTING SERVICE, INC.

96

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1   registration, he had grounds to try to stop your

2   vehicle, correct?

3       A.   Yes.

4       Q.   Okay.  Was the other person in the car a male

5   or female?

6       A.   Male.

7       Q.   The other person in the car, have you seen that

8   person since the day of this incident?

9       A.   Yes.

10      Q.   When's the last time you talked to that

11  person?

12      A.   Three weeks ago.

13      Q.   Have you guys ever talked about -- well, have

14  you ever talked to him about what happened in relation

15  to your arrest, you know, the handcuffing and that type

16  of thing?

17      A.   Yes.

18      Q.   Did he ever indicate that he witnessed any of

19  that?

20      A.   No.

21      Q.   After this person fled do you know essentially

22  where that person went, without identifying maybe the

23  exact location, but do you know if the person ran out of

24  the area?

25      A.   No.

Zardorella
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    all accurate so far?

2        A.  Yes.

3        Q.  Okay.  What I want to know is you said you turn

4    into the community center.

5        A.  Uh-huh.  I turned into Parchester and he hit

6    the lights and then I turned into the community center

7    parking lot.

8        Q.  Okay.  So you're saying you turned into the

9    Parchester Village area?

10       A.  Yes.

11       Q.  And then the community center is within the

12   Parchester Village area?

13       A.  Right.  Right after I made the left.

14       Q.  So you turn into the village and is that when

15   you see the lights get turned on?

16       A.  Yeah, when I was turning in -- when I was

17   making the turn, he hit the lights.  So I turned in the

18   community center to pull over.

19       Q.  So your intent when you drove into the

20   community center parking lot was you were going to stop

21   your vehicle?

22       A.  I stopped.

23       Q.  Okay.  What happened after you stopped?

24       A.  I pulled out.

25       Q.  And you were trying to flee from the officer?

**Zandonella**
**REPORTING SERVICE, INC.**

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    A.  Yes.

2    Q.  You understood that when there's a police

3 officer behind you with their lights on, that the police

4 officer was trying to stop your vehicle like a traffic

5 stop?

6    A.  Yes.

7    Q.  And you stopped your vehicle briefly and then

8 decided to try to flee by driving away.  Is that

9 accurate so far?

10    A.  Yes.

11    Q.  Why was it that you did not stop your vehicle?

12    MR. PHILLIPS:  Objection.  Incriminating.

13    Do not answer.

14    MR. BLECHMAN:  Certify that portion of the

15 deposition.  I'd appreciate it.

16    Q.  So what happened next?  You drive off -- how

17 long were you stopped before you drove off?

18    A.  A few seconds, a few minutes.

19    Q.  Was it a few seconds or a few minutes?

20    A.  Like a few seconds.

21    Q.  Okay.  And after you drove off, then what

22 happened?

23    A.  I pulled out and went down Johnson.

24    Q.  And why was it that you were going towards

25 Johnson or down Johnson?  Was there any specific reason

**Zandonella**
REPORTING SERVICE, INC.

101

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1  out?

2      A.  Yeah.

3      Q.  Did the car hit anything?

4      A.  No.

5      Q.  Didn't the car end up like on someone's front

6  yard?

7      A.  On the curb.

8      Q.  So it was still partially on the street?

9      A.  Yes.

10     Q.  And partially on the curb?

11     A.  Yes.

12     Q.  Was any part of the car on grass?

13     A.  No.

14     Q.  Did the car hit any sort of utility poles?

15     A.  No.

16     Q.  After you spun out what happened next?

17     A.  Got out and ran.

18     Q.  You know at the time that you got out and ran,

19  that there was a police officer that was trying to stop

20  you from fleeing, correct?

21     A.  Yes.

22     Q.  Now, why was it that you got out of your car

23  and ran?

24     MR. PHILLIPS:  Objection.  Don't answer that.  The

25  incriminating thing again.

Zandonella
REPORTING SERVICE. INC.

105

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1      MR. BLECHMAN:  Okay.  Well, I think it's a fair

2   question.  I think it's relevant.  And I am going to ask

3   that that portion of the record also be certified for

4   the purposes of a follow-up motion, with seeking

5   sanctions for having to do that.

6      Q.  So you lose control of the car, you get out and

7   then you run on foot, correct?

8      A.  Yes.

9      Q.  The other individual in the car, did they also

10   flee on foot?

11      A.  Yes.

12      Q.  All right.  And what happened next after you

13   start running?  Where did you go?

14      A.  I was running one way and he pulled on the side

15   of me and I turned around and started running up towards

16   Johnson.

17      Q.  When you say he pulled on the side of you, who

18   are you talking about?

19      A.  The officer to my left.

20      Q.  Okay.  So the officer to your left, Officer

21   Brady?

22      A.  Yes, Officer Brady.

23      Q.  Now, you see that Officer Brady is here and you

24   see on his uniform it says R. Brady.

25      Do you see that?



106

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    Q.   Now, at the time -- up until the time that you

2  started your foot -- when you started running on foot,

3  okay, from the officer, up until the point when the

4  officer grabbed you on the fence, did you ever hear the

5  officer give you any sort of orders?

6    A.   Yes.

7    Q.   Okay.  If could you speak up a little bit.

8    A.   Yes.

9    Q.   But what did you hear the officer say?

10   A.   He said freeze.

11   Q.   Okay.  Did he say anything else other than

12 freeze?

13   A.   That's it.

14   Q.   How many times did he say that approximately?

15   A.   I think twice.

16   Q.   And did you ignore those commands?

17   A.   Yes.

18   Q.   Okay.  So the officer grabs you and tries to

19 pull you off the fence and your jacket comes off,

20 correct?

21   A.   Yes.

22   Q.   All right.  And are you still on the fence at

23 that point in time?

24   A.   No.

25   Q.   Did you fall to the ground at that point in

**Zandonella**
REPORTING SERVICE, INC.

108

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1  time?

2      A.  He grabbed me off the fence and then he grabbed

3  me by my jacket and I came out of the jacket.

4      Q.  So are you now back on the ground?

5      A.  No.  I am still standing up.

6      Q.  Okay.  You're standing up, but you're now off

7  the fence?

8      A.  Yes.

9      Q.  Okay.  And then what happened next after you

10  came out of your jacket?

11      A.  I ran, and he hit me in the leg with the

12  baton.

13      Q.  So where did you try to run to?

14      A.  Back down Johnson.

15      Q.  How many steps did you get after the jacket

16  came off until the point in time when you got hit by the

17  officer?

18      A.  I am not for sure.

19      Q.  Can you give me an estimate?  Do you think it

20  was, you know, you took a couple steps or you ran, you

21  know, for a minute.  You know, give me an idea of what

22  happened?

23      A.  A couple steps.

24      Q.  So you took a couple steps and then you got hit

25  by the officer?

**Zandonella**
REPORTING SERVICE, INC.

109

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    A.  Yes.

2    Q.  What part of his body or whatnot hit you at

3  that point in time?

4    A.  His night stick hit me in the leg.

5    Q.  Like a baton?

6    A.  Yeah, baton hit me in the leg.

7    Q.  Which leg?

8    A.  I am not for sure.  I think it was my left

9  leg.

10    Q.  How many times did you get hit with the baton

11  at that point in time?  Was it just once or was it more

12  than --

13    A.  Just once.

14    Q.  Okay.  After you got hit by the baton what

15  happened next?

16    A.  I fell.

17    Q.  You were on the ground then?

18    A.  Yes.

19    Q.  Okay.  Were you on your stomach.  On your side?

20  On your back?

21    A.  On my back.

22    Q.  What happened next?

23    A.  Got up.

24    Q.  Right.  Then what?

25    A.  I started running again.

**Zandonella**
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    Q.  So you were again trying to flee from the

2  officer?

3    A.  Yes.

4    Q.  Was the officer giving you any further commands

5  during this period of time?

6    A.  No.

7    Q.  Did he say anything to you after you came out

8  of your jacket and took a few steps before you were hit

9  by the baton?

10    A.  No.

11    Q.  Did he say anything to you after he hit you

12  with the baton?

13    A.  No.

14    Q.  And again, there's only one officer with you at

15  the time this is happening?

16    A.  Yes.

17    Q.  Did you ever hear him, the officer say anything

18  into his radio during this period of time?

19    A.  No.

20    Q.  Okay.  So you try run away again.  What happens

21  next?

22    A.  He hit me in the leg again with the baton.

23    Q.  Was it the same leg?

24    A.  I am not for sure.  I am not for sure.

25    Q.  Okay.  Just once again in the leg?

**Zardonella**
REPORTING SERVICE, INC.

111

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1        A.   Uh-huh.

2        Q.   How many steps did you get after you tried to

3    run again until you got this baton hit for the second

4    time?

5        A.   The same as the last time.  A couple.

6        Q.   A couple more steps?

7        A.   Yeah.

8        Q.   Okay.  And after you get hit that second time

9    with the baton, what happens next?

10       A.   I fell in the street.

11       Q.   Okay.  And then when you fell in the street

12    tell me the position of your body.  Are you on your

13    stomach, your side, your back?

14       A.   On my stomach.

15       Q.   Okay.  What happened next?

16       A.   He hopped on my back and he handcuffed me.

17       Q.   So you said Officer Brady hopped on your back

18    and handcuffed you?

19       A.   Yes.

20       Q.   And when you said he hopped on your back, what

21    do you mean by that?

22       A.   What he supposed to do on my back?

23       MR. PHILLIPS:  Move to strike that.

24       You don't know what he was supposed to do.  You're

25    not a cop.  So just answer his question.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

Zandonella
REPORTING SERVICE, INC.

112

1    Brady, meaning you initiate any contact punching him,

2    grabbing him, anything like that?

3        A.  No.

4        Q.  Do you recall ever hearing Officer Brady tell

5    you to stay on the ground or get on the ground?

6        A.  Yes.

7        Q.  When did you hear him say that?

8        A.  When he put his knee in my back.

9        Q.  Was that the first time he told you to stay on

10   the ground?

11       A.  Yeah.

12       Q.  Did he ever tell you to get on the ground,

13   meaning you were not on the ground and he wanted you to

14   be on the ground.  Did you ever hear him say that?

15       A.  No.

16       Q.  Did you ever approach Officer Brady with your

17   fists raised?

18       A.  No.

19       Q.  Did you ever approach Officer Brady with your

20   fists clenched?

21       A.  No.

22       Q.  Did you ever try to push Officer Brady to the

23   ground?

24       A.  No.

25       Q.  Did you ever try to -- once you were on the

**Zandonella**
REPORTING SERVICE. INC.

134

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    ground I understand you got up from the ground a couple

2    times and tried to run again, correct?

3        A.  Yes.

4        Q.  And during those times did the officer give you

5    any orders for you to stay on the ground and not get up?

6    Did you ever hear him say that while you were on the

7    ground?

8        A.  Once when he had his knee in my back.

9        Q.  Before that point in time did he ever tell you

10   to stay on the ground, but instead of doing that you got

11   up and tried to run away?

12       A.  No.

13       MR. PHILLIPS:  Can I interject something.

14       If you don't remember something too, you can say

15   you don't remember.  So I mean I don't know whether he

16   said it or not, but if you don't remember something, you

17   can say that.  You don't have to say no if no means I

18   don't remember.

19       MR. BLECHMAN:

20       Q.  At the time you were on the ground on your

21   stomach just before you were going to be handcuffed, was

22   there ever a period of time when you had your hands

23   under your body near your waistline area?

24       A.  No.

25       Q.  Was there ever a time when you heard an officer

Zandonella
REPORTING SERVICE. INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    Q.  Have you ever been convicted of a felony?

2    A.  Yes.

3    Q.  How many?

4    A.  One.

5    Q.  What felony was that?

6    A.  I am not for sure what the felony was.

7    Q.  You might not know the exact code section of

8    the Penal Code or whatnot, but what was the crime?

9    A.  I am not for sure.

10    Q.  Mr. Bracko, I have tried to be as patient as I

11    can with you here today, and I am a pretty reasonable

12    person but, you know, I don't believe you're being very

13    forthright with me today.  I don't think you're telling

14    me everything you do know.  And I am entitled to know

15    most of the things I'm asking about here and whatnot.

16    I find it hard to believe that you were convicted

17    of a felony and you're sitting here telling me you don't

18    know what you got convicted for.  So I am giving you

19    another opportunity here to provide me with that

20    information or, you know, the record will reflect what

21    your response is and we'll use it accordingly later on.

22    So I will ask you again, do you know what the prior

23    felony you were convicted of was for?

24    A.  Evading the police.

25    Q.  Which department or which city were you in when

**Zandonella**
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    you were evading the police?

2        A.   In Richmond.   I was in Richmond when I was

3    evading.

4        Q.   Was that before or after our incident?

5        A.   This was -- this was the incident.

6        Q.   So you're saying -- you believe the felony

7    conviction for evading was arising out of this incident

8    where you were arrested by Officer Brady and Officer

9    Caine?

10        A.   Yes.

11        Q.   Okay.   Any other felonies you believe you have

12    been convicted of?

13        A.   No.

14        Q.   Have you ever been convicted of evading the

15    police prior to the time of this incident?

16        A.   Yes.

17        Q.   Who were you running from at that time?

18        A.   Fairfield Police.

19        Q.   And when was that?   Approximately?

20        A.   I am not for sure.

21        Q.   You might not be sure about the date, but when

22    approximately did that incident occur we'll just say.

23    When was that it you were running from the Fairfield

24    Police?

25        A.   The year?

Zardorella
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1  ingest any illegal drugs?

2      A.  No.

3      Q.  You should have just said that earlier.  We

4  would have been able to move past that issue.

5      All right.  Now, moving to the day of the incident,

6  you're aware that there was marijuana found in the

7  Nissan you were driving, correct?

8      A.  Yes.

9      Q.  And was that your marijuana?

10     A.  Yes.

11     Q.  And where was it found in the car, do you

12 know?

13     A.  No.

14     Q.  And there was also marijuana found in the

15 jacket you were wearing at the time of the incident,

16 correct?

17     A.  Yes.

18     Q.  And that was your marijuana?

19     A.  Yes.

20     Q.  Can you give me an estimate of how much

21 marijuana was found that was yours that night or that

22 day?

23     A.  About three bags.

24     Q.  From reading the police reports I saw there was

25 approximately 76 to 77 grams of marijuana found.  Does

**Zandonella**
REPORTING SERVICE, INC.

156

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1   that sound about right?

2       A.  Yes.

3       Q.  And I understand that they were found in four

4   different bags.  One bag had 29 grams, another bag had

5   29 grams and another bag had about 11 grams, another bag

6   had about seven grams.

7       Does that sound about right?

8       A.  Yes.

9       Q.  And that was all your marijuana, correct?

10      A.  Yes.

11      Q.  And what were you going to do with that

12  marijuana?

13      MR. PHILLIPS:  Objection.

14      Do not answer that question.  Incriminating.

15      MR. BLECHMAN:

16      Q.  Do you remember what you told police you were

17  going to do with that marijuana?

18      A.  No.

19      Q.  Did you make any statements to any of the

20  officers after you were handcuffed about what you were

21  going to do with that marijuana?

22      A.  No.

23      Q.  Did the officers ever ask you if this was your

24  marijuana and that you were going -- asked you if you

25  were going to sell the marijuana?

Zandonella
REPORTING SERVICE, INC.

157

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    A.  No.

2    Q.  Do you remember telling Officer Brady that that

3  marijuana was for personal use?

4    A.  No.

5    Q.  Do you smoke marijuana?

6    A.  No.

7    Q.  Have you ever smoked marijuana?

8    A.  Yes.

9    Q.  When's the last time you smoked marijuana?

10    A.  Probably like --

11    MR. PHILLIPS:  You know what, don't answer these

12  questions.  You have answered whether you were on drugs

13  that day or using drugs that day and that's -- but as

14  far as whether or not he's used illegal drugs on a

15  different day, that's not --

16    MR. BLECHMAN:  I think it's a fair question.  He's

17  made an admission in the police reports about personal

18  use and I am entitled to inquire into that I believe.

19    MR. PHILLIPS:  Right.  I --

20    MR. BLECHMAN:

21    Q.  Let me back up then.  I think I asked you if

22  you use marijuana currently and you said no; is that

23  correct?

24    A.  Yes.

25    Q.  Okay.  In the police report there's an

**Zandonella**
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1  indication that you told Officer Brady that this 76 to

2  77 grams of marijuana was yours for personal use.  Okay.

3       So I know if you don't use it now, my question is,

4  and I think it's a fair question, is when were you --

5  when in your life were you using marijuana?

6       MR. PHILLIPS:  Objection.  Don't answer the

7  question for the same reason.  I mean -- I don't know.

8  I mean, I don't know.

9       You wanted to ask questions about whether he had

10 drugs on him that day.  You asked him the question.  You

11 wanted to ask questions about whether he was using that

12 day.

13      He's answered the question.  I mean, I think you

14 have enough.  And maybe it's not my decision to make

15 for you, but I think you have enough information about

16 that.

17      MR. BLECHMAN:  From my perspective this is another

18 example of obstructionist behavior here, Counsel, in

19 terms of preventing me from asking legitimate questions

20 to your client, in the process essentially coaching your

21 client on responses or setting up a meeting in the hall

22 with your client about, you know, a subject that's going

23 to come up here and, you know, I am a little frustrated

24 frankly.  And that's certainly going to be part of my

25 motion.  It's a fair question.

Zandonella
REPORTING SERVICE. INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    And if you don't want to have your client respond,

2  that's fine.  This will all be in my motion and I am

3  confident that we are going to get some sanctions for

4  this behavior.

5    So we can move on.

6    MR. PHILLIPS:  You got your answers, Noah.

7    MR. BLECHMAN:  Well --

8    MR. PHILLIPS:  It took you a while to get them --

9    MR. BLECHMAN:  I have gotten some answers, but it

10  hasn't been without pulling some teeth.

11    MR. PHILLIPS:  It may have taken you a while to get

12  them, but you have gotten answers, so I don't know what

13  sanctions you're talking about.  You have gotten the

14  answers.

15    MR. BLECHMAN:

16    Q.  I am going to ask a couple more questions on

17  this area.

18    Where did you get that marijuana?

19    MR. PHILLIPS:  Objection.

20    Don't answer that question.  It's incriminating.

21    MR. BLECHMAN:  Okay.  Well, I disagree and I am

22  going to want that portion of the transcript marked and

23  probably some more of this portion of the transcript

24  marked.

25    Q.  Do you know what a cannabis card is?



160

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1      A.  Yes.

2      Q.  Have you ever owned a cannabis card?

3      A.  Yes.

4      Q.  When did you own a cannabis card?

5      A.  2000 to about '07.

6      Q.  So for about seven years you had a cannabis

7 card?

8      A.  Yes.

9      Q.  How did you obtain that card?

10     A.  From my mother.

11     Q.  How did you obtain it via your mother?

12     A.  I was a caregiver.

13     Q.  Your mother needs a caregiver?

14     A.  Yes.

15     Q.  For what?

16     A.  To pick it up for her.

17     Q.  She smokes marijuana for medicinal purposes,

18 for medicine purposes?

19     A.  Yes.

20     Q.  For what problem?

21     A.  I am not for sure what her problem is.

22     Q.  And so you had a caregiver card?

23     A.  Yes.

24     Q.  Which means you can go to the club, you can

25 purchase marijuana for somebody and take it to them

Zandonella
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    essentially?

2         A.   Yes.

3         Q.   And did you do that from 2000 to 2007?

4         A.   Sometimes, yes.

5         Q.   Did you ever buy cannabis at the cannabis club

6    for your own purposes?

7         A.   No.

8         Q.   Every time you bought marijuana at the cannabis

9    club you would deliver that to your mom?

10        A.   Yes.

11        Q.   You don't know if your mom has any health

12   condition that she needs to use marijuana?

13        A.   Not for sure.

14        Q.   Do you know if she uses marijuana?

15        A.   Yes.

16                        (Cell phone ringing.)

17   MR. BLECHMAN:

18        Q.   The marijuana that you had with you on the

19   night of the incident, was that purchased at a cannabis

20   club with a cannabis card or a caregiver card?

21        A.   Yes.

22        Q.   And which club was that?

23        A.   Hilltop.

24        Q.   Is that in Richmond?

25        A.   Yes.

Zandonella
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1   Q.  Was that purchased at or around the time of the
2   incident?
3   A.  Yes.  A little bit before the incident.
4   Q.  Like a little bit before, are we talking about
5   earlier that day?  Are we talking about --
6   A.  Earlier that day.
7   Q.  Earlier that day.  And how much did it cost to
8   purchase that?
9   A.  Six hundred.
10  Q.  And you were going to -- what time did you
11  purchase it that day?
12  A.  I am not for sure what time I purchased it.
13  Q.  And you were going to deliver all that
14  marijuana to your mom?
15  A.  Yes.
16  Q.  Why is it that you no longer have a cannabis
17  card?
18  MR. PHILLIPS:  You know what, I'm sorry, we're done
19  with the marijuana questions.
20  MR. BLECHMAN:  What's your objection, Counsel?
21  MR. PHILLIPS:  Because he's going to put himself --
22  you're asking him a bunch of incriminating questions.
23  And you got a lot of information and, you know what, the
24  judge might say I am wrong, but on this one the judge is
25  just going to have to say I'm wrong.

1    MR. BLECHMAN:  Counsel, it's not my problem that

2    your client may have done some things that are

3    incriminating.  But if they relate to issues in this

4    case that I am defending on behalf of Officer Caine and

5    the city of San Pablo and the police department, I am

6    entitled to that information.

7        MR. PHILLIPS:  Like I said before, I am not saying

8    that it is not relevant, you know, maybe not everything

9    you're asking, but I am not saying that it doesn't have

10   any relevance whatsoever.

11       I am simply saying that literally the marijuana

12   stuff is done.  I mean, if you want to go to the judge

13   and try to get an order saying he has to answer all this

14   stuff, then you're going to have to do that.

15       I mean, he's given you what you need to know.  He's

16   told you where it came from.  You didn't even need to

17   know that, but he's told you where it came from.

18       He's admitted that he had it.  You know, he's not

19   doing anything else.

20       MR. BLECHMAN:  Well, I disagree and I think I am

21   entitled to ask any of these questions and --

22       MR. PHILLIPS:  I don't think you understand --

23       MR. BLECHMAN:  Hold on.  Hold on.  -- any of these

24   questions and even go further into some of these issues

25   that do relate to issues in this case.

**Zandonella**
REPORTING SERVICE, INC.

164

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1        So I am going to have to do a motion on those

2   issues it looks like also.

3        Q.   The $600 that you paid for the marijuana, whose

4   money was that?

5        MR. PHILLIPS:   We are done with the marijuana

6   questions.   I mean, literally for the same reason you're

7   asking incriminating questions.

8        Don't answer the question.

9        MR. BLECHMAN:   Again, they may be incriminating to

10  your client in a sense because it's potential criminal

11  behavior, but that's not my concern.   I am entitled to

12  relevant information or information that may lead to the

13  discovery of admissible evidence.   I am asking those

14  specific questions.

15       Counsel, opposing counsel is not allowing his

16  client to answer basic questions that deal with these

17  issues in this case, relevant questions, and so I am

18  going to have to file a motion and seek sanctions to ask

19  these basic questions.

20       MR. PHILLIPS:   You're going to have to seek

21  sanctions.

22       MR. BLECHMAN:   And I am going to reserve my right

23  to go over all of these questions again and to seek a

24  motion to reask a lot of these questions because there's

25  been several points in this deposition that you have

Zardorella
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1  either allowed your client to answer these questions or

2  disallowed him to answer these questions, and it's

3  really disrupted my line of questioning of the witness.

4  So I am going to ask the court to revisit these areas in

5  total if need be.

6      Q.  At the time of the incident how much did you

7  weigh approximately?

8      A.  Like 180.

9      Q.  And how tall are you?

10     A.  Six-foot.

11     Q.  And are you about the same size now in terms of

12  weight as you were on the date of the incident?

13     A.  Two hundred.  Over 200 now.

14     Q.  You weigh 200 now.  Okay.  Parchester Village,

15  is that an area -- is there violence in that area as far

16  as you know?

17     A.  There's violence throughout the whole

18  Richmond.

19     Q.  Specifically Parchester Village, are you aware

20  of whether or not there's some violence that occurs

21  there from time to time?

22     A.  Yes.

23     Q.  Yes, you are aware that there's violence

24  there?

25     A.  Yes.  All over Richmond, yes.

Zandonella
REPORTING SERVICE, INC.
Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    A.  No.

2    Q.  What about when you were living at the Warren

3  Avenue house, did you have to pay any rent?

4    A.  No.

5    Q.  Prior to Meyers Gardening Service, where did

6  you work?

7    A.  That's it.  Just the Meyers Gardening

8  Service.

9    Q.  Since you graduated from high school in what,

10  about 2000?

11    A.  Yeah.

12    Q.  Okay.  What did you do from 2000 to 2004 for

13  work purposes?

14    A.  My family helped me.

15    MR. PHILLIPS:  That's not what he asked you.

16    MR. BLECHMAN:

17    Q.  I will ask it a better way.

18    Did you work from 2000 up until you got the job

19  with Meyers in 2004?

20    A.  I didn't work until 2004.

21    Q.  Okay.  So since you graduated from high school

22  you have only worked about a year over the last eight

23  years, and that year was with Meyers Gardening Service;

24  is that correct?

25    A.  Yes.

**Zandonella**
REPORTING SERVICE, INC.

182

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1        A.   No.

2        Q.   Whose number is 510-938-6975?  Do you know who

3   that person is?

4        A.   No.

5        Q.   Do you remember getting a text message on your

6   phone that read quote, "Call me, fool.  I need some

7   weed" and it's s-u-m weed?

8        MR. PHILLIPS:  Objection.

9        Don't answer that question.

10       MR. BLECHMAN:

11       Q.   Do you remember getting a text message on your

12  phone about that?

13       MR. PHILLIPS:  Objection.  Don't answer that

14  question.

15       MR. BLECHMAN:  Why is that?  What's the objection?

16       It's incriminating to get a text message?

17       MR. PHILLIPS:  No.  It's incriminating to get

18  orders for home delivery of weed, Noah.  That's why it's

19  incriminating.

20       Don't answer the question.  Whatever.  Don't answer

21  the question.

22       MR. BLECHMAN:  Again, I think it's relevant

23  information and I am going to have to ask you about that

24  at another time apparently.

25       Q.   That was your phone that was found on the night

Zandonella
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1  STATE OF CALIFORNIA    )
                          ) ss.
2  COUNTY OF CONTRA COSTA )

3      I, JULIE MAGGI VASTA, CSR, License No. C-2947, do

4  certify:

5      That CHRISTIAN J. BRACKO, the witness in the

6  foregoing deposition, was by me first duly sworn to

7  testify the truth, the whole truth and nothing but the

8  truth in the within-entitled cause;

9      That said deposition was reported at the time and

10 place therein stated by me, a Certified Shorthand

11 Reporter, and thereafter transcribed into typewriting;

12     I further certify that I am not interested in the

13 outcome of said action, nor connected with, nor related

14 to, any of the parties of said action or to their

15 respective counsel.

16     IN WITNESS WHEREOF, I have hereunto set my

17 hand this 11th day of July       , 2008

18

19 JULIE MAGGI VASTA, CSR, License C-2947

20

21

22

23

24

25

Zandonella
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

# EXHIBIT D

1  MISTER PHILLIPS, SBN 228991
**LAW OFFICE OF MISTER PHILLIPS**
2  P.O. Box 1162
Pinole, CA 94564
3  Phone: (510) 672-3756
Fax: (510) 222-4198
4  mister_phillips@hotmail.com

5  Attorney for Plaintiff Christian J. Bracko

6

7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10              **SAN FRANCISCO DIVISION**

11

12  CHRISTIAN J. BRACKO,            ) Case No.: 3:08-cv-00239-JL
                                    )
13              Plaintiff,          ) **SECOND AMENDED COMPLAINT:**
                                    ) **EXCESSIVE FORCE**
14      vs.                         )
                                    ) DEMAND FOR JURY TRIAL
15  ALEX CAINE; CITY OF SAN PABLO,  )
                                    )
16  CA; and DOES 1-10, inclusive,   )
                                    )
17          Defendants.             )
                                    )
18  _____)

19                   **JURISDICTION**

20      1. The Court has original jurisdiction under 28 U.S.C.

21  Section 1331, because the civil action arises under 42 U.S.C.

22  Section 1983. The Court has supplemental jurisdiction under 28

23  U.S.C. Section 1367, because it has original jurisdiction.

24                     **VENUE**

25      2. Venue is proper under 28 U.S.C. Section 1391(b), because

26  a substantial part of the events or omissions giving rise to the

27  claim occurred in the district.

28

1

**INTRADISTRICT ASSIGNMENT**

2    3. This action should be assigned to the Oakland Division,

3    because a substantial part of the events or omissions giving

4    rise to the claim occurred in the adjoining county of Contra

5    Costa.

6    **PARTIES**

7    4. At all times relevant to this complaint, Plaintiff

8    Christian J. Bracko was a black male.

9    5. At all times relevant to this complaint, Defendant City

10    of San Pablo (the City) was a municipal corporation in the State

11    of California.

12    6. At all times relevant to this complaint, Defendant Alex

13    Caine was a white police officer for the City acting under the

14    color of law. Mr. Bracko now sues Mr. Caine in his individual

15    capacity only.

16    7. Mr. Bracko is ignorant of the true names and capacities

17    of Defendants Does 1-10, inclusive, and therefore sues them by

18    such fictitious names. Mr. Bracko is informed and believes that

19    Does 1-10, inclusive, are responsible in some manner for the

20    damages he suffered as set forth herein. Mr. Bracko will amend

21    this complaint to state the true names and capacities of Does 1-

22    10, inclusive, when he ascertains them.

23    **FACTS**

24    8. On or around November 27, 2006, around noon, an unknown

25    police officer for the City tried to pull Mr. Bracko over in

26    Parchester Village, a predominately black neighborhood in

27    Richmond, CA. Mr. Bracko fled by car and then on foot in the

28    same neighborhood.

SECOND AMENDED COMPLAINT: EXCESSIVE FORCE; Case No.: 3:08-cv-00239-JL - 2

1      9. The officer caught Mr. Bracko, wrestled him onto his
2 stomach, and handcuffed his hands behind his back. Mr. Bracko
3 laid there peaceably with his head on the sidewalk and his body
4 on the street. The officer had Mr. Bracko under full control.

5      10. A few minutes later, another police officer for the
6 City, whom Mr. Bracko is informed and believes is Alex Caine,
7 ran from around the corner, jumped into the air, and crashed
8 down onto Mr. Bracko's head with his knee.

9      11. Mr. Bracko lost consciousness. He could have lost his
10 life. Due to the awkward position Mr. Bracko's head and body
11 were in, Mr. Caine could have easily broken Mr. Bracko's neck.

12      12. Mr. Caine pulled Mr. Bracko to his feet. Mr. Bracko
13 could not walk without assistance. On their way to the police
14 car, Mr. Caine dropped Mr. Bracko into the gutter like a piece
15 of trash.

16      13. Mr. Caine failed to use reasonable care to protect Mr.
17 Bracko from harm. Mr. Caine's actions were intentional. Mr.
18 Caine kneed Mr. Bracko in his head and dropped him into the
19 gutter because of his race and/or color. Mr. Caine acted with
20 oppression and/or malice.

21      14. Mr. Bracko is informed and believes that the San Pablo
22 Police Department (SPPD) has an official policy or longstanding
23 pattern, practice, or custom of using excessive force on people
24 of color. Mr. Caine was executing the SPPD's policy, pattern,
25 practice, or custom when he kneed Mr. Bracko in his head and
26 dropped him into the gutter.

27      15. As a result of the defendants' conduct, Mr. Bracko
28 suffered physical injuries, loss of consciousness, mental

1  anguish, and serious and/or severe emotional distress. Mr.
2  Bracko also incurred medical expenses.

3                **FIRST CLAIM UNDER 42 U.S.C. § 1983**
4                        **(AGAINST ALL DEFENDANTS)**

5      16. Mr. Bracko incorporates by reference each and every
6  allegation contained in paragraphs 1 through 15 of this
7  complaint as though fully set forth herein. Mr. Caine violated
8  Mr. Bracko's Fourth Amendment right to be free from unreasonable
9  seizure by using excessive force on him. Mr. Caine was executing
10 the SPPD's policy, pattern, practice, or custom of using
11 excessive force on people of color when he violated Mr. Bracko's
12 rights.

13               **SECOND CLAIM FOR ASSAULT**
14                      **(AGAINST MR. CAINE)**

15     17. Mr. Bracko incorporates by reference each and every
16 allegation contained in paragraphs 1 through 16 of this
17 complaint as though fully set forth herein. Mr. Caine assaulted
18 Mr. Bracko.

19               **THIRD CLAIM FOR BATTERY**
20                      **(AGAINST MR. CAINE)**

21     18. Mr. Bracko incorporates by reference each and every
22 allegation contained in paragraphs 1 through 17 of this
23 complaint as though fully set forth herein. Mr. Caine committed
24 battery on Mr. Bracko.

25 **FOURTH CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
26                      **(AGAINST MR. CAINE)**

27     19. Mr. Bracko incorporates by reference each and every
28 allegation contained in paragraphs 1 through 18 of this

Case 3:08-cv-00   -JL   Document 9-2   Filed 03/3   008   Page 9 of 7

1 complaint as though fully set forth herein. Mr. Caine's conduct
2 caused Mr. Bracko to suffer severe emotional distress.

3 **FIFTH CLAIM FOR NEGLIGENCE**

4 **(AGAINST MR. CAINE)**

5 20. Mr. Bracko incorporates by reference each and every
6 allegation contained in paragraphs 1 through 19 of this
7 complaint as though fully set forth herein. Mr. Bracko was
8 harmed by Mr. Caine's negligence.

9 **SIXTH CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

10 **(AGAINST MR. CAINE)**

11 21. Mr. Bracko incorporates by reference each and every
12 allegation contained in paragraphs 1 through 20 of this
13 complaint as though fully set forth herein. Mr. Caine's conduct
14 caused Mr. Bracko to suffer serious emotional distress.

15 **SEVENTH CLAIM FOR VIOLATION OF CA CIV. CODE § 51.7(a)**

16 **(AGAINST MR. CAINE)**

17 22. Mr. Bracko incorporates by reference each and every
18 allegation contained in paragraphs 1 through 21 of this
19 complaint as though fully set forth herein. Under CA Civil Code
20 Section 51.7(a), "All persons within the jurisdiction of this
21 state have the right to be free from any violence, or
22 intimidation by threat of violence, committed against their
23 persons or property … on account of [race or color]." Mr. Caine
24 denied Mr. Bracko his rights under Section 51.7(a).

25 **EIGHTH CLAIM FOR VIOLATION OF CIV. CODE § 52.3(a)**

26 **(AGAINST MR. CAINE)**

27 23. Mr. Bracko incorporates by reference each and every
28 allegation contained in paragraphs 1 through 22 of this

1   complaint as though fully set forth herein. Under Civil Code
2   Section 52.3(a), "No governmental authority, or agent of a
3   governmental authority, or person acting on behalf of a
4   governmental authority, shall engage in a pattern or practice of
5   conduct by law enforcement officers that deprives any person of
6   rights, privileges, or immunities secured or protected by the
7   Constitution or laws of the United States or by the Constitution
8   or laws of California." Mr. Caine engaged in a pattern or
9   practice of conduct that deprived Mr. Bracko of his rights under
10  the Constitution or laws of the U.S. and/or CA.

11             **NINTH CLAIM UNDER CA GOV. CODE § 820(a)**
12                         **(AGAINST MR. CAINE)**

13       24. Mr. Bracko incorporates by reference each and every
14  allegation contained in paragraphs 1 through 23 of this
15  complaint as though fully set forth herein. Under CA Government
16  Code Section 820(a), "Except as otherwise provided by statute
17  (including Section 820.2), a public employee is liable for
18  injury caused by his act or omission to the same extent as a
19  private person." Therefore, Mr. Caine is liable for the injuries
20  his acts or omissions caused Mr. Bracko.

21            **TENTH CLAIM UNDER CIV. CODE § 52.1(b)**
22                         **(AGAINST MR. CAINE)**

23       25. Mr. Bracko incorporates by reference each and every
24  allegation contained in paragraphs 1 through 24 of this
25  complaint as though fully set forth herein. Under Civil Code
26  Section 52.1(b), "Any individual whose exercise or enjoyment of
27  rights secured by the Constitution or laws of the United States,
28  or of rights secured by the Constitution or laws of this state,

1 | has been interfered with, or attempted to be interfered with, as
2 | described in subdivision (a), may institute and prosecute in his
3 | or her own name and on his or her own behalf a civil action for
4 | damages, including, but not limited to, damages under Section
5 | 52, injunctive relief, and other appropriate equitable relief to
6 | protect the peaceable exercise or enjoyment of the right or
7 | rights secured." Mr. Caine has interfered with with Mr. Bracko's
8 | exercise or enjoyment of rights secured by the Constitution or
9 | laws of the U.S. and/or CA.

10 | **PRAYER FOR RELIEF**

11 | WHEREFORE, Mr. Bracko demands judgment against the
12 | defendants jointly and severally as follows:

13 | 1. Compensatory damages according to proof;

14 | 2. Punitive damages according to proof;

15 | 3. A civil penalty of $25,000 for each and every violation of
16 | Civil Code Sections 51.7 and 52.1(b) pursuant to Section
17 | 52(b)(2);

18 | 4. Injunctive relief;

19 | 5. Attorney's fees;

20 | 6. Costs of suit; and

21 | 7. For such other relief as the Court deems just and proper.

22 | **DEMAND FOR JURY TRIAL**

23 | Mr. Bracko does hereby demand a jury trial.

24 | Dated March 30, 2008                    Respectfully Submitted,

25 |                                          /s/ Mister Phillips
26 |                                          Mister Phillips
                                             Attorney for Plaintiff
27 |                                          Christian J. Bracko

28 |

# EXHIBIT E

Case 3:08-cv-01289-AJ Document 14 Filed 08/27/2008 Page 82 of 86

# SAN PABLO POLICE DEPARTMENT

13880 San Pablo Avenue
San Pablo, California 94806
(510) 215-3130

Refer Other Reports:

Page 1 Of 4

Other ☐
Courtesy Report ☐
Telephone Report ☐
CPI ☐
Prosecution Desired ☒
No Prosecution Desired ☐

| 1 CRIME | CODE SECTION 11359 H&S | CRIME Possession of controlled substance for sale | | CLASSIFICATION | PRIMARY 11359 | SECONDARY 11360 H&S | OTHER 69 PC |
|---|---|---|---|---|---|---|---|

| LOCATION (Be Specific) 609 Collins Ave | DATE RPTD 11-27-06 | OCCURRED ON/OR BETWEEN | DATE 11-27-06 | DAY Mon | TIME 1244 |
|---|---|---|---|---|---|
| FIRM NAME (At Location) | TIME RPTD 1244 | AND | DATE | DAY | TIME |

| 2 INV | CODE V | NAME ( Last, First, Middle) State of California | OCCUPATION | D.O.B. | AGE | S ☐1M ☐2F | R ☐WHI☐BLK☐OR☐ ☐MEX☐AI☐OTHER |
|---|---|---|---|---|---|---|---|

| RES. ADDRESS | CITY | ZIP CODE | RES. PHONE |
|---|---|---|---|
| BUS. ADDRESS | CITY | ZIP CODE | BUS. PHONE |

| PARTIES | CODE | NAME (Last, First, Middle) | OCCUPATION | D.O.B. | AGE | S ☐1M ☐2F | R ☐WHI☐BLK☐OR☐ ☐MEX☐AI☐OTHER |
|---|---|---|---|---|---|---|---|

| RES. ADDRESS | CITY | ZIP CODE | RES. PHONE |
|---|---|---|---|
| BUS. ADDRESS | CITY | ZIP CODE | BUS. PHONE |

| 3 VEH | LICENSE NO. | STATE | YEAR | MAKE | BODY STYLE | ☐0 UNK ☐1 2-DR | ☐2 4-DR ☐3 CONV | ☐4 P/U ☐5 TRUCK | ☐6 VAN ☐7 S/W | ☐8 RV ☐9 M/C | ☐10 OTHER |
|---|---|---|---|---|---|---|---|---|---|---|---|

| COLOR/COLOR | OTHER CHARACTERISTICS (i.e. T/C Damage, Unique Marks, Paint | DISPOSITION OF VEHICLE |
|---|---|---|

| 4 PROPERTY | ARTICLE NAME | QTY | IDENTIFICATION NUMBERS | BRAND/MAKE OR MANUFACTURER | MODEL NAME AND MODEL NUMBER | MISCELLANEOUS DESCRIPTION | VALUE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**5 NARRATIVE**

Narrative begins on page 2

| 6 CRIMES AGAINST ELDERLY | 7 DOMESTIC VIOLENCE | 8 WEAPONS INVOLVED | TYPE OF WEAPON | ☐1 FIREARM ☐2 KNIFE/ CUTTING INSTRUMENT ☐3 OTHER DANGEROUS WEAPON ☐4 PERSONAL WEAPON(HANDS, FEET, ECT) |
|---|---|---|---|---|
| ☐YES ☒NO AGE(S) | ☐YES ☒NO | ☒YES ☐NO | | |

| 9 CASE STATUS | ☒CLOSED ☐PENDING ☐SUSPENDED ☐UNFOUNDED ☐F/U DATE ☐OTHER |
|---|---|
| COPIES TO: | ☐CHIEF ☐DET ☐OTHER AGENCY ☐OTHER ROUTING ☐CAU ☒DA ENTERED BY: |

☐CHECK IF SUSPECT REPORT IS ATTACHED☒CHECK IF PROPERTY SHEET IS ATTACHED☐CHECK IF MORE NAMES CONTINUATION

| REPORTING OFFICER Brady | ID#1014 | DATE 112706 | REVIEWED BY m. 896 | ASSIGNED TO OFFICER |
|---|---|---|---|---|

# SAN PABLO POLICE DEPARTMENT
## NARRATIVE REPORT

| Page No. | Case No. |
|---|---|
| 2-4 | 06-32432 |

On the listed date and time I was in a marked patrol vehicle, in full police uniform. I was traveling W/B on Miner Ave, near Giant Rd. I saw a white Nissan Sentra license # 3GXC299 traveling W/B Miner Ave approximately 100 feet ahead of me. I could see that the vehicle was occupied by 2 BMA's.

I got behind the vehicle as it crossed the train tracks on Giant Rd and began traveling N/B on Collins Dr. I could see that the registration on the vehicle was expired 3/06, by the license plate tabs. I confirmed that it was in fact expired by running the plate on my MDC. This is a violation of 4000a VC. I activated my overhead lights, attempting to conduct a traffic stop for the above violation. The vehicle pulled into the parking lot of 900 Collins Dr, which is on the corner of Williams Dr @ Collins Dr in Richmond. The vehicle made a U-turn in the parking lot and sped off over the curb, failing to yield to my over head lights. I notified dispatch that the vehicle failed to yield and I activated my siren. The vehicle drove W/B onto Williams drive and then made a northbound turn onto McGlothen Dr. The vehicle accelerated to approximately 35-40 MPH. The vehicle then made a W/B turn onto Johnson Dr from McGlothen Dr. Again the vehicle accelerated to approximately 40 MPH. At the dead end of Johnson Dr the vehicle made a N/B turn onto Leke Way. The roadway was wet and the driver lost control. The vehicle spun out and came to rest on the front lawn of 4001 Leke Way. Both occupants of the vehicle jumped out of the car and began to run N/B on Leke Way.

I focused my attention to the driver, who was running on the western curb line of Leke Way. He was wearing a blue jean jacket and blue jeans. The jean jacket was baggy and it covered his waist line. As I was catching up to him I saw him reach his hands for his waste band. I was unaware if he had a weapon or not. I pulled my patrol vehicle along side of the suspect, who was later identified as Christian Bracko via a hard copy of a CA ID. I stopped my patrol vehicle and got out. (S) Bracko turned around and began running S/B on Leke Way back toward Johnson Dr. I yelled for (S) Bracko to stop running and to get on the ground. (S) Bracko ignored my commands to get on the ground and continued to run. (S) Bracko made an E/B turn onto Johnson Dr from Leke Way and continued to run on the northern curb line. I yelled again for (S) Bracko to get on the ground, but he continued to run. (S) Bracko ran into the front yard of 609 Johnson Dr and ran to the east side of the house. He ran down the side of the house and to the fence. As he got to the fence I yelled at him to stop running and get on the ground. (S) Bracko ignored me and attempted to climb the fence. I grabbed (S) Bracko by the back of his jacket and pulled him off the fence. (S) Bracko fell to the ground. I told (S) Bracko to stay on the ground and put his hands behind his back. (S) Bracko ignored my commands, got back on his feet and started coming toward me. I yelled at (S) Bracko to get on the ground and to stop resisting. (S) Bracko ignored me and continued to approach me with his fists raised and clenched. I grabbed (S) Bracko by the jacket and tried to throw him on the ground. (S) Bracko resisted by grabbing my jacket and trying to push me to the ground. I continued to hold onto his jacket and (S) Bracko began to pull away. I told (S) Bracko again to stop resisting and get on the ground.

| ☐ CHECK IF SUSPECT REPORT IS ATTATCHED | ☑ CHECK IF PROP/EVID SHEET ATTATCHED | ☐ CHECK IF MORE NAMES IN CONTINUATION | CASE STATUS: | ☑ CLOSED ☐ SUSPENDED | ☐ PENDING ☐ UNFOUNDED | ☐ F/U DATE _____ |
|---|---|---|---|---|---|---|

| COPIES TO: | ☐ CHIEF ☐ DMV | ☐ CII ☐ CAU | ☐ PATROL ☐ ABC(2 COPIES) | ☐ DET ☑ DA | ☐ OTHER AGENCY | ☐ OTHER ROUTING | ENTERED BY: |
|---|---|---|---|---|---|---|---|

| REPORTING OFFICER: Brady | ID# 1014 | DATE 11-27-07 | REVEIEWED BY: _MN_ | ID# 870 | DATE 11/27/06 | ASSIGNED TO OFFICER |
|---|---|---|---|---|---|---|

# SAN PABLO POLICE DEPARTMENT
## NARRATIVE REPORT

| Page No. | Case No. |
|---|---|
| 3-4 | 06-32432 |

(S) Bracko pulled his jacket and shirt off in an attempt to get away. I grabbed my collapsible baton and extended it. I told (S) Bracko again to get on the ground and stop resisting. (S) Bracko did not comply with my command. I struck (S) Bracko once on the left knee with my baton and told him to get on the ground. I grabbed him and pushed him to the ground. I told him to stay on the ground, but he pushed himself back up. I struck (S) Bracko with the but end of my baton on the right side of his rib cage and told him to get on the ground. (S) Bracko ignored me and got back to his feet. I struck (S) Bracko a second time with my extended baton on his left knee. (S) Bracko fell to the ground. I got on top of (S) Bracko and told him to stop resisting and lay flat on the ground. (S) Bracko pulled his hands into his body, near his waste line and tried to push himself back up. At this time I wrapped my left arm around (S) Bracko's head and placed him in a head lock.

At this time I heard Officer Caine advise over the radio that he had located my patrol vehicle. Approximately 10 seconds later I saw Officer Caine running Down Johnson Dr from Leke way, toward my location. As officer Caine arrived (S) Bracko was still resisting and trying to push himself back to his feet. Officer Caine pushed (S) Bracko's head to the ground and his body followed. I was able to gain control of (S) Bracko's right hand by pulling it out from underneath his body. Officer Caine assisted by pulling (S) Bracko's left hand out from under his body and he was placed in handcuffs.

I collected (S) Bracko's jacket and shirt from the front yard of 609 Johnson Dr, as it had been pulled off during the struggle. I located three large clear knot tied sandwich type baggies filled with a green leafy substance inside the jacket that (S) Bracko was wearing. I recognized this substance to be consistent with marijuana. Incident to arrest I also searched the vehicle that (S) Bracko was driving. I located another clear plastic sandwich type baggie filled with a green leafy substance in the driver side door pocket of the vehicle. I collected it as evidence. I located a black cell phone that was lying near the center consol of the vehicle, between the driver and passenger seat. The vehicle was towed and (S) Bracko was transported and booked into SPPD jail.

Once at the jail I took photographs of (S) Bracko's injuries. He suffered an abrasion to the left side of his face, a small laceration underneath his chin, complaint of pain to the jaw and to his left thumb.

I read (S) Bracko his Miranda rights and he told me he understood. He said he was running because the vehicle was not registered and he had a suspended license. He said he did not possess the marijuana for sale, it was for personal use. I asked (S) Bracko if he would sign a written statement. He said he would not.

| ☐ CHECK IF SUSPECT REPORT IS ATTACHED | ☑ CHECK IF PROP/EVID SHEET ATTACHED | ☐ CHECK IF MORE NAMES IN CONTINUATION | CASE STATUS: | ☑ CLOSED ☐ SUSPENDED | ☐ PENDING ☐ UNFOUNDED | ☐ F/U DATE |
|---|---|---|---|---|---|---|

| COPIES TO : | ☐ CHIEF ☐ CII ☐ DMV ☐ CAU | ☐ PATROL ☐ ABC(2 COPIES) | ☐ DET ☑ DA | ☐ OTHER AGENCY | ☐ OTHER ROUTING | | ENTERED BY: |
|---|---|---|---|---|---|---|---|

| REPORTING OFFICER: Brady | ID# 1014 | DATE 11-27-06 | REVEIEWED BY: ℳ | ID# 876 | DATE 11/27/06 | ASSIGNED TO OFFICER |
|---|---|---|---|---|---|---|

| SAN PABLO POLICE DEPARTMENT<br>NARRATIVE REPORT | Page No.<br>4-4 | Case No.<br>06-32432 |
|---|---|---|

I tested the green leafy substance located in (S) Bracko's jacket and in the vehicle, using a VALTOX test kit and a clean test try. The substance tested positive for marijuana. Two of the clear plastic knot tied bags had an AGW of 29.0 grams. The third bag had an AGW of 11.4 grams. The last bag had an AGW of 7.0 grams. I sent the listed items to the lab for analysis.

I went through the black cell phone that I located in the vehicle in an attempt to find the owner. While looking through the cell phone I noted a text message that was sent to the phone on 11-16-06 at 10:09 PM. The message was from 510-938-6975. The first part of the message read, "Call me fool I need sum weed...". I logged the cell phone as evidence.

I collected $135 from (S) Bracko's R/F pants pocket in the following denominations: 6 $20's and 3 $5's. I logged the money as evidence.

(S) Bracko was transported to County hospital, where he was treated for his injuries. While x-rays of (S) Bracko's hand were being taken he asked me if I put his cell phone in his property or if I kept it as evidence. I told (S) Bracko that I was keeping his phone for evidence. Once (S) Bracko was cleared from the hospital he was transported and booked into MDF.

Based on the failure to yield, (S) Bracko fighting with police in an attempt to escape, the quantity of marijuana located, the money and the text message from the cell phone I believed that (S) Bracko possessed the marijuana with intent to sell it.

(S) Bracko was found to be on probation for evading police (2800.1 VC) and he was also driving on a suspended drivers license (14601.1 VC) .

The total time of the pursuit was less than one minute, over a distance of .5 miles. I requested a copy of the dispatch tape as evidence.

Case closed, Route to DA for prosecution.

| ☐ CHECK IF SUSPECT<br>REPORT IS ATTATCHED | ☑ CHECK IF PROP/EVID<br>SHEET ATTATCHED | ☐ CHECK IF MORE NAMES<br>IN CONTINUATION | CASE<br>STATUS: | ☑ CLOSED<br>☐ SUSPENDED | ☐ PENDING<br>☐ UNFOUNDED | ☐ F/U DATE<br>___ |
|---|---|---|---|---|---|---|

| COPIES<br>TO : | ☐ CHIEF  ☐ CII<br>☐ DMV  ☐ CAU | ☐ PATROL<br>☐ ABC(2 COPIES) | ☐ DET<br>☑ DA | ☐ OTHER AGENCY | ☐ OTHER ROUTING | ENTERED BY: |
|---|---|---|---|---|---|---|

| REPORTING OFFICER:<br>Brady | ID#<br>1014 | DATE<br>11-27-06 | REVIEWED BY:<br>_Mr_ | ID#<br>8H | DATE<br>11/29/06 | ASSIGNED TO OFFICER |
|---|---|---|---|---|---|---|

# EXHIBIT F

MISTER PHILLIPS, SBN 228991
**LAW OFFICE OF MISTER PHILLIPS**
P.O. Box 1162
Pinole, CA 94564
Phone: (510) 672-3756
Fax: (510) 222-4198
mister_phillips@hotmail.com

Attorney for Plaintiff Christian J. Bracko

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTIAN J. BRACKO,<br><br>        Plaintiff,<br><br>    vs.<br><br>ALEX CAINE; CITY OF SAN PABLO,<br>CA; and DOES 1-10, inclusive,<br><br>        Defendants. | Case No.: 3:08-cv-00239-JL<br><br>**INITIAL DISCLOSURES** |

**1.    Witnesses**

1. Police Officer Robert Brady saw Police Officer Alex Caine
   jump on the plaintiff's head with his knee. Address and
   telephone number unknown

2. Lorraine Hunt saw Police Officer·Caine jump on the
   plaintiff's head with his knee. Address and telephone
   number unknown

3. Ashlee Wilson saw Police Officer Caine jump on the
   plaintiff's head with his knee. Address and telephone
   number unknown

McNamara Law Firm

APR 2 1 2008

INITIAL DISCLOSURES; Case No.: 3:08-cv-00239-JL - 1

4. Adontae Dotson saw Police Officer Caine jump on the plaintiff's head with his knee. 200 BW Williams Dr, Vallejo, CA 94589, (510) 827-5696

5. Medical professionals at Kaiser Permanente in Martinez, CA

**2.    Documents**

Medical records at Kaiser Permanente in Martinez, CA

**3.    Damages Computation**

| Damages | Amount |
|---|---|
| Pain and suffering | $125,000.00 |
| Emotional distress | $25,000.00 |
| Medical expenses | $5,000.00 |
| Civil penalties | $100,000.00 |
| Punitive damages | $2,500,000.00 |

**4.    Insurance**

N/A

Dated: April 18, 2008                              Respectfully Submitted,

                                                   /s/ Mister Phillips
                                                   Mister Phillips
                                                   Attorney for Plaintiff
                                                   Christian J. Bracko

## PROOF OF SERVICE

I am over 18 years of age. I am not a party to this civil action. My business mailing address is: Law Office of Mister Phillips, P.O. Box 1162, Pinole, CA 94564.

On the date below, I served "Intitial Disclosures" on the following individual(s) by first class mail:

| | |
|---|---|
| Noah Blechman, Esq.<br>McNamara Dodge LLP<br>1211 Newell Ave<br>Walnut Creek, CA 94596-5331 | |

I do hereby declare under penalty of perjury under the laws of the State of California that the foregoing information in this proof of service is true and correct.

Dated: April 18, 2008                    Respectfully Submitted,


_____
Mister Phillips
Attorney for Plaintiff

# EXHIBIT G

1    UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

3    --oOo--

COPY

4

5

6    CHRISTIAN J. BRACKO,                    )

7                    Plaintiff,            )

8         vs.                             )    No. C08-00239

9                                         )

10   ALEX CAINE; CITY OF SAN PABLO, CA;    )

11   and DOES 1 - 10, inclusive            )

12                    Defendants.          )

13                                         )

14

15          DEPOSITION OF ASHLEE LEAH WILSON

16

17

18          Taken before JULIE MAGGI VASTA,

19          A Certified Shorthand Reporter,

20       License No. C-2947, State of California

21

22             July 14, 2008

23

24             --oOo--                McNamara, Dodge, Ney, Beatty,
                                      Slattery & Pfalzer LLP

25                                    JUL 28 2008
                                      HAND DELIVERED



Zandonella
REPORTING SERVICE, INC.

1

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    Q.  During that two or three minutes Bracko was not

2    -- Bracko was resisting the officer.  Would you agree

3    with that?

4    A.  I mean, I said I agree with that, you know.

5    But the third officer didn't have to do that to Bracko.

6    He could have just waited and see that he was

7    getting pulled up, that he already his hands cuffs, he

8    was already, you know, listening to the officers, the

9    two officers.

10    Q.  Right.  But before that, before the third

11    officer, during this two or three minute struggle,

12    Bracko is resisting that initial first officer,

13    correct?

14    A.  For two to three minutes.

15    Q.  He's resisting him for two or three minutes,

16    correct.

17    A.  Yes.

18    Q.  Have you ever talked with Mr. Phillips

19    before?

20    A.  Yes.

21    Q.  What have you guys talked about?

22    A.  I told him what happened and he wrote it down

23    so -- that's it.

24    Q.  Who else was around when you had this

25    conversation with Mr. Phillips?

**Zandonella**
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    A.  My mother.

2    Q.  And when did that happen when you had this

3 conversation and he was writing something down?

4    A.  I forgot -- it was last year.  But I just can't

5 remember the date and the month.

6    Q.  But you know it was some time in 2007?

7    A.  Yes.  Correct.

8    Q.  Did he ever have you sign that document?

9    A.  Correct.

10    Q.  And have you ever seen that signed document?

11    A.  Correct.

12    Q.  Did he give you a copy of it?

13    A.  Yes.

14    Q.  And that's different than what your mom wrote

15 in her handwriting after the incident, correct?

16    A.  Me and my mother's story is totally different.

17    Q.  How so?

18    A.  It's similar, but it's different.

19    Q.  How is it different?

20    A.  Well, I seen everything that happened to

21 Bracko.  She seen it, but she wasn't as close as I was.

22 That's the only thing about it.

23    Q.  Now, the statement that you gave Mr. Phillips

24 and he wrote down and you signed it, was that something

25 that he typed up?

Zardonella REPORTING SERVICE, INC.
Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1    A.   Huh?

2    Q.   When you had this conversation with Mr.

3  Phillips who's the attorney sitting next to you, did he

4  type it up and then you sign it?  Or was it something

5  handwritten and then you signed it?

6    A.   It was type.

7    Q.   It was typed?

8    A.   Yes.

9    Q.   And you have a copy of that at your house?

10   A.   Yes.

11   Q.   And did he type up something for your mom

12 also?

13   A.   Yes.

14   Q.   And did she sign that?

15   A.   Yes.  Anybody else get any statement typed up

16 by Mr. Phillips that you're aware of?

17   A.   No.

18   Q.   How about Dante?

19   A.   I don't know because I don't talk to Dante like

20 that, so I don't know.

21   Q.   How about Shaenedra?

22   A.   No.

23   Q.   After Christian got out of jail after this

24 incident, did you see him a couple days after this

25 incident?

Zandonella
REPORTING SERVICE, INC.

70

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1      Q.   Have you ever read that?

2      A.   No.

3      Q.   Have you ever seen the legal document that was

4  filed by Christian's attorney that started this

5  lawsuit?  Have you ever seen that?  It's called a

6  complaint.

7      A.   I don't think so.

8      Q.   You mentioned earlier that you hand wrote that

9  statement and signed it and gave it to Mr. Phillips and

10 you have a copy of it.

11      Where is that at your house?  Do you know where it

12 is?

13      A.   No, because we moved, so I don't know the

14 place.

15      Q.   If I were to call you up tomorrow and say,

16 Ashlee, can you find me those documents, are you able to

17 do that?

18      A.   It's misplaced.

19      Q.   Does your mom know where those are?

20      A.   No, she doesn't.

21      Q.   But at some point you had copies of the one

22 that you signed?

23      A.   Yes, once upon a time.

24      MR. BLECHMAN:   I think I am done.

25      I just want to state for the record that I have a

**Zandonella**
**REPORTING SERVICE, INC.**

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829

1   STATE OF CALIFORNIA    )
                             ) ss.

2   COUNTY OF CONTRA COSTA )

3       I, JULIE MAGGI VASTA, CSR, License No. C-2947, do

4   certify:

5       That ASHLEE LEAH WILSON, the witness in the

6   foregoing deposition, was by me first duly sworn to

7   testify the truth, the whole truth and nothing but the

8   truth in the within-entitled cause;

9       That said deposition was reported at the time and

10   place therein stated by me, a Certified Shorthand

11   Reporter, and thereafter transcribed into typewriting;

12       I further certify that I am not interested in the

13   outcome of said action, nor connected with, nor related

14   to, any of the parties of said action or to their

15   respective counsel.

16       IN WITNESS WHEREOF, I have hereunto set my

17   hand this 23rd day of July , 2008

18

19   JULIE MAGGI VASTA, CSR, License C-2947

20

21

22

23

24

25

Zandonella
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
P.O. Box 4107 • Concord, CA 94524-4107
(925) 685-6222 • Fax (925) 685-3829